1  Andrea Issod (CA Bar No. 230920)
   Elena Saxonhouse (CA Bar No. 235139)
2  Marta Darby (CA Bar No. 310690)
   Sierra Club Environmental Law Program
3  2101 Webster St., Ste. 1300
   Oakland, CA 94612
4  andrea.issod@sierraclub.org
   elena.saxonhouse@sierraclub.org
5  marta.darby@sierraclub.org
   (415) 977-5544
6

7  Counsel for Plaintiff Sierra Club

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                   OAKLAND DIVISION

11  **SIERRA CLUB,**                    )
                                        )
12          **Plaintiff,**              )    **Case No.**
                                        )
13      **v.**                          )    **COMPLAINT**
                                        )
14  **UNITED STATES ENVIRONMENTAL**     )    **(Freedom of Information Act Case)**
    **PROTECTION AGENCY,**              )
15          **Defendant.**              )
                                        )
16  _____ )

17                  **INTRODUCTION**

18      1.   Sierra Club seeks relief for violations of the Freedom of Information Act ("FOIA") by the

19  U.S. Environmental Protection Agency ("EPA," or the "Agency"). The Agency has failed to

20  respond to three of Sierra Club's July 2017 public records requests for external communications

21  of EPA Administrator Scott Pruitt's executive assistant and specified senior EPA staff, and a

22  May 2018 request seeking EPA's practices and logs regarding agency official's text messages.

23  Additionally, EPA has improperly denied Sierra Club a fee waiver for two of the four requests.

2.   Along with Mr. Pruitt's schedules and other records kept by his executive assistant, the July 2017 requests seek schedules and records of communications between new EPA staff with troubling ties to polluting industries regulated by EPA and individuals outside the agency.  For example, Nancy Beck is a former executive of the American Chemical Association; Elizabeth Bennett is a former lobbyist for the National Rural Electric Cooperative Association, whose members have been historically reliant on coal and lobby against emissions-cutting regulations; Christian Palich is the former president of the Ohio Coal Association; Troy Lyons is a former lobbyist for Hess Corporation and BP (formerly British Petroleum), both multinational companies engaged in the exploration and production of oil and gas; and Byron Brown is a former staff member to Senator James Inhofe, long known as Congress' most prominent skeptic of climate change science and a frequent recipient of contributions from fossil fuel companies like Murray Energy and ExxonMobil.

3.   The May 2018 request seeks documents related to EPA's records management policy that requires text messages containing official agency business to be transferred to an electronic database.  The records request seeks training materials on the text message policy, and an index log for all text messages stored in EPA's database since the new Administration took office.

4.   Sierra Club submitted its first request to EPA on July 17, 2017, its second on July 19, 2017, its third request on July 21, 2017, and the final request on May 1, 2018. All of Sierra Club's requests included a detailed fee waiver request that shows Sierra Club met the EPA criteria to qualify for a waiver. The requests are attached as Exhibits A, B, C, and D.

5.   Under FOIA's 20-day statutory deadline, EPA's responsive determinations to the record requests and fee waiver requests were due on August 14, 16 and 18, 2017, and May 30, 2018, respectively. *See* 5 U.S.C. § 552(a)(6)(A)(i) (requiring agency to make a responsive

determination "within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt" of a request).

6.  In violation of the Act, EPA has not provided the Sierra Club with a responsive determination to any of its four FOIA requests, nor has it committed to a date by which it intends to produce such documents.

7.  EPA also violated the Act by improperly denying the fee waiver request in connection with the first FOIA request on August 29, 2017; and improperly denying the fee waiver request in connection with the third FOIA request on August 30, 2017. EPA claimed Sierra Club's requests did not "demonstrate that the requested information concerns identifiable operations and activities of the government."  The letters are attached as Exhibits E and F.

8.  Sierra Club filed a consolidated administrative appeal with respect to both fee waiver denials on November 27, 2017. *See* Exhibit G.

9.  Because EPA's response to two of the fee waiver requests was untimely, and no unusual or exceptional circumstances apply, the agency may not assess fees in responding to these requests. 5 U.S.C. § 552(a)(4)(A)(viii).

10. Additionally, EPA has not responded to the Sierra Club's administrative appeal of the two fee waiver denials pursuant to 5 U.S.C § 552(a)(6)(A)(ii) within the mandatory 20 days.

11. Sierra Club therefore brings this action seeking injunctive, declaratory, and other appropriate relief against EPA to remedy its violations of the law.

SUBJECT MATTER JURISDICTION AND VENUE

12. This Court has jurisdiction over this case under 5 U.S.C. § 552(a)(4)(B), and 28 U.S.C. § 1331.

13. Sierra Club has its principal place of business in Oakland, California; this Court is, consequently, the proper venue for this action. 5 U.S.C. § 552(a)(4)(B) (providing for venue "in the district in which the complainant resides, or has [its] principal place of business, or in which the agency records are situated, or in the District of Columbia").

INTRADISTRICT ASSIGMENT

14. This case arises, within the meaning of 5 U.S.C. § 552, in Alameda County. For that reason, it is properly assigned to the Oakland Division. N.D. Cal. L.R. 3-2(c)–(d).

PARTIES

15. The EPA is a federal agency, subject to FOIA. 5 U.S.C. § 552(f)(1).

16. The Sierra Club is a nonprofit, membership organization incorporated in the State of California with headquarters in Oakland, California. Sierra Club has nearly 800,000 members nationwide dedicated to exploring, enjoying, and protecting the wild places of the earth. The Sierra Club seeks to inform and educate the public as to the activities of the U.S. Environmental Protection Agency, and other federal agencies entrusted with the administration of public-health and environmental laws, with the aim of improving public understanding of, and support for, public-health and environmental protection. The Sierra Club has a long history of advocacy and public education as to the dangers of climate change-causing and other pollution, as well as the importance of federal enforcement of the Clean Air Act, Clean Water Act, and other bedrock environmental statutes.

17. To that end, Sierra Club routinely seeks information, made available by FOIA, from EPA and other federal agencies, and uses that information to further educate and inform its members, and the public, as to the activities of those agencies, and political appointees to those agencies.

18. Sierra Club brings this action on its own behalf and on behalf of its members.  Sierra Club and its members have been and continue to be injured by EPA's failure to provide requested records within the timeframe mandated by FOIA, as well as EPA's failure to confirm that it will provide the requested records at no cost.  The requested relief will redress these injuries.

LEGAL FRAMEWORK: THE FREEDOM OF INFORMATION ACT

19. The Freedom of Information Act seeks to "open agency action to the light of public scrutiny," by "requiring agencies to adhere to 'a general philosophy of full agency disclosure.'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (citations omitted). The Act's requirements are meant to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).

20.  To achieve that result, FOIA requires every federal agency to, *inter alia*, "make reasonable efforts to search for," and "make . . . promptly available," agency records that are requested by any person, including electronic records. 5 U.S.C. §§ 552(a)(3)(A)–(C),(f)(2).

21. To make it easier for public interest groups like Sierra Club to access government records, FOIA requires agencies to provide documents without charge or at a reduced charge where "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552 (a)(4)(A)(iii).

22. EPA must construe liberally fee waiver requests by non-commercial requestors (such as Sierra Club), and the request need only identify the requested documents with "reasonable

specificity." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (citation omitted).

23. An agency must "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays)" after the receipt of any public records request "whether to comply," and "immediately notify the person making such request" of "such determination," and the person's attendant rights under FOIA. 5 U.S.C. § 552(a)(6)(A). That initial determination may be delayed by 10 working days, but only if the agency demonstrates the existence of specified "unusual circumstances." 5 U.S.C. § 552(a)(6)(B).

24. The Act enumerates limited exemptions, which an agency may invoke to withhold records. *See, e.g.,* 5 U.S.C. §§ 552(a)(8), (b)–(c). Any agency making such an invocation bears the burden of demonstrating that the exemption applies, for each withheld record. *Schiffer v. F.B.I.,* 78 F.3d 1405, 1409–10 (9th Cir. 1996).

25. The Act and EPA's implementing regulations provide an administrative review process, by which a person requesting records may appeal any adverse determination by an agency as to that person's request. 5 U.S.C. § 552(a)(6)(A)(i)(III). Where "the agency fails to comply with the applicable time limit," 5 U.S.C. § 552(a)(6)(C)(i), however, the requester is deemed to have exhausted those administrative remedies. *See Citizens for Responsibility & Ethics in Washington v. Fed.l Election Comm'n,* 711 F.3d 180, 189–90 (D.C. Cir. 2013).

26. A court may "assess … reasonable attorney fees and other litigation costs reasonably incurred in any case" under FOIA "in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).

FACTUAL BACKGROUND

**COMPLAINT**

27. Before being confirmed as EPA Administrator on February 17, 2017, Scott Pruitt served as Attorney General for the State of Oklahoma. In that role, Mr. Pruitt frequently sued EPA to eliminate or weaken federal regulations meant to safeguard public health and the environment. Information gleaned from state open records requests shows that, in doing so, then-Attorney General Pruitt received support from, closely consulted with, and advocated on behalf of members and representatives of the fossil fuel industry.

28. As EPA Administrator, Mr. Pruitt has continued to advance policies beneficial to the fossil fuel, chemical, and other polluting industries. Mr. Pruitt's EPA has worked to roll back, delay, or otherwise nullify dozens of critical health and environmental rules since taking office.

29. Like Mr. Pruitt, many of the other individuals identified in the FOIA requests at issue here have past ties to polluting industries.

30. The schedules and communications of Mr. Pruitt and the specified EPA employees are of interest to Sierra Club and its members in part because each of these new hires lacks prior experience or expertise in environmental protection and instead has a strong connection with anti-EPA organizations, companies, or politicians.

31. Logs of official agency text messages and related training materials are of interest to the Sierra Club because Sierra Club has not received many text messages in response to its previous FOIA requests to EPA.

**Sierra Club's Four FOIA Requests**

32. Sierra Club submitted the first of the four FOIA requests at issue in this Complaint on July 17, 2017. The request, attached as Exhibit A, seeks communications between seven senior EPA employees (Brittany Bolen, Byron Brown, Holly Greaves, Albert Kelly, Richard Yamada, Nancy Beck, and Dennis Lee Forsgren) and parties outside EPA; the employees' calendars; sign-

in sheets or other records memorializing attendance at any meetings attended by the EPA

employees and anyone from outside EPA. The seven employees were identified as new "political

appointees" in a June 27, 2017 memorandum authored by Mr. Pruitt's Chief of Staff.

33. EPA acknowledged receipt of the first request on the same day it was submitted and

assigned it the tracking number EPA-HQ-2017-009482.

34. On July 19, 2017, Sierra Club submitted a second FOIA request to EPA regarding

Michelle Hale, Pruitt's executive assistant who also worked for him when he was Oklahoma

attorney general.  The request, attached as Exhibit B, seeks communications between Ms. Hale

and parties outside EPA related to phone calls, meetings or appearances with Scott Pruitt;

calendars; and sign-in sheets or other records memorializing attendance at any meetings attended

by Pruitt and anyone from outside EPA.

35. EPA acknowledged receipt of the second request the same day it was submitted and

assigned it the tracking number EPA-HQ-2017-009615.

36. On July 21, 2017, Sierra Club submitted a third FOIA request to EPA, attached as Exhibit

C, similar to the first but instead pertaining to seven members of EPA's Intergovernmental

Relations staff (Troy Lyons, Elizabeth Bennett, Christian Palich, Layne Bangerter, Aaron Ringel,

Kaitlyn Shimmin, and Kenneth Wagner). It seeks communications between these employees and

anyone from outside EPA; the employees' calendars; sign-in sheets or other records

memorializing attendance at any meetings attended by the employees and anyone from outside

EPA.  These seven employees were also identified as new "political appointees" in the June 27,

2017 memorandum authored by Mr. Pruitt's Chief of Staff.

37. EPA acknowledged receipt of the third request the same day it was submitted and

assigned it the tracking number EPA-HQ-2017-009684.

38. On May 1, 2018, Sierra Club submitted a fourth FOIA request to EPA regarding official agency text messages, attached as Exhibit D.  It seeks EPA guidance, training materials, and records of agency trainings on text messages, and logs of text messages that have been uploaded to EPA databases since January 21, 2017.

39. EPA acknowledged receipt of the fourth request the same day it was submitted and assigned it the tracking number EPA-HQ-2018-007249.

40. FOIA required EPA to make a final determination upon Sierra Club's first request by August 14, 2017, its second request by August 16, 2017, its third request by August 18, 2017, and its fourth request by May 30, 2018.  *See* 5 U.S.C. § 552(a)(6)(A)(i).

41.  By e-mail to EPA's Public Liaison for FOIA, listed on the EPA website as the appropriate contact for inquiries about a pending FOIA request, counsel for Sierra Club inquired as to the status of the first and third requests on August 24, 2017, and again on September 25, 2017, but received no response.

42. On November 29, 2017, by e-mail to EPA and EPA's counsel in an ongoing FOIA case in the District of Columbia regarding similar requests, Sierra Club inquired about the second request and asked EPA to provide responsive documents as part of the production schedule in the pending D.C. case. The second request is not formally at issue in that pending case.  EPA proposed to process the second request after the documents identified in the D.C. complaint, but no timeline was discussed.  Sierra Club again contacted EPA and EPA's counsel on June 1, 2018, to inquire about a timeline.

43. On May 31, 2018, EPA purported to provide an "interim release" in response to the third request (EPA-HQ-2017-009684), acknowledging that "[t]his release may include . . . records that you have not requested." In fact, the vast majority of the "interim release" includes records that

1    are not responsive to the referenced request. The only records relevant to this request are certain

2    communications and other records of Layne Bangerter.

3    44.  On June 1, 2018, EPA indicated in a series of e-mails that the estimated dates of

4    completion for the first, second, and third requests are January 10, 2019, January 14, 2019, and

5    January 16, 2019, respectively. EPA arrived at these estimates by adding 388 working days to

6    the date on which each request was submitted. Sierra Club has received nearly identical e-mails

7    for other outstanding FOIA requests to EPA and has not found the estimated completion dates to

8    be accurate or enforceable.

9    45. Beyond these communications, EPA has not provided Sierra Club with any indication as

10    to whether EPA intends to comply with Sierra Club's three FOIA requests.

11    **Sierra Club's Fee Waiver Requests**

12    46.  All of Sierra Club's FOIA requests included a detailed fee waiver request that showed

13    Sierra Club met the criteria to qualify for a waiver. *See* Exhibits A, B, C, and D; 5 U.S.C. § 552

14    (a)(4)(A)(iii); 40 C.F.R. § 2.107(l) (setting forth EPA fee waiver requirements).

15    47.  EPA's response to Sierra Club's fee waiver request in the July 17, 2017 FOIA request

16    was due on August 14, 2017, and its response to the fee waiver request in Sierra Club's July 21,

17    2017 FOIA request was due on August 18, 2017 (*i.e.*, 20 working days from the agency's receipt

18    of the request). 5 U.S.C. §§ 552(a)(4)(A)(viii), (a)(6)(A)(i).

19    48.  EPA failed to respond to the July 17, 2017 and July 21, 2017 fee waiver requests within

20    the time set forth by statute and regulation. 5 U.S.C. § 552(a)(4)(A)(viii).

21    49.  Belatedly, EPA denied the fee waiver request in connection with the July 17, 2017 FOIA

22    request on August 29, 2017; and denied the fee waiver request in connection with the July 21,

23    2017 FOIA request on August 30, 2017, claiming that the requests did not "demonstrate that the

requested information concerns identifiable operations and activities of the government."
Exhibits E and F.

50. Sierra Club filed a consolidated, timely administrative appeal with the EPA as to both fee waiver denials on November 27, 2017. *See* Exhibit G (and incorporated herein by reference). EPA's response to Sierra Club's administrative appeal was due on December 26, 2017. 5 U.S.C. § 552(a)(6)(A)(ii); 40 C.F.R. § 2.104(k).

51. EPA has not responded to Sierra Club's administrative appeal concerning the fee waiver request denials.

## FIRST CAUSE OF ACTION

52. The previous paragraphs are re-alleged and incorporated by reference.

53. EPA has failed to make a final determination with regard to Sierra Club's requests for records, to produce the responsive materials, or to identify any grounds to withhold the responsive records.

54. The Agency has thereby violated FOIA's requirements, including (without limitation): the Act's requirement that an agency make a timely responsive determination, 5. U.S.C. § 552(a)(6); and FOIA's requirement that an agency timely complete a search for responsive records, and promptly make such records available, 5 U.S.C. § 552(a)(3).

55. The Sierra Club has exhausted its administrative remedies, and is otherwise entitled to obtain the requested records.

## SECOND CAUSE OF ACTION

56. The previous paragraphs are re-alleged and incorporated by reference.

57. EPA failed to reply to Sierra Club's fee waiver requests within the 20-day time limit allotted by statute and regulation.

58. The Sierra Club has exhausted its administrative remedies.

59. EPA has not given Sierra Club written notice of unusual circumstances, and no unusual or exceptional circumstances exist that might excuse a late response. 5 U.S.C. § 552(a)(4)(A)(viii)(II).

60. Because EPA failed to comply with FOIA's statutory deadlines, EPA must provide Sierra Club with responsive records without assessing any search or duplication fees. 5 U.S.C. § 552(a)(4)(A)(viii).

THIRD CAUSE OF ACTION

61. The previous paragraphs are re-alleged and incorporated by reference.

62. This cause of action is pled as an alternative to the second cause of action.

63. Sierra Club's July 17, 2017 and July 21, 2017 FOIA requests established that Sierra Club is entitled to fee waivers for both FOIA requests under FOIA and EPA regulations.

64. EPA denied Sierra Club's fee waiver request in connection with the July 17th FOIA request on August 29, 2017; and denied the fee waiver request related to Sierra Club's July 20th FOIA request on August 30, 2017. EPA claimed Sierra Club's requests did not "demonstrate that the requested information concerns identifiable operations and activities of the government." *See* Exhibits E & F.

65. Sierra Club filed a consolidated administrative appeal of EPA's denials of the fee waiver requests on November 27, 2017, incorporated herein by reference, demonstrating that EPA's denials of the fee waiver requests were contrary to FOIA and EPA's implementing regulations. *See* Exhibit G.

66. EPA has not responded to the Sierra Club's fee waiver appeal within the mandatory 20 days. 5 U.S.C § 552(a)(6)(A)(ii).

1    67. The Sierra Club has exhausted its administrative remedies.

2    68. Because Sierra Club's fee waiver requests and appeal demonstrate that the requested

3    information concerns government activities and operations and otherwise satisfies the criteria for

4    fee waiver requests under FOIA and EPA regulations, EPA's denial of the fee waivers is

5    unlawful. 5 U.S.C. § 552(a)(4)(A)(iii); 40 C.F.R. §§ 2.107(l)(1)-(3).

6

7                                  PRAYER FOR RELIEF

8    Wherefore, Plaintiff respectfully requests that this Court:

9    (1) Declare that EPA has violated FOIA, by its failure to timely respond to Sierra Club's

10        requests and fee waiver appeal, and its failure to make the requested records available;

11   (2) Order that the EPA make available to Sierra Club the records Sierra Club has requested,

12        promptly and at no cost;

13   (3) Retain jurisdiction over this case to rule on any assertions by EPA that any responsive

14        records held by the Agency are, in whole or in part, exempt from disclosure;

15   (4) Award Sierra Club's litigation costs and attorneys' fees in this action;

16   (5) Order such other relief as the Court may deem just and proper.

17

18

19

20

21

22

23

**COMPLAINT**

1    Dated: June 11, 2018

2                                    Respectfully submitted,

3

4                                    */s/ Andrea Issod*
                                     Andrea Issod (CA Bar No. 230920)
5                                    Elena Saxonhouse (CA Bar No. 235139)
                                     Marta Darby (CA Bar No. 310690)
6                                    Sierra Club Environmental Law Program
                                     2101 Webster St., Ste. 1300
7                                    Oakland, CA 94612
                                     andrea.issod@sierraclub.org
                                     elena.saxonhouse@sierraclub.org
8                                    marta.darby@sierraclub.org
                                     phone (415) 977-5544
9
                                     Counsel for Plaintiff Sierra Club
10

11

12

13

14

15

16

17

18

19

20

21

22

23

# Exhibit A



July 17, 2017

**VIA FOIAONLINE.REGULATIONS.GOV**
**U.S. Environmental Protection Agency Headquarters**

**Re:     Freedom of Information Act Request: Communications of EPA Senior Staff**

Dear FOIA Officer:

This is a request under the Freedom of Information Act, 5 U.S.C. § 552, as amended ("FOIA"), from Sierra Club, a nonprofit organization whose purpose is to explore, enjoy and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; and to educate and enlist humanity to protect and restore the quality of the natural and human environments.

### <u>REQUESTED RECORDS[1]</u>

Sierra Club requests Records of the following type in the possession, custody, or control of the U.S. Environmental Protection Agency ("EPA") for the period January 20, 2017 through the date of this request:[2]

1.  All emails, text messages, faxes, voice mails, and other form of communications between any of the following personnel and any person outside of EPA:

---

[1] "Records" means information of any kind, including writings (handwritten, typed, electronic or otherwise produced, reproduced or stored), letters, memoranda, correspondence, notes, applications, completed forms, studies, reports, reviews, guidance documents, policies, telephone conversations, telefaxes, emails, documents, databases, drawings, graphs, charts, photographs, minutes of meetings, electronic and magnetic recordings of meetings, and any other compilation of data from which information can be obtained. Without limitation, the records requested include records relating to the topics described below at any stage of development, whether proposed, draft, pending, interim, final or otherwise. All of the foregoing are included in this request if they are in the possession of or otherwise under the control of EPA, National Headquarters and all of its Offices, Regions and other subdivisions.
[2] The time period for a records search can begin on the first-employed staff person's date of hire, but as the dates on which these individuals joined the EPA are not public, we are unable to specify a narrower time frame.

      a.  Brittany Bolen (Office of the Administrator)
      b.  Byron Brown (Office of the Administrator)
      c.  Holly Greaves (Office of the Administrator)
      d.  Albert Kelly (Office of the Administrator)
      e.  Richard Yamada (Office of Research and Development)
      f.  Nancy Beck (Office of Chemical Safety and Pollution Prevention)
      g.  Dennis Lee Forsgren (Office of Water)

2. Any phone logs or other indices which memorialize communications between the EPA personnel listed in (1) above and any person outside of EPA.

3. All calendars, whether electronic or in paper format, of the EPA personnel listed in (1) above for the above-listed time period.

4. All sign-in sheets or other records memorializing attendance at any meetings with the EPA personnel listed in (1) above for the above-listed time period at which a person outside of EPA was in attendance.

5. All emails, faxes, voicemails, texts or other forms of communication that have been deleted which fit the above specifications and which remain recoverable in any way. If fulfilling this specification requires additional time, we would ask that production of documents meeting specifications 1-4 be given priority and processed separately from any potential responsive records to this specification.

For purposes of this request, the term "person outside of EPA" means any person who is **not** an employee within the EPA, subject to the following exclusions: We are **not** seeking communications to or from persons employed elsewhere within the Executive Branch of the United States; persons employed by the executive branch of any state (i.e. state agencies); or communications with persons who have an executed legal contract to provide consulting or other services to EPA if the communications post-date that contract. You may also specifically exclude from processing and release any records that are publicly available (e.g., through regulations.gov).

This request incudes communication related to EPA that is or was on any system or device, computer, phone, smartphone, tablet, email account, cloud, server or other communication system either **personal or business** that is or was owned **or** operated by the EPA personnel listed in (1) above or otherwise established for the purposes of communicating with those personnel.

2

This request includes all emails or other communications from any personal account operated by the EPA personnel listed in (1) above which have been forwarded into an EPA government email account.

This request applies to all email accounts assigned to or operated by the EPA personnel listed in (1) above, whether on an official EPA email address or server or not, that relate to official business of EPA. This request applies to so-called "alias" email accounts that may or may not include the names the EPA personnel listed in (1) above in the email address.

## EXEMPT RECORDS

If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and deliver the non-exempt portions of such records to my attention at the address below within the statutory time limit. 5 U.S.C. § 552(b).

If EPA denies all or part of this request, please cite the specific exemptions you believe justify your refusal to release the information and notify us of your appeal procedures available under the law.

## FORMAT OF REQUESTED RECORDS

Under FOIA, you are obligated to provide records in a readily-accessible electronic format and in the format requested. *See, e.g.*, 5 U.S.C. § 552(a)(3)(B)("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format.").

Please provide all records in an electronic .pdf format that is text-searchable and OCR-formatted. Portfolios and embedded files within files are not readily-accessible. Please do not provide the records in a single, or "batched,".pdf file. Please segregate documents responsive to request (1) above from documents responsive to request (2).

## RECORD DELIVERY

We appreciate a prompt determination on the requested records. As mandated by FOIA, we anticipate a reply within 20 working days. 5 U.S.C. § 552(a)(6)(A)(i).  Please email copies of the requested records to the e-mail address below. Please deliver documents that are not available in an electronic format to the physical address below. Failure to comply within the statutory timeframe may result in Sierra Club filing an action before the relevant U.S. District Court to ensure timely receipt of the requested materials.

3

*Deliver electronic documents to:*
Elena Saxonhouse
elena.saxonhouse@sierraclub.org

*Deliver other documents to:*
Elena Saxonhouse
Sierra Club - Environmental Law Program
2101 Webster Street, Suite 1300
Oakland, CA 94612

Please send documents on a rolling basis. EPA's search for—or deliberations concerning—certain records should not delay the production of others that EPA has already retrieved and elected to produce. *See generally* 40 C.F.R. § 2.104 (describing response deadlines).

<u>**FEE WAIVER REQUEST**</u>

I respectfully request that you waive all fees in connection with this request as provided by 5 U.S.C. § 552(a)(4)(A)(iii) and 40 C.F.R. § 2.107(l). Sierra Club is the nation's oldest grassroots organization with more than 2.9 million members and supporters nationwide. Sierra Club is a leading non-governmental organization seeking to educate and mobilize the public on issues of environmental protection including climate change, fossil fuel energy, clean energy and clean water. Sierra Club has spent years promoting the public interest through the development of policies that protect human health and the environment, and has routinely received fee waivers under FOIA. [3]

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as Sierra Club access to government records without the payment of fees. *Ettlinger v. FBI*, 596 F. Supp. 867, 872 (D. Mass. 1984) (fee waiver provision intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and non-profit public interest groups.").

---

[3] For a recent example, see FOIA Request Reference No. EPA-HQ-2017-8568 (fee letter waiver received June 28, 2017).

As explained below, this FOIA request satisfies the factors listed in EPA's governing regulations for waiver or reduction of fees, as well as the requirements of fee waiver under the FOIA statute – that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii), *see also* 40 C.F.R. § 2.107(l).

1. **The subject matter of the requested records specifically concerns identifiable "operations and activities of the government."**

The requested records relate to the communications of senior level EPA officials with outside parties. These activities are unquestionably "identifiable operations or activities of the government."

2. **The disclosure of the requested documents would be meaningfully informative and "likely to contribute to an understanding of Federal government operations or activities."**

The activities of EPA's senior staff, including their coordination with outside groups and individuals, are likely to shed light on a variety of issues of crucial public interest. Sierra Club members and the public at large are gravely concerned about the EPA's anti-regulatory agenda, and close ties to polluting industries.

Once the requested documents are made available, Sierra Club will analyze them and present its findings to its members and online activists and the general public in a manner that will meaningfully enhance the public's understanding of EPA's activities. The requested records are not otherwise in the public domain and are not accessible other than through a FOIA request. The documents requested will thus be "meaningfully informative" and "likely to contribute" to an understanding of EPA's operations.

3. **The disclosure would contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons.**

Sierra Club has longstanding experience and expertise in the subject area of the FOIA requests, including issues related to government accountability and transparency, the Clean Air Act, Clean Water Act, climate policy, the protection of the natural environment, and the development and use of energy resources.

Sierra Club disseminates the information it receives through FOIA requests in a variety of ways, such as: analysis and distribution to the media, distribution through publication and mailing, posting on its website, emailing and list serve distribution to our members across the U.S., and via public meetings and events. Every year the Sierra Club website receives 26,298,200 unique visits and over 30 million page views; on average, the site gets 72,049 visits per day. Sierra

Magazine is a bi-monthly magazine with a printed circulation of approximately 650,000 copies. Sierra Club Insider, an electronic newsletter, is sent to nearly 3 million people twice a month. In addition, Sierra Club disseminates information obtained by FOIA requests through comments to administrative agencies, and where necessary, through the judicial system. In the past, Sierra Club has published, posted, and disseminated numerous stories on coal and coal power plants regarding their impacts on health, the environment and alternative energy. This includes information on Sierra Club's web pages, such as our Beyond Coal Campaign portal, our Clean Energies Solutions portal and our press releases.[4]

Sierra Club intends to share the information received from this FOIA request with our impacted members across the country, the media and our allies who share a common interest in the operations of the EPA under the new Administrator.

Sierra Club unquestionably has the "specialized knowledge" and "ability and intention" to disseminate the information requested in the broad manner outlined above, and to do so in a manner that contributes to the understanding of the "public-at-large."

**4.  The disclosure would contribute "significantly" to public understanding of government operations or activities.**

The records requested would shed light on the activities of EPA senior staff, including personnel who have close ties with polluting industries and their advocacy groups, and who have actively promoted an anti-regulatory agenda. The public is gravely concerned about EPA's intent to roll back safeguards of public health and the environment. After reviewing thousands of comments submitted to EPA's regulatory rollback docket, E&E News concluded, "The public has one resounding message for U.S. EPA: Don't roll back regulations protecting our planet."[5] Disclosure of the records requested above will significantly enhance the public's understanding of EPA's

---

[4] For example, Sierra Club sought information about coal export and permitting activities in Oregon via a state public records act request at the Port of Coos Bay. All correspondence is published online and has received extensive media attention from press releases on the subject. *See* Sierra Club Challenges Dirty and Dangerous Fossil Fuel Exports in Oregon, http://content.sierraclub.org/environmentallaw/lawsuit/2013/sierra-club-challenges-dirty-and-dangerous-fossil-fuel-exports-oregon. Sierra Club also recently publicized the results of its FOIA requests regarding agency job freezes, a story that was picked up by the Washington Post.  Alexander Rony, *Trump Admin Policy Leaves 700 CDC Jobs Vacant*, The Planet, http://www.sierraclub.org/planet/2017/05/trump-admin-policies-leave-700-cdc-jobs-vacant; Lena H. Sun, *Nearly 700 vacancies at CDC because of Trump administration's hiring freeze*, The Washington Post, https://www.washingtonpost.com/news/to-your-health/wp/2017/05/19/nearly-700-vacancies-at-cdc-because-of-trump-administration-hiring-freeze/?utm_=.6c2e70d8581e.
[5] Niina Heikkinen, E&E NEWS, *Experts Question if EPA Will Consider Thousands of Comments* (Apr. 24, 2017), https://www.eenews.net/climatewire/2017/04/24/stories/1060053432.

activities, including whether senior EPA staff are working to further the interests of polluting industries rather than the public health and safety of all Americans.

**5. The requester has no commercial interest that would be furthered by the requested disclosure.[6]**

Sierra Club has no commercial interest in the requested records. Nor does it have any intention to use these records in any manner that "furthers a commercial, trade, or profit interest" as those terms are commonly understood. Sierra Club is a nonprofit, tax-exempt organization under sections 501(c)(3) and 501(c)(4) of the Internal Revenue Code, and as such has no commercial interest. The requested records will be used for the furtherance of Sierra Club's mission to inform the public on matters of vital importance to the environment and public health.

Sierra Club respectfully requests that EPA waive processing and copying fees pursuant to 5 U.S.C. § 552(a)(4)(A) because the public will be the primary beneficiary of this requested information. In the event that your agency denies a fee waiver, please send a written explanation for the denial. Please do not incur expenses beyond $250 without first contacting our office for explicit authorization.

Thank you for your cooperation. If you find that this request is unclear in any way please do not hesitate to call me to see if I can clarify the request or otherwise expedite and simplify your efforts to comply.

*/s/ Elena Saxonhouse*
Elena Saxonhouse
Senior Attorney
Sierra Club - Environmental Law Program
2101 Webster Street, Suite 1300
Oakland, CA 94612
elena.saxonhouse@sierraclub.org
(415) 977-5765

---

[6] Because Sierra Club has no commercial interest, it is not necessary to consider the final factor for a fee waiver, which compares the magnitude of an identified commercial interest to the public interest in disclosure.

# Exhibit B



July 19, 2017

*VIA* **FOIAONLINE.REGULATIONS.GOV**
**U.S. Environmental Protection Agency Headquarters**

Re:     **Freedom of Information Act Request: External Communications by U.S. EPA**
        **Administrator Scott Pruitt's Executive Assistant Michelle Hale**

Dear FOIA Officer:

This is a request under the Freedom of Information Act, 5 U.S.C. § 552, *as amended* ("FOIA"), from Sierra Club, a nonprofit organization whose purpose is to explore, enjoy and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; and to educate and enlist humanity to protect and restore the quality of the natural and human environments.

## REQUESTED RECORDS[1]

Sierra Club requests Records of the following type in the possession, custody, or control of the U.S. Environmental Protection Agency ("EPA") for the time period starting from **February 17, 2017 through the present**:

1.  All emails, text messages, faxes, voice mails, and other form of communications from, or to, Michelle Hale with any person outside of EPA, as well as any phone logs or other indices which memorialize communications with said persons, relating to the arrangement, advance preparation or scheduling of phone calls or meetings with or appearances by U.S. EPA Administrator Scott Pruitt.

---

[1] "Records" means information of any kind, including writings (handwritten, typed, electronic or otherwise produced, reproduced or stored), letters, memoranda, correspondence, notes, applications, completed forms, studies, reports, reviews, guidance documents, policies, telephone conversations, telefaxes, emails, documents, databases, drawings, graphs, charts, photographs, minutes of meetings, electronic and magnetic recordings of meetings, and any other compilation of data from which information can be obtained. Without limitation, the records requested include records relating to the topics described below at any stage of development, whether proposed, draft, pending, interim, final or otherwise. All of the foregoing are included in this request if they are in the possession of or otherwise under the control of EPA, National Headquarters and all of its Offices, Regions and other subdivisions.

2. All calendars, whether electronic or in paper format, of U.S. EPA Administrator Scott Pruitt for the above listed time period.[2]

3. All sign-in sheets or other records memorializing attendance at any meetings with Mr. Pruitt for the above-listed time period at which a person outside of EPA was in attendance. [3]

4. All emails, faxes, voicemails, texts or other forms of communication that have been deleted which fit the above specifications and which remain recoverable in any way. If fulfilling this specification requires additional time, we would ask that production of documents meeting specifications 1-3 be given priority and processed separately from any potential responsive records to this specification.

For purposes of this request, the term "person outside of EPA" means any person who is **not** an employee within the EPA, or was not an employee of the EPA at the time of the communication. You may also specifically exclude from processing and release any records that are publicly available (e.g., through regulations.gov).

This request incudes communication related to EPA that is or was on any system or device, computer, phone, smartphone, tablet, email account, cloud, server or other communication system either **personal or business** that is or was owned **or** operated by Ms. Michelle Hale that was used for the purpose of communicating regarding the arrangement, advance preparation or scheduling of phone calls or meetings with or appearances by U.S. EPA Administrator Scott Pruitt.

This request includes all emails or other communications from any **personal** account operated by Ms. Michelle Hale which have been forwarded into an EPA government email account regarding the arrangement, advance preparation or scheduling of phone calls or meetings with or appearances by U.S. EPA Administrator Scott Pruitt.

---

[2] Prior requests made may result in the production of this information. *See* Freedom of Information Act Request: EPA Administrator Scott Pruitt's External Communications Tracking Number EPA-HQ-2017-008402; EPA-HQ-2017-009610. Freedom of Information Act Request on behalf of Sierra Club for External Communications by U.S. EPA Administrator Scott Pruitt's Scheduling and Advance Personnel Milan Hupp and Sydney Hupp EPA-HQ-2017-008571. If such information has already been provided, this request may be withdrawn but only to the extent that such documents were actually produced.

[3] *See* Footnote 2.

2

This request applies to all email accounts assigned to or operated by Ms. Michelle Hale, whether on an official EPA email address or server or not, that relate to official business of EPA. This request applies to so-called "alias" email accounts that may or may not include the name Michelle or Hale in the email address.

## EXEMPT RECORDS

If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and deliver the non-exempt portions of such records to my attention at the address below within the statutory time limit. 5 U.S.C. § 552(b).

If EPA denies all or part of this request, please cite the specific exemptions you believe justify your refusal to release the information and notify us of your appeal procedures available under the law.

## FORMAT OF REQUESTED RECORDS

Under FOIA, you are obligated to provide records in a readily-accessible electronic format and in the format requested. *See, e.g.*, 5 U.S.C. § 552(a)(3)(B)("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format.").

Please provide all records in an electronic .pdf format that is text-searchable and OCR-formatted. Portfolios and embedded files within files are not readily-accessible. Please do not provide the records in a single, or "batched,".pdf file. We appreciate the inclusion of an index.

## RECORD DELIVERY

We appreciate your prompt determination on the requested records. As mandated in FOIA, we anticipate a reply within 20 working days. 5 U.S.C. § 552(a)(6)(A)(i). Failure to comply within the statutory timeframe may result in Sierra Club filing an action before the relevant U.S. District Court to ensure timely receipt of the requested materials. You may email copies of the requested records to:

> Justine Thompson Cowan
> Counsel for Sierra Club
> cowan@cowannonprofits.com

If you are unable to deliver the documents through electronic means, please deliver the documents to:

Elena Saxonhouse, Senior Attorney
Sierra Club - Environmental Law Program
2101 Webster Street, Suite 1300
Oakland, CA 94612

Please send documents on a rolling basis. EPA's search for—or deliberations concerning—certain records should not delay the production of others that EPA has already retrieved and elected to produce. *See generally* 40 C.F.R. § 2.104 (describing response deadlines).

## FEE WAIVER REQUEST

I respectfully request that you waive all fees in connection with this request as provided by 5 U.S.C. § 552(a)(4)(A)(iii) and 40 C.F.R. § 2.107(l). Sierra Club is the nation's oldest grassroots organization with more than 2.9 million members and supporters nationwide. Sierra Club is a leading non-governmental organization seeking to educate and mobilize the public on issues of environmental protection including climate change, fossil fuel energy, clean energy and clean water. Sierra Club has spent years promoting the public interest through the development of policies that protect human health and the environment, and has routinely received fee waivers under FOIA. [4]

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as Sierra Club access to government records without the payment of fees. *Ettlinger v. FBI*, 596 F. Supp. 867, 872 (D. Mass. 1984) (fee waiver provision intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and non-profit public interest groups.").

As explained below, this FOIA request satisfies the factors listed in EPA's governing regulations for waiver or reduction of fees, as well as the requirements of fee waiver under the FOIA statute – that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii), *see also*

---

[4] For recent examples, *see* FOIA Request Reference No. EPA-HQ-2017-2172 (fee letter waiver received Jan. 9, 2017); FOIA Request Reference No. EPA-HQ-2017-008402 (fee letter waiver received June 26, 2007); FOIA Request Reference No. EPA-HQ-2017-008571 & EPA-HQ-2017-008581 (fee letter waiver received June 27, 2017); FOIA Request Reference No. EPA-HQ-2017-008568 (fee letter waiver received June 28, 2017).

40 C.F.R. § 2.107(l).

## 1. The subject matter of the requested records specifically concerns identifiable "operations and activities of the government."

The requested records relate to meetings and schedules arranged for the U.S. EPA Administrator with external parties. These records will contribute to an understanding of the operations and actions of the EPA under the new Administrator. By their very definition, these activities are "identifiable operations or activities of the government."

## 2. The disclosure of the requested documents would be meaningfully informative and "likely to contribute to an understanding of Federal government operations or activities."

Disclosure of the requested records will allow Sierra Club to convey information to the public about the communications and meetings of Mr. Pruitt, which will reflect his actions, objectives, and priorities as the new EPA Administrator. This is an issue of heightened public interest and concern. Mr. Pruitt is a highly controversial figure who was confirmed to his position by the slimmest of margins. Prior to taking office, he had sued to stop EPA regulations EPA at least 13 times, working closely with polluting industries and conservative political organizations who were also large contributors to his political campaigns. The public at large and Sierra Club membership are extremely concerned that he is using the office of EPA Administrator to further his own political aspirations and the fortunes of his industry donors, rather than to ensure a healthy and safe environment for American families.

Once the requested documents are made available, Sierra Club will analyze them and present its findings to its members and online activists and the general public in a manner that will meaningfully enhance the public's understanding of how the new Administrator has been acting and operating within the EPA. The documents requested will thus be "meaningfully informative" and "likely to contribute" to an understanding of EPA's operations.

The requested records are not otherwise in the public domain and are not accessible other than through a FOIA request. Indeed, the request explicitly excludes those documents already available through regulations.gov. Thus, the requested documents provide information that is not already in the public domain and is accordingly likely to meaningfully contribute to public understanding of governmental operations.

## 3. The disclosure would contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons.

Sierra Club has long-standing experience and expertise in the subject area of the FOIA requests, including issues related to government accountability and transparency, the Clean Air Act, Clean

5

Water Act, climate policy, the protection of the natural environment, and the development and use of energy resources.

Sierra Club disseminates the information it receives through FOIA requests in a variety of ways, such as: analysis and distribution to the media, distribution through publication and mailing, posting on its website, emailing and list serve distribution to our members across the U.S., and via public meetings and events. Every year the Sierra Club website receives 26,298,200 unique visits and over 30 million page views; on average, the site gets 72,049 visits per day. Sierra Magazine is a bi-monthly magazine with a printed circulation of approximately 650,000 copies. Sierra Club Insider, an electronic newsletter, is sent to nearly 3 million people twice a month. In addition, Sierra Club disseminates information obtained by FOIA requests through comments to administrative agencies, and where necessary, through the judicial system. In the past, Sierra Club has published, posted, and disseminated numerous stories on coal and coal power plants regarding their impacts on health, the environment and alternative energy. This includes information on Sierra Club's webpages, such as our Beyond Coal Campaign portal, our Clean Energies Solutions portal and our press releases.[5]

Sierra Club intends to share the information received from this FOIA request with our impacted members across the country, the media and our allies who share a common interest in the operations of the EPA under the new Administrator.

Sierra Club unquestionably has the "specialized knowledge" and "ability and intention" to disseminate the information requested in the broad manner outlined above, and to do so in a manner that contributes to the understanding of the "public-at-large."

**4.  The disclosure would contribute "significantly" to public understanding of government operations or activities.**

As discussed in section (2) above, the records requested will significantly contribute to the public understanding of governmental operations, and activities. Disclosure of the Administrator's

---

[5] For example, Sierra Club sought information about coal export and permitting activities in Oregon via a state public records act request at the Port of Coos Bay. All correspondence is published online and has received extensive media attention from press releases on the subject. *See* Sierra Club Challenges Dirty and Dangerous Fossil Fuel Exports in Oregon, http://content.sierraclub.org/environmentallaw/lawsuit/2013/sierra-club-challenges-dirty-and-dangerous-fossil-fuel-exports-oregon. Sierra Club also recently publicized the results of its FOIA requests regarding agency job freezes, a story that was picked up by the Washington Post. Alexander Rony, *Trump Admin Policy Leaves 700 CDC Jobs Vacant*, The Planet, http://www.sierraclub.org/planet/2017/05/trump-admin-policies-leave-700-cdc-jobs-vacant; Lena H. Sun, *Nearly 700 vacancies at CDC because of Trump administration's hiring freeze*, The Washington Post, https://www.washingtonpost.com/news/to-your-health/wp/2017/05/19/nearly-700-vacancies-at-cdc-because-of-trump-administration-hiring-freeze/?utm_term=.6c2e70d8581e.

communications and other interactions with outside parties will significantly enhance the public's understanding of whether Administrator Pruitt is advancing the stated mission of the EPA to protect public health and the environment, or whether he is advancing his own agenda and that of his political donors.

5. **The requester has no commercial interest that would be furthered by the requested disclosure.[6]**

Sierra Club has no commercial interest in the requested records. Nor does it have any intention to use these records in any manner that "furthers a commercial, trade, or profit interest" as those terms are commonly understood. Sierra Club is a nonprofit, tax-exempt organization under sections 501(c)(3) and 501(c)(4) of the Internal Revenue Code, and as such has no commercial interest. The requested records will be used for the furtherance of Sierra Club's mission to inform the public on matters of vital importance to the environment and public health.

Sierra Club respectfully requests that EPA waive processing and copying fees pursuant to 5 U.S.C. § 552(a)(4)(A) because the public will be the primary beneficiary of this requested information. In the event that your agency denies a fee waiver, please send a written explanation for the denial. In the event that fees are ultimately assessed, please do not incur expenses beyond $250 without first contacting our office for explicit authorization.

Thank you for your cooperation. If you find that this request is unclear in any way please do not hesitate to call me to see if I can clarify the request or otherwise expedite and simplify your efforts to comply. I can be reached at (407) 506-4109 or by email at cowan@cowannonprofits.com.

/s/ *Justine Thompson Cowan*

Justine Thompson Cowan, Esq.
Counsel for Sierra Club
P.O. Box 533507
Orlando, FL 32853
(407) 506-4109
cowan@cowannonprofits.com

---

[6] Because Sierra Club has no commercial interest, it is not necessary to consider the final factor for a fee waiver, which compares the magnitude of an identified commercial interest to the public interest in disclosure.

# Exhibit C



July 21, 2017

***VIA* FOIAONLINE.REGULATIONS.GOV**
**U.S. Environmental Protection Agency Headquarters**

**Re:     Freedom of Information Act Request: Communications of EPA Intergovernmental**
**            Relations Staff**

Dear FOIA Officer:

This is a request under the Freedom of Information Act, 5 U.S.C. § 552, as amended ("FOIA"),
from Sierra Club, a nonprofit organization whose purpose is to explore, enjoy and protect the
wild places of the earth; to practice and promote the responsible use of the earth's ecosystems
and resources; and to educate and enlist humanity to protect and restore the quality of the
natural and human environments.

**<u>REQUESTED RECORDS</u>[1]**

Sierra Club requests Records of the following type in the possession, custody, or control of the
U.S. Environmental Protection Agency ("EPA") for the period January 20, 2017 through the date
of this request:[2]

---

[1] "Records" means information of any kind, including writings (handwritten, typed, electronic or
otherwise produced, reproduced or stored), letters, memoranda, correspondence, notes, applications,
completed forms, studies, reports, reviews, guidance documents, policies, telephone conversations,
telefaxes, emails, documents, databases, drawings, graphs, charts, photographs, minutes of meetings,
electronic and magnetic recordings of meetings, and any other compilation of data from which
information can be obtained. Without limitation, the records requested include records relating to the
topics described below at any stage of development, whether proposed, draft, pending, interim, final or
otherwise. All of the foregoing are included in this request if they are in the possession of or otherwise
under the control of EPA, National Headquarters and all of its Offices, Regions and other subdivisions.
[2] The time period for a records search can begin on the first-employed staff person's date of hire, but as
the dates on which these individuals joined the EPA are not public, we are unable to specify a narrower
time frame.

1. All emails, text messages, faxes, voice mails, and other form of communications between any of the following personnel and any person outside of EPA:[3]

   a. Troy Lyons
   b. Elizabeth Bennett
   c. Christian Palich
   d. Layne Bangerter
   e. Aaron Ringel
   f. Kaitlyn Shimmin
   g. Kenneth Wagner

2. Any phone logs or other indices which memorialize communications between any of the EPA personnel listed in (1) above and any person outside of EPA.

3. All calendars, whether electronic or in paper format, of each of the EPA personnel listed in (1) above for the above-listed time period.

4. All sign-in sheets or other records memorializing attendance at any meetings during the above-listed time period with the EPA personnel listed in (1) above at which a person outside of EPA was in attendance.

5. All emails, faxes, voicemails, texts or other forms of communication that have been deleted which fit the above specifications and which remain recoverable in any way. If fulfilling this specification requires additional time, we ask that production of documents meeting specifications 1-4 be given priority and processed separately from any potential responsive records to this specification.

For purposes of this request, the term "person outside of EPA" means any person who is **not** an employee within the EPA, subject to the following exclusions: We are **not** seeking communications to or from persons employed elsewhere within the Executive Branch of the United States, or persons who have an executed legal contract to provide consulting or other services to EPA.  You may also specifically exclude from processing and release any records that are publicly available (e.g., through regulations.gov). **In contrast to other recent requests from Sierra Club for EPA employee's communications, we are including communications with state agencies (and other state officials) in the scope of this request.**

This request incudes communication related to EPA that is or was on any system or device, computer, phone, smartphone, tablet, email account, cloud, server or other communication

---

[3] All individuals listed are in EPA's Office of Congressional and Intergovernmental Relations except for Kenneth Wagner, who is in the Office of the Administrator.

system either **personal or business** that is or was owned **or** operated by the EPA personnel listed in (1) above or otherwise established for the purposes of communicating with those personnel.

This request includes all emails or other communications from any **personal** account operated by the EPA personnel listed in (1) above which have been forwarded into an EPA government email account.

This request applies to all email accounts assigned to or operated by the EPA personnel listed in (1) above, whether on an official EPA email address or server or not, that relate to official business of EPA. This request applies to so-called "alias" email accounts that may or may not include the names the EPA personnel listed in (1) above in the email address.

## EXEMPT RECORDS

If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and deliver the non-exempt portions of such records to my attention at the address below within the statutory time limit. 5 U.S.C. § 552(b).

If EPA denies all or part of this request, please cite the specific exemptions you believe justify your refusal to release the information and notify us of your appeal procedures available under the law.

## FORMAT OF REQUESTED RECORDS

Under FOIA, you are obligated to provide records in a readily-accessible electronic format and in the format requested. *See, e.g.*, 5 U.S.C. § 552(a)(3)(B)("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format.").

Please provide all records in an electronic .pdf format that is text-searchable and OCR-formatted. Portfolios and embedded files within files are not readily-accessible. Please do not provide the records in a single, or "batched,".pdf file. Please segregate documents either by employee or by request categories (1)-(5) above.

## RECORD DELIVERY

We appreciate a prompt determination on the requested records. As mandated in FOIA, we anticipate a reply within 20 working days. 5 U.S.C. § 552(a)(6)(A)(i).  Please email copies of the requested records to the e-mail address below. Please deliver documents that are not available

in an electronic format to the physical address below. Failure to comply within the statutory timeframe may result in Sierra Club filing an action before the relevant U.S. District Court to ensure timely receipt of the requested materials.

> *Deliver electronic documents to:*
> Elena Saxonhouse
> elena.saxonhouse@sierraclub.org
>
> *Deliver other documents to:*
> Elena Saxonhouse
> Sierra Club - Environmental Law Program
> 2101 Webster Street, Suite 1300
> Oakland, CA 94612

Please send documents on a rolling basis. EPA's search for—or deliberations concerning—certain records should not delay the production of others that EPA has already retrieved and elected to produce. *See generally* 40 C.F.R. § 2.104 (describing response deadlines).

## FEE WAIVER REQUEST

I respectfully request that you waive all fees in connection with this request as provided by 5 U.S.C. § 552(a)(4)(A)(iii) and 40 C.F.R. § 2.107(l). Sierra Club is the nation's oldest grassroots organization with more than 2.9 million members and supporters nationwide. Sierra Club is a leading non-governmental organization seeking to educate and mobilize the public on issues of environmental protection including climate change, fossil fuel energy, clean energy and clean water. Sierra Club has spent years promoting the public interest through the development of policies that protect human health and the environment, and has routinely received fee waivers under FOIA. [4]

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as Sierra Club access to government records without the payment of fees. *Ettlinger v. FBI*, 596 F. Supp. 867, 872 (D.

---

[4] For a recent example, see FOIA Request Reference No. EPA-HQ-2017-8568 (fee letter waiver received June 28, 2017).

Mass. 1984) (fee waiver provision intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and non-profit public interest groups.").

As explained below, this FOIA request satisfies the factors listed in EPA's governing regulations for waiver or reduction of fees, as well as the requirements of fee waiver under the FOIA statute – that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii), *see also* 40 C.F.R. § 2.107(l).

**1. The subject matter of the requested records specifically concerns identifiable "operations and activities of the government."**

The requested records relate to the interactions between recently appointed EPA communications staff and the media, and the discussions between these employees and Administrator Pruitt regarding his public communications and other information EPA provides to the public. These activities are unquestionably "identifiable operations or activities of the government."

**2. The disclosure of the requested documents would be meaningfully informative and "likely to contribute to an understanding of Federal government operations or activities."**

The activities of EPA's new intergovernmental relations staff are likely to shed light on a variety of issues of crucial public interest. Sierra Club members and the public at large are gravely concerned about the EPA's anti-regulatory agenda, and close ties to polluting industries and their advocates in Congress and state governments.

Once the requested documents are made available, Sierra Club will analyze them and present its findings to its members and online activists and the general public in a manner that will meaningfully enhance the public's understanding of EPA's activities. The requested records are not otherwise in the public domain and are not accessible other than through a FOIA request. The documents requested will thus be "meaningfully informative" and "likely to contribute" to an understanding of EPA's operations.

**3. The disclosure would contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons.**

Sierra Club has longstanding experience and expertise on issues related to government accountability and transparency, the Clean Air Act, Clean Water Act, climate policy, the protection of the natural environment, and the development and use of energy resources.

5

Sierra Club disseminates the information it receives through FOIA requests in a variety of ways, such as: analysis and distribution to the media, distribution through publication and mailing, posting on its website, emailing and list serve distribution to our members across the U.S., and via public meetings and events. Every year the Sierra Club website receives 26,298,200 unique visits and over 30 million page views; on average, the site gets 72,049 visits per day. Sierra Magazine is a bi-monthly magazine with a printed circulation of approximately 650,000 copies. Sierra Club Insider, an electronic newsletter, is sent to nearly 3 million people twice a month. In addition, Sierra Club disseminates information obtained by FOIA requests through comments to administrative agencies, and where necessary, through the judicial system. In the past, Sierra Club has published, posted, and disseminated numerous stories on coal and coal power plants regarding their impacts on health, the environment and alternative energy. This includes information on Sierra Club's web pages, such as our Beyond Coal Campaign portal, our Clean Energies Solutions portal and our press releases.[5]

Sierra Club intends to share the information received from this FOIA request with our impacted members across the country, the media and our allies who share a common interest in the operations of the EPA under the new Administrator.

Sierra Club unquestionably has the "specialized knowledge" and "ability and intention" to disseminate the information requested in the broad manner outlined above, and to do so in a manner that contributes to the understanding of the "public-at-large."

**4. The disclosure would contribute "significantly" to public understanding of government operations or activities.**

Sierra Club members and the public at large are gravely concerned about the EPA's anti-regulatory agenda, close ties to polluting industries, and coordination with champions of those industries in Congress and state governments.  The activities of EPA's senior intergovernmental relations staff, including their coordination with outside groups and individuals, are likely to

---

[5] For example, Sierra Club sought information about coal export and permitting activities in Oregon via a state public records act request at the Port of Coos Bay. All correspondence is published online and has received extensive media attention from press releases on the subject. *See* Sierra Club Challenges Dirty and Dangerous Fossil Fuel Exports in Oregon, http://content.sierraclub.org/environmentallaw/lawsuit/2013/sierra-club-challenges-dirty-and-dangerous-fossil-fuel-exports-oregon. Sierra Club also recently publicized the results of its FOIA requests regarding agency job freezes, a story that was picked up by the Washington Post.  Alexander Rony, *Trump Admin Policy Leaves 700 CDC Jobs Vacant*, The Planet, http://www.sierraclub.org/planet/2017/05/trump-admin-policies-leave-700-cdc-jobs-vacant; Lena H. Sun, *Nearly 700 vacancies at CDC because of Trump administration's hiring freeze*, The Washington Post, https://www.washingtonpost.com/news/to-your-health/wp/2017/05/19/nearly-700-vacancies-at-cdc-because-of-trump-administration-hiring-freeze/?utm_term=.6c2e70d8581e.

shed light on how EPA may be using staff time to advance the interests of polluters instead of its mission to protect public health and the environment. Disclosure of the records requested above will significantly enhance the public's understanding of these activities.

**5.  The requester has no commercial interest that would be furthered by the requested disclosure.[6]**

Sierra Club has no commercial interest in the requested records. Nor does it have any intention to use these records in any manner that "furthers a commercial, trade, or profit interest" as those terms are commonly understood. Sierra Club is a nonprofit, tax-exempt organization under sections 501(c)(3) and 501(c)(4) of the Internal Revenue Code, and as such has no commercial interest. The requested records will be used for the furtherance of Sierra Club's mission to inform the public on matters of vital importance to the environment and public health.

Sierra Club respectfully requests that EPA waive processing and copying fees pursuant to 5 U.S.C. § 552(a)(4)(A) because the public will be the primary beneficiary of this requested information. In the event that your agency denies a fee waiver, please send a written explanation for the denial. Please do not incur expenses beyond $250 without first contacting our office for explicit authorization.

Thank you for your cooperation. If you find that this request is unclear in any way please do not hesitate to call me to see if I can clarify the request or otherwise expedite and simplify your efforts to comply.

*/s/ Elena Saxonhouse*
Elena Saxonhouse
Senior Attorney
Sierra Club - Environmental Law Program
2101 Webster Street, Suite 1300
Oakland, CA 94612
elena.saxonhouse@sierraclub.org
(415) 977-5765

---

[6] Because Sierra Club has no commercial interest, it is not necessary to consider the final factor for a fee waiver, which compares the magnitude of an identified commercial interest to the public interest in disclosure.

# Exhibit D



May 1, 2018

***VIA* FOIAONLINE.REGULATIONS.GOV**

National Freedom of Information Officer
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW (2822T)
Washington, DC 20460
Phone: (202) 566-1667

Re:     **Freedom of Information Act Request: EPA Internal Policies and Procedures on
        Text Messages**

Dear FOIA Officer:

This is a request under the Freedom of Information Act, 5 U.S.C. § 552, *as amended* ("FOIA"),
from Sierra Club, a nonprofit organization whose purpose is to explore, enjoy and protect the
wild places of the earth; to practice and promote the responsible use of the earth's ecosystems
and resources; and to educate and enlist humanity to protect and restore the quality of the natural
and human environments.

## REQUESTED RECORDS[1]

Sierra Club requests Records of the following type in the possession, custody, or control of the
U.S. Environmental Protection Agency ("EPA"):

1.   Provide a copy of the EPA guidance on how to email a text message from a mobile
     device to yourself that is referenced in EPA Policy CIO 2155.3 Records Management
     Policy, published in February 2015; *as available at*
     https://www.epa.gov/sites/production/files/2015-03/documents/cio-2155.3.pdf (February

---

[1] "Records" means information of any kind, including writings (handwritten, typed, electronic or otherwise
produced, reproduced or stored), letters, memoranda, correspondence, notes, applications, completed forms, studies,
reports, reviews, guidance documents, policies, telephone conversations, telefaxes, emails, documents, databases,
drawings, graphs, charts, photographs, minutes of meetings, electronic and magnetic recordings of meetings, and
any other compilation of data from which information can be obtained. Without limitation, the records requested
include records relating to the topics described below at any stage of development, whether proposed, draft,
pending, interim, final or otherwise. All of the foregoing are included in this request if they are in the possession of
or otherwise under the control of EPA, National Headquarters and all of its Offices, Regions and other subdivisions.

2015 Records Management Policy) *as available at* http://intranet.epa.gov/mobiledevices/pdf/Instructions-Saving-Text-Messages.pdf.

2. Provide any training materials on the February 2015 Records Management Policy.

3. Provide any records of headquarters staff trainings on the February 2015 Records Management Policy, including the training invitation/announcement, slides/handouts, and signed attendance sheets.

4. Provide any records that describe EPA policies or practices for training new staff on the February 2015 Records Management Policy.

5. Provide any records showing how EPA ensures new staff are trained on the February 2015 Records Management Policy.

6. Provide documents describing any approved databases where EPA staff can save text messages.

7. Provide a comprehensive count of how many text messages have been uploaded and are stored in EPA's Ez Email database from EPA HQ staff since January 21, 2017.

8. Provide a comprehensive count of how many text messages from EPA HQ staff are uploaded and stored in any other EPA databases since January 21, 2017.

9. Provide an index log for all text messages uploaded and stored in EPA's Ez Email database or any other EPA database since January 21, 2017 that include the following fields: Sender, Recipient, Time, Date, Subject, and Date logged.

### Duty to Preserve Records

EPA must preserve all the records requested herein while this FOIA is pending or under appeal. EPA shall not destroy any records while they are the subject of a pending request, appeal, or lawsuit under the FOIA.  40 C.F.R. § 2.106; *see Chambers v. U.S. Dep't of Interior,* 568 F.3d 998, 1004 (D.C. Cir. 2009) ("an agency is not shielded from liability if it intentionally transfers or destroys a document after it has been requested under FOIA or the Privacy Act").

If any of the requested records are destroyed, the agency and responsible officials are subject to attorney fee awards and sanctions, including fines and disciplinary action.  A court held EPA in contempt for "contumacious conduct" and ordered the agency to pay plaintiff's costs and fees for destroying "potentially responsive material contained on hard drives and email backup tapes." *Landmark Legal Found. v. EPA*, 272 F.Supp.2d 59, 62 (D.D.C. 2003); *see also Judicial Watch, Inc. v. Dep't of Commerce*, 384 F. Supp. 2d 163, 169 (D.D.C. 2005) (awarding attorneys' fees and costs because, among other factors, agency's "initial search was unlawful and egregiously mishandled and …likely responsive documents were destroyed and removed"), *aff'd in relevant part*, 470 F.3d 363, 375 (D.C. Cir. 2006) (remanding in part to recalculate attorney fees assessed).  In another case, in addition to imposing a $10,000 fine and awarding attorneys' fees and costs, the court found that an Assistant United States Attorney prematurely "destroyed

records responsive to [the] FOIA request while [the FOIA] litigation was pending" and referred him to the Department of Justice's Office of Professional Responsibility. *Jefferson v. Reno*, 123 F. Supp. 2d 1, 6 (D.D.C. 2000).

## EXEMPT RECORDS

If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and deliver the non-exempt portions of such records to my attention at the address below within the statutory time limit. 5 U.S.C. § 552(b).

If EPA denies all or part of this request, please cite the specific exemptions you believe justify your refusal to release the information and notify us of your appeal procedures available under the law.

## FORMAT OF REQUESTED RECORDS

Under FOIA, you are obligated to provide records in a readily-accessible electronic format and in the format requested. *See, e.g.*, 5 U.S.C. § 552(a)(3)(B)("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format.").

Please provide all records in an electronic .pdf format that is text-searchable and OCR-formatted. Portfolios and embedded files within files are not readily-accessible. Please do not provide the records in a single, or "batched,".pdf file. We appreciate the inclusion of an index.

## RECORD DELIVERY

We appreciate a prompt determination on the requested records. As mandated in FOIA, we anticipate a reply within 20 working days. 5 U.S.C. § 552(a)(6)(A)(i). Failure to comply within the statutory timeframe may result in Sierra Club filing an action before the relevant U.S. District Court to ensure timely receipt of the requested materials. You may email copies of the requested records to:

    David Abell
    david.abell@sierraclub.org

If you are unable to deliver the documents through electronic means, please deliver the documents to:

    David Abell
    Sierra Club - Environmental Law Program
    2101 Webster Street, Suite 1300
    Oakland, CA 94612

Please send documents on a rolling basis. EPA's search for—or deliberations concerning—certain records should not delay the production of others that EPA has already retrieved and elected to produce. *See generally* 40 C.F.R. § 2.104 (describing response deadlines).

## FEE WAIVER REQUEST

I respectfully request that you waive all fees in connection with this request as provided by 5 U.S.C. § 552(a)(4)(A)(iii) and 40 C.F.R. § 2.107(l). Sierra Club is the nation's oldest grassroots organization with more than 3 million members and supporters nationwide. Sierra Club is a leading non-governmental organization seeking to educate and mobilize the public on issues of environmental protection including climate change, fossil fuel energy, clean energy and clean water. Sierra Club has spent years promoting the public interest through the development of policies that protect human health and the environment, and has routinely received fee waivers under FOIA.[2]

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as Sierra Club access to government records without the payment of fees. *Ettlinger v. FBI*, 596 F. Supp. 867, 872 (D. Mass. 1984) (fee waiver provision intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and non-profit public interest groups.").

As explained below, this FOIA request satisfies the factors listed in EPA's governing regulations for waiver or reduction of fees, as well as the requirements of fee waiver under the FOIA statute – that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii), *see also* 40 C.F.R. § 2.107(l).

1. **The subject matter of the requested records specifically concerns identifiable "operations and activities of the government."**

---

[2] For recent examples, *see* FOIA Request Reference No. EPA-HQ-2017-2172 (fee letter waiver received Jan. 9, 2017); FOIA Request Reference No. EPA-HQ-2017-008402 (fee letter waiver received June 26, 2007); FOIA Request Reference No. EPA-HQ-2017-008571 & EPA-HQ-2017-008581 (fee letter waiver received June 27, 2017); FOIA Request Reference No. EPA-HQ-2017-008568 (fee letter waiver received June 28, 2017).

The requested records relate to EPA policies and procedures regarding the logging and storing of text messages. These records will contribute to an understanding of the operations and actions of the EPA. By their very definition, these activities are "identifiable operations or activities of the government."

2. **The disclosure of the requested documents would be meaningfully informative and "likely to contribute to an understanding of Federal government operations or activities."**

Disclosure of the requested records will allow Sierra Club to convey information to the public about EPA HQ staff compliance with the 2015 Records Management Policy, specifically, the logging and storage of text messages by EPA HQ staff.

Once the requested documents are made available, Sierra Club will analyze them and present its findings to its members and online activists and the general public in a manner that will meaningfully enhance the public's understanding of how EPA HQ staff is complying with the 2015 Records Management Policy. The documents requested will thus be "meaningfully informative" and "likely to contribute" to an understanding of EPA's operations.

The requested records are not otherwise in the public domain and are not accessible other than through a FOIA request. Indeed, the request explicitly excludes those documents already available through regulations.gov. Thus, the requested documents provide information that is not already in the public domain and are accordingly likely to meaningfully contribute to public understanding of governmental operations.

3. **The disclosure would contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons.**

Sierra Club has long-standing experience and expertise in the subject area of the FOIA requests, including issues related to government accountability and transparency, the Clean Air Act, Clean Water Act, climate policy, the protection of the natural environment, and the development and use of energy resources.

Sierra Club disseminates the information it receives through FOIA requests in a variety of ways, such as: analysis and distribution to the media, distribution through publication and mailing, posting on its website, emailing and list serve distribution to our members across the U.S., and via public meetings and events. Every year the Sierra Club website receives 26,298,200 unique visits and over 30 million page views; on average, the site gets 72,049 visits per day. Sierra Magazine is a bi-monthly magazine with a printed circulation of approximately 650,000 copies. Sierra Club Insider, an electronic newsletter, is sent to nearly 3 million people twice a month. In addition, Sierra Club disseminates information obtained by FOIA requests through comments to administrative agencies, and where necessary, through the judicial system. In the past, Sierra

Club has published, posted, and disseminated numerous stories on coal and coal power plants regarding their impacts on health, the environment and alternative energy. This includes information on Sierra Club's webpages, such as our <u>Beyond Coal Campaign</u> portal, our <u>Clean Energies Solutions</u> portal and our press releases.[3]

Sierra Club intends to share the information received from this FOIA request with our impacted members across the country, the media and our allies who share a common interest in the operations and activities of the EPA.

Sierra Club unquestionably has the "specialized knowledge" and "ability and intention" to disseminate the information requested in the broad manner outlined above, and to do so in a manner that contributes to the understanding of the "public-at-large."

**4. The disclosure would contribute "significantly" to public understanding of government operations or activities.**

As discussed in section (2) above, the records requested will significantly contribute to the public understanding of governmental operations, and activities. Disclosure of EPA HQ staff activities related to text messages and the 2015 Records Management Policy will significantly enhance the public's understanding of whether EPA HQ staff is in compliance with the 2015 Records Management Policy.

**5. The requester has no commercial interest that would be furthered by the requested disclosure.[4]**

Sierra Club has no commercial interest in the requested records. Nor does it have any intention to use these records in any manner that "furthers a commercial, trade, or profit interest" as those

---

[3] For example, Sierra Club sought information about coal export and permitting activities in Oregon via a state public records act request at the Port of Coos Bay. All correspondence is published online and has received extensive media attention from press releases on the subject. *See* Sierra Club Challenges Dirty and Dangerous Fossil Fuel Exports in Oregon, http://content.sierraclub.org/environmentallaw/lawsuit/2013/sierra-club-challenges-dirty-and-dangerous-fossil-fuel-exports-oregon. Sierra Club also recently publicized the results of its FOIA requests regarding agency job freezes, a story that was picked up by the Washington Post. Alexander Rony, *Trump Admin Policy Leaves 700 CDC Jobs Vacant*, The Planet, http://www.sierraclub.org/planet/2017/05/trump-admin-policies-leave-700-cdc-jobs-vacant; Lena H. Sun, *Nearly 700 vacancies at CDC because of Trump administration's hiring freeze*, The Washington Post, https://www.washingtonpost.com/news/to-your-health/wp/2017/05/19/nearly-700-vacancies-at-cdc-because-of-trump-administration-hiring-freeze/?utm_term=.6c2e70d8581e.

[4] Because Sierra Club has no commercial interest, it is not necessary to consider the final factor for a fee waiver, which compares the magnitude of an identified commercial interest to the public interest in disclosure.

terms are commonly understood. Sierra Club is a nonprofit, tax-exempt organization under sections 501(c)(3) and 501(c)(4) of the Internal Revenue Code, and as such has no commercial interest. The requested records will be used for the furtherance of Sierra Club's mission to inform the public on matters of vital importance to the environment and public health.

Sierra Club respectfully requests that EPA waive processing and copying fees pursuant to 5 U.S.C. § 552(a)(4)(A) because the public will be the primary beneficiary of this requested information. In the event that your agency denies a fee waiver, please send a written explanation for the denial. In the event that fees are ultimately assessed, please do not incur expenses beyond $250 without first contacting our office for explicit authorization.

Thank you for your cooperation. If you find that this request is unclear in any way please do not hesitate to call me to see if I can clarify the request or otherwise expedite and simplify your efforts to comply. I can be reached at (415) 977-5764 or by email at david.abell@sierraclub.org.


David Abell
Sierra Club Environmental Law Program
2101 Webster Street, Suite 1300
Oakland, CA 94612

# Exhibit E



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

August 29, 2017

OFFICE OF
ENVIRONMENTAL INFORMATION

Ms. Elena Saxonhouse
Sierra Club
Environmental Law Program
2101 Webster Street, Suite 1300
Oakland, CA 94612

RE: Request Numbers EPA-HQ-2017-009482

Dear Ms. Saxonhouse:

This is in response to your request for a fee waiver in connection with the above referenced Freedom of Information Act requests.

We have reviewed your fee waiver justification and based on the information provided, we are denying your request for a fee waiver. You have failed to demonstrate that the requested information concerns identifiable operations and activities of the government. Accordingly, there is no need for this office to address the remaining prongs of the fee waiver criteria. If the estimated costs exceed $25.00, the EPA will contact you regarding the cost of processing your request and seek an assurance of payment. They will be unable to process your request until they receive your assurance of payment. Your information request will be processed as expeditiously as possible by the EPA.

This letter concludes our response to your fee waiver requests. You may appeal this response by email at hq.foia@epa.gov, or by mail to the National Freedom of Information Office, U.S. EPA, 1200 Pennsylvania Avenue, N.W. (2822T), Washington, DC 20460 (U.S. Postal Service Only). Only items mailed through the United States Postal Service may be delivered to 1200 Pennsylvania Avenue, N.W. If you are submitting your appeal via hand delivery, courier service, or overnight delivery, you must address your correspondence to 1301 Constitution Avenue, N.W., Room 6416J, Washington, DC 20001. Your appeal must be made in writing, and it must be received no later than 90 calendar days from the date of this letter. The Agency will not consider appeals received after the 90 calendar day limit. Appeals received after 5:00 pm EST will be considered received the next business day. The appeal letter should include the FOIA tracking number listed above. For quickest possible handling, the subject line of your

page 2

email, the appeal letter, and its envelope, if applicable, should be marked "Freedom of Information Act Appeal." Additionally, you may seek assistance from EPA's FOIA Public Liaison at hq.foia@epa.gov or (202) 566-1667, or from the Office of Government Information Services (OGIS). You may contact OGIS in any of the following ways: by mail, Office of Government Information Services, National Archives and Records Administration, Room 2510, 8610 Adelphi Road, College Park, MD 20740-6001; e-mail, ogis@nara.gov; telephone, 202-741-5770 or 1-877-684-6448; and facsimile, 202-741-5769. Should you choose to appeal this determination, please be sure to fully address all factors required by EPA's FOIA Regulations, located at 40 C.F.R., Part 2.104.

If you have any questions concerning this determination, please contact me at (202) 566-1667.

Sincerely,

Larry F. Gottesman
National FOIA Officer

# Exhibit F



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

WASHINGTON, D.C. 20460

August 30, 2017

Ms. Elena Saxonhouse
Sierra Club
Environmental Law Program
2101 Webster Street, Suite 1300
Oakland, CA 94612

OFFICE OF
ENVIRONMENTAL INFORMATION

RE: Request Number EPA-HQ-2017-009684

Dear Ms. Saxonhouse:

This is in response to your request for a waiver of fees in connection with the above referenced Freedom of Information Act request.

We have reviewed your fee waiver justification and based on the information provided, we are denying your request for a fee waiver. You have failed to demonstrate that the requested information concerns identifiable operations and activities of the government. Accordingly, there is no need for this office to address the remaining prongs of the fee waiver criteria. If the estimated costs exceed $25.00, the EPA will contact you regarding the cost of processing your request and seek an assurance of payment. They will be unable to process your request until they receive your assurance of payment. Your information request will be processed as expeditiously as possible by the EPA.

This letter concludes our response to your fee waiver requests. You may appeal this response by email at hq.foia@epa.gov, or by mail to the National Freedom of Information Office, U.S. EPA, 1200 Pennsylvania Avenue, N.W. (2822T), Washington, DC 20460 (U.S. Postal Service Only). Only items mailed through the United States Postal Service may be delivered to 1200 Pennsylvania Avenue, N.W. If you are submitting your appeal via hand delivery, courier service, or overnight delivery, you must address your correspondence to 1301 Constitution Avenue, N.W., Room 6416J, Washington, DC 20001. Your appeal must be made in writing, and it must be received no later than 90 calendar days from the date of this letter. The Agency will not consider appeals received after the 90 calendar day limit. Appeals received after 5:00 pm EST will be considered received the next business day. The appeal letter should include the FOIA tracking number listed above. For quickest possible handling, the subject line of your

page 2

email, the appeal letter, and its envelope, if applicable, should be marked "Freedom of Information Act Appeal." Additionally, you may seek assistance from EPA's FOIA Public Liaison at hq.foia@epa.gov or (202) 566-1667, or from the Office of Government Information Services (OGIS). You may contact OGIS in any of the following ways: by mail, Office of Government Information Services, National Archives and Records Administration, Room 2510, 8610 Adelphi Road, College Park, MD 20740-6001; e-mail, ogis@nara.gov; telephone, 202-741-5770 or 1-877-684-6448; and facsimile, 202-741-5769. Should you choose to appeal this determination, please be sure to fully address all factors required by EPA's FOIA Regulations, located at 40 C.F.R., Part 2.104.

   If you have any questions concerning this determination, please contact me at (202) 566-1667.

                              Sincerely,


                              Larry F. Gottesman
                              National FOIA Officer

# Exhibit G

Appeal, Fee Waiver Denials: Request Numbers EPA-HQ-2017-009842 & 009684



November 27, 2017

*Via FOIA Online*

National Freedom of Information Office
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW (2822T)
Washington, DC 20460

Re:   *Freedom of Information Act Appeal of Fee Waiver Denials on*
      *EPA-HQ-2017-009842 and EPA-HQ-2017-009684*

Dear FOIA Appeals Officer:

Sierra Club respectfully appeals EPA's denials of its fee waiver requests included in the above-referenced Freedom of Information Act ("FOIA") requests (attached as Exhibits 1 through 2). On July 17, 2017 and July 21, 2017, Sierra Club submitted the two FOIA requests for documents related to communications and interactions between various EPA political appointees and persons outside of EPA. Each FOIA request included a fee waiver request and showed that Sierra Club met the criteria to qualify for a waiver. By letters dated August 29 and 30, 2017, EPA denied both fee waiver requests, claiming Sierra Club did not "demonstrate that the requested information concerns identifiable operations and activities of the government." *See* Exhs. 3 & 4 at 1. EPA sent both letters after the date FOIA required EPA to respond. 5 U.S.C. § 552(a)(6)(A)(i).

EPA erred in denying the two fee waiver requests.[1] The FOIA requests specifically identified current EPA political appointees and requested documents concerning their communications and interactions with persons and groups outside of EPA. EPA possesses those documents, and on their face they concern identifiable operations and activities of the EPA. EPA's baseless conclusion otherwise is arbitrary and capricious. Although EPA's denial letters cited only one prong of the fee waiver analysis (*i.e.*, whether the requested information concerned identifiable operations and activities of the government), this letter (like the initial requests) also addresses the remaining factors relevant to a fee waiver determination and shows that Sierra Club meets the criteria for fee waivers for both FOIA requests, and that EPA must reverse its denials of the two fee waiver requests.

---

[1] Although the two FOIA requests concern different EPA employees, they are identical in subject matter and in EPA's stated reason for denial, and the analysis as to whether the fee waiver request is in the public interest is the same for both requests. In the interest of resolving this appeal promptly and efficiently, we appeal both fee waiver denials in this one letter. Sierra Club intends to file this same letter through www foiaonline regulations.gov as an appeal for both of the fee waiver requests to ensure no waiver of rights.

Appeal, Fee Waiver Denials: Request Numbers EPA-HQ-2017-009842 & 009684

Separate from those reasons, EPA must also reverse its denials of the fee waiver requests because its response to the requests was untimely. EPA may only assess fees following an untimely denial of a fee waiver request under certain exceptional circumstances, none of which apply here.

## I.   INTRODUCTION

FOIA exists to ensure the public's right of access to information about government affairs; its "basic purpose . . . is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire*, 437 U.S. 214, 242 (1978). To further these policies, FOIA requires agencies to provide documents without charge or at a reduced charge where "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

In 1986 amendments to FOIA, Congress made it easier for public interest groups like Sierra Club to access government documents. *See* 132 CONG. REC. H9464 (Oct. 8, 1986) (Reps. English and Kindness) (noting that oversight of agency operations is likely to contribute significantly to public understanding); *see also Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 93-94 (D.C. Cir. 1986) (noting that fee waivers are intended to benefit public interest oversight). Congress also explicitly rejected agencies' use of fees as an obstacle to disclosure. *See* 132 CONG. REC. S14270-01 (Sept. 20, 1986) (Sen. Leahy) ("agencies are most resistant to granting fee waivers when they suspect that the information sought may cast them in a less than flattering light . . . . Yet that is precisely the type of information which the FOIA is supposed to disclose, and agencies should not be allowed to use fees as an offensive weapon against requesters.").

## II.   EPA MUST REVERSE ITS DENIAL OF SIERRA CLUB'S FEE WAIVER REQUESTS BECAUSE THE REQUESTED INFORMATION CONCERNS IDENTIFIABLE OPERATIONS AND ACTIVITIES OF EPA

EPA denied Sierra Club's two fee waiver requests on the ground that they did not "demonstrate that the requested information concerns identifiable operations and activities of the government." *See* Exhs. 3 & 4 at 1. That unsupported conclusion is befuddling, because the FOIA requests specifically asked for documents concerning communications and interactions between specific EPA employees and persons outside of EPA. Those documents, which EPA possesses and concern official EPA business, obviously concern identifiable operations and activities of EPA.

Under 40 C.F.R. § 2.107(l)(2)(i), in evaluating a fee waiver request, EPA must consider "[w]hether the subject of the requested records concerns 'the operations or activities of the government.' The subject of the requested records must concern identifiable operations or activities of [EPA], with a connection that is direct and clear, not remote." As noted by the U.S. Department of Justice, "in most cases, records possessed by a federal agency will meet this threshold." U.S. DEP'T OF JUSTICE, *Fees and Fee Waivers*, in DEPT' OF JUSTICE GUIDE TO THE

FREEDOM OF INFORMATION ACT 27 (2013 ed.). EPA must construe liberally fee waiver requests by non-commercial requestors (such as Sierra Club), and the request need only identify the requested documents with "reasonable specificity." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003).

Sierra Club requested documents between specific time periods concerning communications and interactions between specific EPA personnel and persons outside of EPA. These activities are "identifiable operations or activities of the government" because the communications are undertaken by EPA employees on behalf of the agency with persons outside of EPA, which will reflect the actions, objectives, and priorities of EPA. Such communications—which are records possessed by a federal agency and which concern the official business of the agency—certainly concern operations and activities of the government. *See Citizens for Responsibility and Ethics in Washington ("CREW") v. U.S. Dep't of Health & Human Servs.*, 481 F. Supp. 2d 99, 107 (D.D.C. 2006) (overturning a fee waiver denial for documents related to HHS contracts with outside public affairs agency).

Sierra Club's requests are also "sufficiently specific" because the requests relate to a small number of identified employees during a specific time period. *See id.* at 108 (request was "sufficiently specific" because it was limited by date). The identified employees are all EPA employees hired under the tenure of the new EPA Administrator, Scott Pruitt,[2] and Sierra Club limited its requests to information dated from January 20, 2017 through July 17, 2017 (for Request EPA-HQ-2017-009482) and January 20, 2017 through July 21, 2017 (for Request EPA-HQ-2017-009684).

In light of the specific dates and the names of current EPA political appointees included in the requests, it strains the imagination to understand how EPA could conclude that the requested information does not concern identifiable activities and operations of EPA. This is especially true in light of the liberal interpretation EPA must give to Sierra Club's requests. From EPA's conclusory denial, it is impossible to determine what additional information could be needed to demonstrate that the requested documents concern identifiable operations or activities of EPA. Because of this, Sierra Club is concerned that EPA's denial of its fee waiver requests sets an unreasonable (and unidentifiable) burden on an applicant seeking a fee waiver, which would undermine the very purpose of FOIA. For those reasons, EPA should reverse its arbitrary and capricious denial of the two fee waiver requests.

## III.   SIERRA CLUB'S REQUESTS SATISFY THE OTHER STATUTORY AND REGULATORY REQUIREMENTS FOR A FEE WAIVER

In its denial letter, EPA did not discuss the other requirements for Sierra Club to be eligible for a fee waiver. Sierra Club addressed those requirements in its initial requests, which it incorporates herein by reference. Nonetheless, to ensure a complete administrative record, Sierra Club also addresses those requirements below.

---

[2] *See* Exh. 5 (Memorandum from EPA Chief of Staff, dated June 27, 2017, identifying the new employees named in Sierra Club's two FOIA requests).

Appeal, Fee Waiver Denials: Request Numbers EPA-HQ-2017-009842 & 009684

The two FOIA requests at issue meet the requirements for a fee waiver because they are in the public interest and will contribute significantly to the public's understanding of the operations or activities of EPA. In evaluating whether the requested information will significantly increase public understanding of EPA's operations and activities, EPA considers four criteria: (i) whether the requested records concern the operations and activities of the government; (ii) whether the disclosure is "likely to contribute" to an understanding of government operations or activities; (iii) whether the disclosure will contribute to an understanding by the public; and (iv) whether the disclosure will contribute significantly to the public's understanding. 40 C.F.R. § 2.107(l)(2). Sierra Club discusses the first criterion above, and the additional criteria below.

### A. Disclosure of the Requested Information Is Likely to Contribute to an Understanding of the Operations and Activities of Government

The records must be "meaningfully informative about government operations and activities in order to be 'likely to contribute' to an increased public understanding of those operations or activities." 40 C.F.R. § 2.107(l)(2)(ii). The requester should explain with "reasonable specificity" how the requested information will contribute to an understanding of government operations or activities. *CREW*, 481 F. Supp. 2d at 109.

As noted in the FOIA requests, the requested information is not currently in the public domain, and their disclosure will contribute and be "meaningfully informative" to a greater understanding of EPA's current actions, objectives, and priorities. The requests ask for communications and interactions between various new EPA employees and persons outside of EPA, which are likely to shed light on issues of heightened public concern. Many of those new employees, brought into the agency under Administrator Pruitt, have close ties with polluting industries, their advocacy groups, and their supporters in the federal government, all of which have actively promoted an anti-regulatory and environmentally harmful agenda.[3] Such connections gravely concern the public and Sierra Club's members, and the requested information will meaningfully inform the public about the influences these anti-environmental interests are having upon EPA's current agenda. The requested documents thus are likely to contribute to an increased public understanding of EPA's current operations and activities.

### B. The Requested Information Will Contribute to an Understanding of Government Operations and Activities by the Public at Large

The disclosure must "contribute to the understanding of a reasonably broad audience of

---

[3] For example, Elizabeth "Tate" Bennett (one of the new EPA employees identified in the two FOIA requests) was a coal utility lobbyist before her appointment. Georgina Gustin, *Trump EPA Appointee Was a Coal Utility Lobbyist This Year, Senators Say*, InsideClimate News (May 17, 2017), insideclimatenews.org/news/16052017/trump-epa-appointee-lobbyist-electric-utilities-industry-ethics-pledge. Similarly, Byron Brown (another new EPA employee identified in the requests) was a former staff member to Senator James Inhofe, "long known as Congress' most prominent skeptic of climate science" and a frequent recipient of contributions from fossil fuel companies like Murray Energy and Exxon Mobil. Coral Davenport, *E.P.A. Head Stacks Agency With Climate Change Skeptics*, New York Times (Mar. 7, 2017), http://www.nytimes.com/2017/03/07/us/politics/scott-pruitt-environmental-protection-agency.html; *Senator Inhofe Contribution Report*, OpenSecrets.org, http://www.opensecrets.org/members-of-congress/summary?cid=N00005582.

Appeal, Fee Waiver Denials: Request Numbers EPA-HQ-2017-009842 & 009684

persons interested in the subject." 40 C.F.R. § 2.107(l)(2)(iii); *see also Cause of Action v. Fed. Trade Comm'n*, 799 F.3d 1108, 1116 (D.C. Cir. 2015). EPA must also consider Sierra Club's "expertise in the subject area," as well as the Club's "ability and intention to effectively convey" the requested information to the public. 40 C.F.R. § 2.107(l)(2)(iii).

Sierra Club has longstanding experience and expertise in environmental, climate, and energy policy and confronting the government when its policies threaten the land, air, and waters of the United States. As the nation's oldest and largest grassroots environmental organization, Sierra Club has been working to protect the environment since 1892 through litigation, advocacy, and grassroots organizing. As examples, Sierra Club's Beyond Coal campaign employs over a hundred people and has been working since 2010 to move the United States away from dirty coal towards cleaner energy. In addition, Sierra Club's Ready for 100 campaign has had over 150 mayors from across the United States commit to moving their cities to 100% clean energy.

Through its efforts, Sierra Club consistently reaches a broad audience. The Club has more than 3 million members and supporters nationwide, who are reached via mail, our website, emails and listservs, and public meetings and events. The Sierra Club website, which hosts a number of blogs as well as online content of the *Sierra* magazine, our Beyond Coal Campaign portal, our Clean Energies Solutions portal, and our press releases, receives more than 26 million unique visits and 30 million page views annually. Sierra Club Insider, an electronic newsletter for Sierra Club supporters, is sent to nearly 3 million people twice a month. *Sierra* magazine, a bi-monthly magazine with a printed circulation of approximately 650,000 copies, publishes on a range of environmental issues, including climate and energy. For instance, *Sierra* recently published a story urging oil refineries and other chemical companies to prepare for severe floods related to climate change.[4] *Sierra* also reported on coal ash dumps and the health hazards of coal ash based in part on information gathered under FOIA.[5] *Sierra* has also been awarded multiple Maggie awards from the Western Publications Association, and has been recognized repeatedly for excellence in design by *Folio* magazine's Ozzie Awards.[6] In addition, Sierra Club disseminates information obtained by FOIA requests through comments to administrative agencies, and where necessary, through the judicial system.

There are numerous examples of Sierra Club's dissemination of information received through FOIA requests. Sierra Club recently drew significant media attention to the results of its FOIA requests regarding the coal industry's influence on the Department of Energy, details of

---

[4] *See* Heather Smith, *Planning for the 100-Year Flood Applies to You Too, Chemical Company*, SIERRA (Aug. 31, 2017), www.sierraclub.org/sierra/planning-for-100-year-flood-applies-you-too-chemical-company.

[5] *See* Paul Rauber, *Solving the Climate Puzzle: One Piece at a Time*, SIERRA (Nov./Dec. 2009), available at vault.sierraclub.org/sierra/200911/climate.aspx.

[6] With the award-winning *Sierra* magazine and its extensive use of blogs to communicate with the public, Sierra Club would also be eligible for a fee waiver as a media requestor. 5 U.S.C. § 552(a)(4)(A)(ii); 40 C.F.R. § 2.107(c)(1)(iii); *see also* 40 C.F.R. § 2.107(b)(6) (defining "[r]epresentative of the news media"). A representative of the news media is "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 6, 11-15 (D.D.C. 2003) (a "non-profit public interest organization" qualifies as a representative of the news media under FOIA where it publishes books and newsletters on issues of current interest to the public).

the federal government's plans for a border wall with Mexico, and hiring freezes at the Center for Disease Control and National Weather Service.[7] Sierra Club also sought disseminated about coal export and permitting activities in Oregon obtained via a state public records act request at the Port of Coos Bay. All correspondence is published online and received extensive media attention from press releases on the subject.[8]

Sierra Club intends to share the information obtained from the FOIA requests here with our members, the media, allied organizations who share a similar interest in the operations of the EPA, and the public at large through the various methods detailed above. Taken together, these facts make clear that Sierra Club will reach a very broad audience of interested persons. *See Forest Guardians v. Dep't of the Interior*, 416 F.3d 1173, 1180 (10th Cir. 2005) (finding that a newsletter that reached 2,500 people and plans to establish an interactive website were sufficient to demonstrate an ability and intent to effectively disseminate information).

## C.    Disclosure of the Requested Information Will Contribute Significantly to the Public's Understanding

In evaluating whether disclosure of the requested information will significantly contribute to the public's understanding, EPA compares the public's understanding before disclosure to the public's understanding after disclosure. 40 C.F.R. § 2.107(l)(2)(iv).

Disclosure of the documents requested by Sierra Club will significantly increase the public's understanding of EPA's actions, objectives, and priorities because the documents are currently not in the public domain. They will also shed light on a variety of troubling practices by EPA that have been touched upon, but not yet fully investigated, by recent media reports, such as EPA political appointees' close interactions with polluting industries and their allied political organizations, the unprecedented efforts by EPA senior officials to conceal their communications and interactions with persons outside of EPA, and the sources of factually incorrect statements made by EPA officials about the coal industry and climate change. While media reports on these issues provide limited information, the public deserves to know more about what communications and interactions have occurred between persons outside of EPA and EPA political appointees acting on behalf of the agency. *See Institute for Wildlife Protection v. U.S. Fish and Wildlife Serv.*, 290 F. Supp. 2d 1226, 1231-32 (D. Or. 2003) (finding that there was substantial public interest in the ways that the agency interacted with outside groups, as well as the "quality of science" the agency used). Because this information is not currently accessible

---

[7] Ari Natter, Bloomberg News, *How Coal Giant Peabody's Ideas Ended Up in Trump's Coal Study* https://www.bloomberg.com/news/articles/2017-11-08/how-coal-giant-peabody-s-ideas-ended-up-in-trump-s-coal-study?platform=hootsuite; Melissa Del Bosque, The Texas Observer, *The Documents Behind Trump's Texas Border Wall Plans*, https://www.texasobserver.org/the-documents-behind-trumps-border-wall-plans/; Alexander Rony, *Trump Admin Policy Leaves 700 CDC Jobs Vacant*, The Planet, www.sierraclub.org/planet/2017/05/trump-admin-policies-leave-700-cdc-jobs-vacant; Lena H. Sun, *Nearly 700 vacancies at CDC because of Trump administration's hiring freeze*, The Washington Post, www.washingtonpost.com/news/to-your-health/wp/2017/05/19/nearly-700-vacancies-at-cdc-because-of-trump-administration-hiring-freeze/

[8] *See Sierra Club Challenges Dirty and Dangerous Fossil Fuel Exports in Oregon*, content.sierraclub.org/environmentallaw/lawsuit/2013/sierra-club-challenges-dirty-anddangerous-fossil-fuel-exports-oregon.

by the public, and it concerns matters of high public interest, its release will significantly increase the public's understanding of EPA's operations and activities.

Sierra Club meets all four of the "public interest" criteria with respect to the information requested in each FOIA request at issue. EPA thus erred in denying its fee waiver requests, and EPA should instead grant the requests.

### D. The Requested Disclosures Are Not in the Commercial Interest of Sierra Club

EPA will grant fee waivers "where the public interest standard is satisfied and that public interest is greater in magnitude than that of any identified commercial interest in disclosure." 40 C.F.R. § 2.107(l)(3)(ii). In evaluating "commercial interest[s]," EPA considers the existence and magnitude of the commercial interest, and the primary interest in disclosure. *Id.* § 2.107(l)(3).

As stated in the requests, Sierra Club is a non-profit, tax-exempt organization under sections 501(c)(3) and 501(c)(4) of the Internal Revenue Code. Sierra Club will use the requested documents to further its mission of informing the public on vitally important environmental and public health policy issues. Sierra Club does not intend to use the requested documents in any manner that "furthers a commercial, trade, or profit interest" as those terms are commonly understood. Because Sierra Club has no commercial interest here, it cannot outweigh the public's interest in disclosure of the requested materials.

## IV. EPA CANNOT NOW CHARGE FEES ON SIERRA CLUB'S REQUESTS BECAUSE EPA'S RESPONSE TO THE FEE WAIVER REQUESTS WAS UNTIMELY

In addition to the above, EPA must reverse its denial of the two fee waiver requests because EPA's response to those requests was untimely, and EPA did not make the necessary showing to assess fees in responding substantively to the requests. Sierra Club submitted Request EPA-HQ-2017-009482 on July 17, 2017, and submitted EPA-HQ-2017-009684 on July 21, 2017. Under FOIA's 20-day statutory deadline, EPA's response to those fee waiver requests was on August 14 and 18, 2017, respectively. *See* 5 U.S.C. § 552(a)(6)(A)(i). EPA did not issue the fee waiver denials for Sierra Club's requests until August 29 and 30, 2017, respectively, and has yet to respond in any way to the substance of the requests.

Because EPA's response to the requests was untimely, the agency may not now assess fees in responding substantively to the requests. As explained by the Department of Justice's Office of Information Policy,

> The basic rule is that when the agency fails to comply with any of the FOIA's time limits, no search fees may be charged to 'all other' or 'commercial use' requesters and no duplication fees may be charged to requesters in preferred fee categories, i.e., representatives of the news media, and educational or noncommercial scientific institutions. 5 U.S.C. § 552(a)(4)(A)(viii)(I). The FOIA Improvement Act of 2016

Appeal, Fee Waiver Denials: Request Numbers EPA-HQ-2017-009842 & 009684

establishes three specific exceptions to this prohibition which, if met, allow the agency to still assess those fees even if it is unable to comply with the FOIA's time limits."[9]

None of those "three specific exceptions" apply here – there are no "exceptional circumstances" that EPA can invoke to justify charging fees in light of EPA's earlier untimely responses; and EPA cannot assert the other exceptions here because it had to provide earlier a timely, written notice of "unusual circumstances," which it has not done. *See* 5 U.S.C. § 552(a)(6)(B)(iii). Accordingly, FOIA prohibits EPA from now charging Sierra Club any fees in responding substantively to the two FOIA requests.

## V.   CONCLUSION

For the reasons stated above, Sierra Club respectfully requests EPA reverse its denial of the two fee waiver requests and instead grant the requests. Please contact us if you need any further information.

Respectfully submitted,

_____

Robert B. Martin III, Esq.
Counsel for Sierra Club
3067 Bateman Street
Berkeley, CA 94705
(510) 423-8880
robmartin3d@gmail.com

_____

Elena Saxonhouse
Senior Attorney
Sierra Club - Environmental Law Program
2101 Webster Street, Suite 1300
Oakland, CA 94612
elena.saxonhouse@sierraclub.org
(415) 977-5765

---

[9] Dep't of Justice, Office of Information Policy Guidance, www.justice.gov/oip/oip-guidance/prohibition_on_assessing_certain_fees_when_foia_time_limits_not_met.

Appeal, Fee Waiver Denials: Request Numbers EPA-HQ-2017-009842 & 009684

## **Exhibit List**

1. FOIA Request No. EPA-HQ-2017-009842 (July 17, 2017)
2. FOIA Request No. EPA-HQ-2017-009684 (July 21, 2017)
3. Fee Waiver Denial on FOIA Request No. EPA-HQ-2017-009842
4. Fee Waiver Denial on FOIA Request No. EPA-HQ-2017-009684
5. Memorandum from EPA Chief of Staff re: *Introducing EPA Political Appointees* (June 27, 2017)

# Exhibit 1



July 17, 2017

***VIA* FOIAONLINE.REGULATIONS.GOV**
**U.S. Environmental Protection Agency Headquarters**

**Re:     Freedom of Information Act Request: Communications of EPA Senior Staff**

Dear FOIA Officer:

This is a request under the Freedom of Information Act, 5 U.S.C. § 552, as amended ("FOIA"), from Sierra Club, a nonprofit organization whose purpose is to explore, enjoy and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; and to educate and enlist humanity to protect and restore the quality of the natural and human environments.

<u>**REQUESTED RECORDS**</u>[1]

Sierra Club requests Records of the following type in the possession, custody, or control of the U.S. Environmental Protection Agency ("EPA") for the period January 20, 2017 through the date of this request:[2]

1.   All emails, text messages, faxes, voice mails, and other form of communications between any of the following personnel and any person outside of EPA:

---

[1] "Records" means information of any kind, including writings (handwritten, typed, electronic or otherwise produced, reproduced or stored), letters, memoranda, correspondence, notes, applications, completed forms, studies, reports, reviews, guidance documents, policies, telephone conversations, telefaxes, emails, documents, databases, drawings, graphs, charts, photographs, minutes of meetings, electronic and magnetic recordings of meetings, and any other compilation of data from which information can be obtained. Without limitation, the records requested include records relating to the topics described below at any stage of development, whether proposed, draft, pending, interim, final or otherwise. All of the foregoing are included in this request if they are in the possession of or otherwise under the control of EPA, National Headquarters and all of its Offices, Regions and other subdivisions.

[2] The time period for a records search can begin on the first-employed staff person's date of hire, but as the dates on which these individuals joined the EPA are not public, we are unable to specify a narrower time frame.

    a.  Brittany Bolen (Office of the Administrator)
    b.  Byron Brown (Office of the Administrator)
    c.  Holly Greaves (Office of the Administrator)
    d.  Albert Kelly (Office of the Administrator)
    e.  Richard Yamada (Office of Research and Development)
    f.  Nancy Beck (Office of Chemical Safety and Pollution Prevention)
    g.  Dennis Lee Forsgren (Office of Water)

2.  Any phone logs or other indices which memorialize communications between the EPA personnel listed in (1) above and any person outside of EPA.

3.  All calendars, whether electronic or in paper format, of the EPA personnel listed in (1) above for the above-listed time period.

4.  All sign-in sheets or other records memorializing attendance at any meetings with the EPA personnel listed in (1) above for the above-listed time period at which a person outside of EPA was in attendance.

5.  All emails, faxes, voicemails, texts or other forms of communication that have been deleted which fit the above specifications and which remain recoverable in any way. If fulfilling this specification requires additional time, we would ask that production of documents meeting specifications 1-4 be given priority and processed separately from any potential responsive records to this specification.

For purposes of this request, the term "person outside of EPA" means any person who is **not** an employee within the EPA, subject to the following exclusions: We are **not** seeking communications to or from persons employed elsewhere within the Executive Branch of the United States; persons employed by the executive branch of any state (i.e. state agencies); or communications with persons who have an executed legal contract to provide consulting or other services to EPA if the communications post-date that contract. You may also specifically exclude from processing and release any records that are publicly available (e.g., through regulations.gov).

This request incudes communication related to EPA that is or was on any system or device, computer, phone, smartphone, tablet, email account, cloud, server or other communication system either **personal or business** that is or was owned **or** operated by the EPA personnel listed in (1) above or otherwise established for the purposes of communicating with those personnel.

This request includes all emails or other communications from any personal account operated by the EPA personnel listed in (1) above which have been forwarded into an EPA government email account.

This request applies to all email accounts assigned to or operated by the EPA personnel listed in (1) above, whether on an official EPA email address or server or not, that relate to official business of EPA. This request applies to so-called "alias" email accounts that may or may not include the names the EPA personnel listed in (1) above in the email address.

## EXEMPT RECORDS

If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and deliver the non-exempt portions of such records to my attention at the address below within the statutory time limit. 5 U.S.C. § 552(b).

If EPA denies all or part of this request, please cite the specific exemptions you believe justify your refusal to release the information and notify us of your appeal procedures available under the law.

## FORMAT OF REQUESTED RECORDS

Under FOIA, you are obligated to provide records in a readily-accessible electronic format and in the format requested. *See, e.g.*, 5 U.S.C. § 552(a)(3)(B)("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format.").

Please provide all records in an electronic .pdf format that is text-searchable and OCR-formatted. Portfolios and embedded files within files are not readily-accessible. Please do not provide the records in a single, or "batched,".pdf file. Please segregate documents responsive to request (1) above from documents responsive to request (2).

## RECORD DELIVERY

We appreciate a prompt determination on the requested records. As mandated by FOIA, we anticipate a reply within 20 working days. 5 U.S.C. § 552(a)(6)(A)(i).  Please email copies of the requested records to the e-mail address below. Please deliver documents that are not available in an electronic format to the physical address below. Failure to comply within the statutory timeframe may result in Sierra Club filing an action before the relevant U.S. District Court to ensure timely receipt of the requested materials.

3

*Deliver electronic documents to:*
Elena Saxonhouse
elena.saxonhouse@sierraclub.org

*Deliver other documents to:*
Elena Saxonhouse
Sierra Club - Environmental Law Program
2101 Webster Street, Suite 1300
Oakland, CA 94612

Please send documents on a rolling basis. EPA's search for—or deliberations concerning—certain records should not delay the production of others that EPA has already retrieved and elected to produce. *See generally* 40 C.F.R. § 2.104 (describing response deadlines).

<u>**FEE WAIVER REQUEST**</u>

I respectfully request that you waive all fees in connection with this request as provided by 5 U.S.C. § 552(a)(4)(A)(iii) and 40 C.F.R. § 2.107(l). Sierra Club is the nation's oldest grassroots organization with more than 2.9 million members and supporters nationwide. Sierra Club is a leading non-governmental organization seeking to educate and mobilize the public on issues of environmental protection including climate change, fossil fuel energy, clean energy and clean water. Sierra Club has spent years promoting the public interest through the development of policies that protect human health and the environment, and has routinely received fee waivers under FOIA. [3]

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as Sierra Club access to government records without the payment of fees. *Ettlinger v. FBI*, 596 F. Supp. 867, 872 (D. Mass. 1984) (fee waiver provision intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and non-profit public interest groups.").

---

[3] For a recent example, see FOIA Request Reference No. EPA-HQ-2017-8568 (fee letter waiver received June 28, 2017).

As explained below, this FOIA request satisfies the factors listed in EPA's governing regulations for waiver or reduction of fees, as well as the requirements for fee waiver under the FOIA statute – that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii), *see also* 40 C.F.R. § 2.107(l).

1.  **The subject matter of the requested records specifically concerns identifiable "operations and activities of the government."**

The requested records relate to the communications of senior level EPA officials with outside parties. These activities are unquestionably "identifiable operations or activities of the government."

2.  **The disclosure of the requested documents would be meaningfully informative and "likely to contribute to an understanding of Federal government operations or activities."**

The activities of EPA's senior staff, including their coordination with outside groups and individuals, are likely to shed light on a variety of issues of crucial public interest. Sierra Club members and the public at large are gravely concerned about the EPA's anti-regulatory agenda, and close ties to polluting industries.

Once the requested documents are made available, Sierra Club will analyze them and present its findings to its members and online activists and the general public in a manner that will meaningfully enhance the public's understanding of EPA's activities. The requested records are not otherwise in the public domain and are not accessible other than through a FOIA request. The documents requested will thus be "meaningfully informative" and "likely to contribute" to an understanding of EPA's operations.

3.  **The disclosure would contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons.**

Sierra Club has longstanding experience and expertise in the subject area of the FOIA requests, including issues related to government accountability and transparency, the Clean Air Act, Clean Water Act, climate policy, the protection of the natural environment, and the development and use of energy resources.

Sierra Club disseminates the information it receives through FOIA requests in a variety of ways, such as: analysis and distribution to the media, distribution through publication and mailing, posting on its website, emailing and list serve distribution to our members across the U.S., and via public meetings and events. Every year the Sierra Club website receives 26,298,200 unique visits and over 30 million page views; on average, the site gets 72,049 visits per day. Sierra

5

Magazine is a bi-monthly magazine with a printed circulation of approximately 650,000 copies. Sierra Club Insider, an electronic newsletter, is sent to nearly 3 million people twice a month. In addition, Sierra Club disseminates information obtained by FOIA requests through comments to administrative agencies, and where necessary, through the judicial system. In the past, Sierra Club has published, posted, and disseminated numerous stories on coal and coal power plants regarding their impacts on health, the environment and alternative energy. This includes information on Sierra Club's web pages, such as our <u>Beyond Coal Campaign</u> portal, our <u>Clean Energies Solutions</u> portal and our press releases.[4]

Sierra Club intends to share the information received from this FOIA request with our impacted members across the country, the media and our allies who share a common interest in the operations of the EPA under the new Administrator.

Sierra Club unquestionably has the "specialized knowledge" and "ability and intention" to disseminate the information requested in the broad manner outlined above, and to do so in a manner that contributes to the understanding of the "public-at-large."

## 4.  The disclosure would contribute "significantly" to public understanding of government operations or activities.

The records requested would shed light on the activities of EPA senior staff, including personnel who have close ties with polluting industries and their advocacy groups, and who have actively promoted an anti-regulatory agenda. The public is gravely concerned about EPA's intent to roll back safeguards of public health and the environment. After reviewing thousands of comments submitted to EPA's regulatory rollback docket, E&E News concluded, "The public has one resounding message for U.S. EPA: Don't roll back regulations protecting our planet."[5] Disclosure of the records requested above will significantly enhance the public's understanding of EPA's

---

[4] For example, Sierra Club sought information about coal export and permitting activities in Oregon via a state public records act request at the Port of Coos Bay. All correspondence is published online and has received extensive media attention from press releases on the subject. *See* Sierra Club Challenges Dirty and Dangerous Fossil Fuel Exports in Oregon, http://content.sierraclub.org/environmentallaw/lawsuit/2013/sierra-club-challenges-dirty-and-dangerous-fossil-fuel-exports-oregon. Sierra Club also recently publicized the results of its FOIA requests regarding agency job freezes, a story that was picked up by the Washington Post.  Alexander Rony, *Trump Admin Policy Leaves 700 CDC Jobs Vacant*, The Planet, http://www.sierraclub.org/planet/2017/05/trump-admin-policies-leave-700-cdc-jobs-vacant; Lena H. Sun, *Nearly 700 vacancies at CDC because of Trump administration's hiring freeze*, The Washington Post, https://www.washingtonpost.com/news/to-your-health/wp/2017/05/19/nearly-700-vacancies-at-cdc-because-of-trump-administration-hiring-freeze/?utm_term=.6c2e70d8581e.
[5] Niina Heikkinen, E&E News, *Experts Question if EPA Will Consider Thousands of Comments* (Apr. 24, 2017), https://www.eenews.net/climatewire/2017/04/24/stories/1060053432.

activities, including whether senior EPA staff are working to further the interests of polluting industries rather than the public health and safety of all Americans.

**5.  The requester has no commercial interest that would be furthered by the requested disclosure.[6]**

Sierra Club has no commercial interest in the requested records. Nor does it have any intention to use these records in any manner that "furthers a commercial, trade, or profit interest" as those terms are commonly understood. Sierra Club is a nonprofit, tax-exempt organization under sections 501(c)(3) and 501(c)(4) of the Internal Revenue Code, and as such has no commercial interest. The requested records will be used for the furtherance of Sierra Club's mission to inform the public on matters of vital importance to the environment and public health.

Sierra Club respectfully requests that EPA waive processing and copying fees pursuant to 5 U.S.C. § 552(a)(4)(A) because the public will be the primary beneficiary of this requested information. In the event that your agency denies a fee waiver, please send a written explanation for the denial. Please do not incur expenses beyond $250 without first contacting our office for explicit authorization.

Thank you for your cooperation. If you find that this request is unclear in any way please do not hesitate to call me to see if I can clarify the request or otherwise expedite and simplify your efforts to comply.

*/s/ Elena Saxonhouse*
Elena Saxonhouse
Senior Attorney
Sierra Club - Environmental Law Program
2101 Webster Street, Suite 1300
Oakland, CA 94612
elena.saxonhouse@sierraclub.org
(415) 977-5765

---

[6] Because Sierra Club has no commercial interest, it is not necessary to consider the final factor for a fee waiver, which compares the magnitude of an identified commercial interest to the public interest in disclosure.

# Exhibit 2



July 21, 2017

**VIA FOIAONLINE.REGULATIONS.GOV**
**U.S. Environmental Protection Agency Headquarters**

**Re:     Freedom of Information Act Request: Communications of EPA Intergovernmental**
**        Relations Staff**

Dear FOIA Officer:

This is a request under the Freedom of Information Act, 5 U.S.C. § 552, as amended ("FOIA"),
from Sierra Club, a nonprofit organization whose purpose is to explore, enjoy and protect the
wild places of the earth; to practice and promote the responsible use of the earth's ecosystems
and resources; and to educate and enlist humanity to protect and restore the quality of the
natural and human environments.

**REQUESTED RECORDS[1]**

Sierra Club requests Records of the following type in the possession, custody, or control of the
U.S. Environmental Protection Agency ("EPA") for the period January 20, 2017 through the date
of this request:[2]

---

[1] "Records" means information of any kind, including writings (handwritten, typed, electronic or
otherwise produced, reproduced or stored), letters, memoranda, correspondence, notes, applications,
completed forms, studies, reports, reviews, guidance documents, policies, telephone conversations,
telefaxes, emails, documents, databases, drawings, graphs, charts, photographs, minutes of meetings,
electronic and magnetic recordings of meetings, and any other compilation of data from which
information can be obtained. Without limitation, the records requested include records relating to the
topics described below at any stage of development, whether proposed, draft, pending, interim, final or
otherwise. All of the foregoing are included in this request if they are in the possession of or otherwise
under the control of EPA, National Headquarters and all of its Offices, Regions and other subdivisions.

[2] The time period for a records search can begin on the first-employed staff person's date of hire, but as
the dates on which these individuals joined the EPA are not public, we are unable to specify a narrower
time frame.

1. All emails, text messages, faxes, voice mails, and other form of communications between any of the following personnel and any person outside of EPA:[3]

   a. Troy Lyons
   b. Elizabeth Bennett
   c. Christian Palich
   d. Layne Bangerter
   e. Aaron Ringel
   f. Kaitlyn Shimmin
   g. Kenneth Wagner

2. Any phone logs or other indices which memorialize communications between any of the EPA personnel listed in (1) above and any person outside of EPA.

3. All calendars, whether electronic or in paper format, of each of the EPA personnel listed in (1) above for the above-listed time period.

4. All sign-in sheets or other records memorializing attendance at any meetings during the above-listed time period with the EPA personnel listed in (1) above at which a person outside of EPA was in attendance.

5. All emails, faxes, voicemails, texts or other forms of communication that have been deleted which fit the above specifications and which remain recoverable in any way. If fulfilling this specification requires additional time, we ask that production of documents meeting specifications 1-4 be given priority and processed separately from any potential responsive records to this specification.

For purposes of this request, the term "person outside of EPA" means any person who is **not** an employee within the EPA, subject to the following exclusions: We are **not** seeking communications to or from persons employed elsewhere within the Executive Branch of the United States, or persons who have an executed legal contract to provide consulting or other services to EPA.  You may also specifically exclude from processing and release any records that are publicly available (e.g., through regulations.gov). **In contrast to other recent requests from Sierra Club for EPA employee's communications, we are including communications with state agencies (and other state officials) in the scope of this request.**

This request incudes communication related to EPA that is or was on any system or device, computer, phone, smartphone, tablet, email account, cloud, server or other communication

---

[3] All individuals listed are in EPA's Office of Congressional and Intergovernmental Relations except for Kenneth Wagner, who is in the Office of the Administrator.

system either **personal or business** that is or was owned **or** operated by the EPA personnel listed in (1) above or otherwise established for the purposes of communicating with those personnel.

This request includes all emails or other communications from any **personal** account operated by the EPA personnel listed in (1) above which have been forwarded into an EPA government email account.

This request applies to all email accounts assigned to or operated by the EPA personnel listed in (1) above, whether on an official EPA email address or server or not, that relate to official business of EPA. This request applies to so-called "alias" email accounts that may or may not include the names the EPA personnel listed in (1) above in the email address.

**EXEMPT RECORDS**

If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and deliver the non-exempt portions of such records to my attention at the address below within the statutory time limit. 5 U.S.C. § 552(b).

If EPA denies all or part of this request, please cite the specific exemptions you believe justify your refusal to release the information and notify us of your appeal procedures available under the law.

**FORMAT OF REQUESTED RECORDS**

Under FOIA, you are obligated to provide records in a readily-accessible electronic format and in the format requested. *See, e.g.*, 5 U.S.C. § 552(a)(3)(B)("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format.").

Please provide all records in an electronic .pdf format that is text-searchable and OCR-formatted. Portfolios and embedded files within files are not readily-accessible. Please do not provide the records in a single, or "batched,".pdf file. Please segregate documents either by employee or by request categories (1)-(5) above.

**RECORD DELIVERY**

We appreciate a prompt determination on the requested records. As mandated in FOIA, we anticipate a reply within 20 working days. 5 U.S.C. § 552(a)(6)(A)(i).  Please email copies of the requested records to the e-mail address below. Please deliver documents that are not available

in an electronic format to the physical address below. Failure to comply within the statutory timeframe may result in Sierra Club filing an action before the relevant U.S. District Court to ensure timely receipt of the requested materials.

> *Deliver electronic documents to:*
> Elena Saxonhouse
> elena.saxonhouse@sierraclub.org

> *Deliver other documents to:*
> Elena Saxonhouse
> Sierra Club - Environmental Law Program
> 2101 Webster Street, Suite 1300
> Oakland, CA 94612

Please send documents on a rolling basis. EPA's search for—or deliberations concerning—certain records should not delay the production of others that EPA has already retrieved and elected to produce. *See generally* 40 C.F.R. § 2.104 (describing response deadlines).

## FEE WAIVER REQUEST

I respectfully request that you waive all fees in connection with this request as provided by 5 U.S.C. § 552(a)(4)(A)(iii) and 40 C.F.R. § 2.107(l). Sierra Club is the nation's oldest grassroots organization with more than 2.9 million members and supporters nationwide. Sierra Club is a leading non-governmental organization seeking to educate and mobilize the public on issues of environmental protection including climate change, fossil fuel energy, clean energy and clean water. Sierra Club has spent years promoting the public interest through the development of policies that protect human health and the environment, and has routinely received fee waivers under FOIA. [4]

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as Sierra Club access to government records without the payment of fees. *Ettlinger v. FBI*, 596 F. Supp. 867, 872 (D.

---

[4] For a recent example, see FOIA Request Reference No. EPA-HQ-2017-8568 (fee letter waiver received June 28, 2017).

Mass. 1984) (fee waiver provision intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and non-profit public interest groups.").

As explained below, this FOIA request satisfies the factors listed in EPA's governing regulations for waiver or reduction of fees, as well as the requirements of fee waiver under the FOIA statute – that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii), *see also* 40 C.F.R. § 2.107(l).

**1. The subject matter of the requested records specifically concerns identifiable "operations and activities of the government."**

The requested records relate to the interactions between recently appointed EPA communications staff and the media, and the discussions between these employees and Administrator Pruitt regarding his public communications and other information EPA provides to the public. These activities are unquestionably "identifiable operations or activities of the government."

**2. The disclosure of the requested documents would be meaningfully informative and "likely to contribute to an understanding of Federal government operations or activities."**

The activities of EPA's new intergovernmental relations staff are likely to shed light on a variety of issues of crucial public interest. Sierra Club members and the public at large are gravely concerned about the EPA's anti-regulatory agenda, and close ties to polluting industries and their advocates in Congress and state governments.

Once the requested documents are made available, Sierra Club will analyze them and present its findings to its members and online activists and the general public in a manner that will meaningfully enhance the public's understanding of EPA's activities. The requested records are not otherwise in the public domain and are not accessible other than through a FOIA request. The documents requested will thus be "meaningfully informative" and "likely to contribute" to an understanding of EPA's operations.

**3. The disclosure would contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons.**

Sierra Club has longstanding experience and expertise on issues related to government accountability and transparency, the Clean Air Act, Clean Water Act, climate policy, the protection of the natural environment, and the development and use of energy resources.

Sierra Club disseminates the information it receives through FOIA requests in a variety of ways, such as: analysis and distribution to the media, distribution through publication and mailing, posting on its website, emailing and list serve distribution to our members across the U.S., and via public meetings and events. Every year the Sierra Club website receives 26,298,200 unique visits and over 30 million page views; on average, the site gets 72,049 visits per day. Sierra Magazine is a bi-monthly magazine with a printed circulation of approximately 650,000 copies. Sierra Club Insider, an electronic newsletter, is sent to nearly 3 million people twice a month. In addition, Sierra Club disseminates information obtained by FOIA requests through comments to administrative agencies, and where necessary, through the judicial system. In the past, Sierra Club has published, posted, and disseminated numerous stories on coal and coal power plants regarding their impacts on health, the environment and alternative energy. This includes information on Sierra Club's web pages, such as our Beyond Coal Campaign portal, our Clean Energies Solutions portal and our press releases.[5]

Sierra Club intends to share the information received from this FOIA request with our impacted members across the country, the media and our allies who share a common interest in the operations of the EPA under the new Administrator.

Sierra Club unquestionably has the "specialized knowledge" and "ability and intention" to disseminate the information requested in the broad manner outlined above, and to do so in a manner that contributes to the understanding of the "public-at-large."

**4.  The disclosure would contribute "significantly" to public understanding of government operations or activities.**

Sierra Club members and the public at large are gravely concerned about the EPA's anti-regulatory agenda, close ties to polluting industries, and coordination with champions of those industries in Congress and state governments.  The activities of EPA's senior intergovernmental relations staff, including their coordination with outside groups and individuals, are likely to

---

[5] For example, Sierra Club sought information about coal export and permitting activities in Oregon via a state public records act request at the Port of Coos Bay. All correspondence is published online and has received extensive media attention from press releases on the subject. *See* Sierra Club Challenges Dirty and Dangerous Fossil Fuel Exports in Oregon, http://content.sierraclub.org/environmentallaw/lawsuit/2013/sierra-club-challenges-dirty-and-dangerous-fossil-fuel-exports-oregon. Sierra Club also recently publicized the results of its FOIA requests regarding agency job freezes, a story that was picked up by the Washington Post.  Alexander Rony, *Trump Admin Policy Leaves 700 CDC Jobs Vacant*, The Planet, http://www.sierraclub.org/planet/2017/05/trump-admin-policies-leave-700-cdc-jobs-vacant; Lena H. Sun, *Nearly 700 vacancies at CDC because of Trump administration's hiring freeze*, The Washington Post, https://www.washingtonpost.com/news/to-your-health/wp/2017/05/19/nearly-700-vacancies-at-cdc-because-of-trump-administration-hiring-freeze/?utm_term=.6c2e70d8581e.

shed light on how EPA may be using staff time to advance the interests of polluters instead of its mission to protect public health and the environment. Disclosure of the records requested above will significantly enhance the public's understanding of these activities.

**5. The requester has no commercial interest that would be furthered by the requested disclosure.[6]**

Sierra Club has no commercial interest in the requested records. Nor does it have any intention to use these records in any manner that "furthers a commercial, trade, or profit interest" as those terms are commonly understood. Sierra Club is a nonprofit, tax-exempt organization under sections 501(c)(3) and 501(c)(4) of the Internal Revenue Code, and as such has no commercial interest. The requested records will be used for the furtherance of Sierra Club's mission to inform the public on matters of vital importance to the environment and public health.

Sierra Club respectfully requests that EPA waive processing and copying fees pursuant to 5 U.S.C. § 552(a)(4)(A) because the public will be the primary beneficiary of this requested information. In the event that your agency denies a fee waiver, please send a written explanation for the denial. Please do not incur expenses beyond $250 without first contacting our office for explicit authorization.

Thank you for your cooperation. If you find that this request is unclear in any way please do not hesitate to call me to see if I can clarify the request or otherwise expedite and simplify your efforts to comply.

*/s/ Elena Saxonhouse*
Elena Saxonhouse
Senior Attorney
Sierra Club - Environmental Law Program
2101 Webster Street, Suite 1300
Oakland, CA 94612
elena.saxonhouse@sierraclub.org
(415) 977-5765

---

[6] Because Sierra Club has no commercial interest, it is not necessary to consider the final factor for a fee waiver, which compares the magnitude of an identified commercial interest to the public interest in disclosure.

# Exhibit 3



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

WASHINGTON, D.C.  20460

August 29, 2017

OFFICE OF
ENVIRONMENTAL INFORMATION

Ms. Elena Saxonhouse
Sierra Club
Environmental Law Program
2101 Webster Street, Suite 1300
Oakland, CA  94612

RE:  Request Numbers EPA-HQ-2017-009482

Dear Ms. Saxonhouse:

     This is in response to your request for a fee waiver in connection with the above referenced Freedom of Information Act requests.

     We have reviewed your fee waiver justification and based on the information provided, we are denying your request for a fee waiver.  You have failed to demonstrate that the requested information concerns identifiable operations and activities of the government.  Accordingly, there is no need for this office to address the remaining prongs of the fee waiver criteria.  If the estimated costs exceed $25.00, the EPA will contact you regarding the cost of processing your request and seek an assurance of payment.  They will be unable to process your request until they receive your assurance of payment.  Your information request will be processed as expeditiously as possible by the EPA.

     This letter concludes our response to your fee waiver requests. You may appeal this response by email at hq.foia@epa.gov, or by mail to the National Freedom of Information Office, U.S. EPA, 1200 Pennsylvania Avenue, N.W. (2822T), Washington, DC 20460 (U.S. Postal Service Only). Only items mailed through the United States Postal Service may be delivered to 1200 Pennsylvania Avenue, N.W. If you are submitting your appeal via hand delivery, courier service, or overnight delivery, you must address your correspondence to 1301 Constitution Avenue, N.W., Room 6416J, Washington, DC 20001. Your appeal must be made in writing, and it must be received no later than 90 calendar days from the date of this letter. The Agency will not consider appeals received after the 90 calendar day limit. Appeals received after 5:00 pm EST will be considered received the next business day. The appeal letter should include the FOIA tracking number listed above. For quickest possible handling, the subject line of your

page 2

email, the appeal letter, and its envelope, if applicable, should be marked "Freedom of Information Act Appeal." Additionally, you may seek assistance from EPA's FOIA Public Liaison at hq.foia@epa.gov or (202) 566-1667, or from the Office of Government Information Services (OGIS). You may contact OGIS in any of the following ways: by mail, Office of Government Information Services, National Archives and Records Administration, Room 2510, 8610 Adelphi Road, College Park, MD 20740-6001; e-mail, ogis@nara.gov; telephone, 202-741-5770 or 1-877-684-6448; and facsimile, 202-741-5769. Should you choose to appeal this determination, please be sure to fully address all factors required by EPA's FOIA Regulations, located at 40 C.F.R., Part 2.104.

If you have any questions concerning this determination, please contact me at (202) 566-1667.

Sincerely,

Larry F. Gottesman
National FOIA Officer

# Exhibit 4



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

WASHINGTON, D.C. 20460

August 30, 2017

Ms. Elena Saxonhouse
Sierra Club
Environmental Law Program
2101 Webster Street, Suite 1300
Oakland, CA 94612

OFFICE OF
ENVIRONMENTAL INFORMATION

RE: Request Number EPA-HQ-2017-009684

Dear Ms. Saxonhouse:

This is in response to your request for a waiver of fees in connection with the above referenced Freedom of Information Act request.

We have reviewed your fee waiver justification and based on the information provided, we are denying your request for a fee waiver. You have failed to demonstrate that the requested information concerns identifiable operations and activities of the government. Accordingly, there is no need for this office to address the remaining prongs of the fee waiver criteria. If the estimated costs exceed $25.00, the EPA will contact you regarding the cost of processing your request and seek an assurance of payment. They will be unable to process your request until they receive your assurance of payment. Your information request will be processed as expeditiously as possible by the EPA.

This letter concludes our response to your fee waiver requests. You may appeal this response by email at hq.foia@epa.gov, or by mail to the National Freedom of Information Office, U.S. EPA, 1200 Pennsylvania Avenue, N.W. (2822T), Washington, DC 20460 (U.S. Postal Service Only). Only items mailed through the United States Postal Service may be delivered to 1200 Pennsylvania Avenue, N.W. If you are submitting your appeal via hand delivery, courier service, or overnight delivery, you must address your correspondence to 1301 Constitution Avenue, N.W., Room 6416J, Washington, DC 20001. Your appeal must be made in writing, and it must be received no later than 90 calendar days from the date of this letter. The Agency will not consider appeals received after the 90 calendar day limit. Appeals received after 5:00 pm EST will be considered received the next business day. The appeal letter should include the FOIA tracking number listed above. For quickest possible handling, the subject line of your

page 2

email, the appeal letter, and its envelope, if applicable, should be marked "Freedom of Information Act Appeal." Additionally, you may seek assistance from EPA's FOIA Public Liaison at hq.foia@epa.gov or (202) 566-1667, or from the Office of Government Information Services (OGIS). You may contact OGIS in any of the following ways: by mail, Office of Government Information Services, National Archives and Records Administration, Room 2510, 8610 Adelphi Road, College Park, MD 20740-6001; e-mail, ogis@nara.gov; telephone, 202-741-5770 or 1-877-684-6448; and facsimile, 202-741-5769. Should you choose to appeal this determination, please be sure to fully address all factors required by EPA's FOIA Regulations, located at 40 C.F.R., Part 2.104.

If you have any questions concerning this determination, please contact me at (202) 566-1667.

Sincerely,

Larry F. Gottesman
National FOIA Officer

# Exhibit 5

**From:** Message from the Chief of Staff
**Sent:** Tuesday, June 27, 2017 12:07 PM
**To:** Message from the Chief of Staff <messagefromthechiefofstaff@epa.gov>
**Subject:** Introducing EPA Political Appointees



MESSAGE FROM THE
CHIEF OF STAFF

This email message is being sent to EPA employees.

Dear Colleagues,

Last weekend marked the 120th day since Administrator Pruitt's swearing-in as the 14th EPA Administrator. I appreciate the welcome from so many of you as the Administrator had the opportunity to visit each of the program offices during his first two weeks here. Thank you for your continued welcome as the Administrator has brought additional faces into the agency.

I believe it is important to provide you with a listing and the responsibilities of the new team that has joined EPA to fill positions in the Office of the Administrator and program offices. Some additional staff, including Assistant Administrator and Regional Administrator appointees, will join as we move forward. There likely will be a few changes in responsibilities, but I wanted to provide you with a description of the new staff we have been privileged to welcome to EPA.

As always, thank you for your work, and I continue to look forward to our future work together at the EPA.

Ryan Jackson
Chief of Staff

**Office of the Administrator**
- Henry Darwin, Assistant Deputy Administrator and Chief of Operations
- Byron Brown, Deputy Chief of Staff for Policy
- Kevin Chmielewski, Deputy Chief of Staff for Operations
- Alex Dominguez, Policy Analyst
- Nicholas Falvo, Special Assistant
- Hayley Ford, Deputy White House Liaison
- Sarah Greenwalt, Senior Advisor for Water and Cross-Cutting Initiatives
- Mandy Gunasekara, Senior Advisor for Air and Radiation
- Michelle Hale, Executive Assistant to the Administrator
- Millan Hupp, Director of Scheduling and Advance
- Albert "Kell" Kelly, Senior Advisor to the Administrator
- Forrest McMurray, Special Assistant for Scheduling and Advance

- Madeline Morris, Executive Scheduler
- Charles Munoz, White House Liaison
- Ken Wagner, Senior Advisor for Regional and State Affairs

**Office of Policy**
- Samantha Dravis, Senior Policy Counsel to the Administrator and Associate Administrator for Policy
- Brittany Bolen, Senior Deputy Associate Administrator for Policy
- Daisy Letendre, Senior Advisor for Policy and Strategic Communication
- Will Lovell, Policy Assistant
- George Sugiyama, Senior Advisor for the Office of Policy

**Office of Congressional and Intergovernmental Relations**
- Troy Lyons, Associate Administrator for OCIR
- Layne Bangerter, Senior Advisor to the OCIR
- Tate Bennett, Deputy Associate Administrator for Intergovernmental Relations
- Preston Cory, Special Assistant to the DAA for Intergovernmental Relations
- Christian Palich, Deputy Associate Administrator for Congressional Relations
- Aaron Ringel, Deputy Associate Administrator for Congressional Relations
- Christian Rodrick, Special Assistant to the DAA for Congressional Relations
- Kaitlyn Shimmin, Special Assistant for OCIR

**Office of Public Affairs**
- Liz Bowman, Acting Associate Administrator for Public Affairs
- Lincoln Ferguson, Senior Advisor for the Office of Public Affairs
- Amy Graham, Deputy Associate Administrator for Public Engagement
- James Hewitt, Special Advisor for Public Affairs
- John Konkus, Deputy Associate Administrator for Public Affairs
- Jahan Wilcox, Strategic Communications Advisor

**Office of the Chief Financial Officer**
- Holly Greaves, Senior Advisor to the Administrator for Budgets and Audits
- Kristopher Green, Special Assistant for OCFO

**Office of Enforcement and Compliance Assurance**
- Patrick Traylor, Deputy Assistant Administrator for OECA

**Office of the General Counsel**
- Erik Baptist, Senior Deputy General Counsel
- David Fotouhi, Deputy General Counsel
- Justin Schwab, Deputy General Counsel

**Office of Water**

- Lee Forsgren, Deputy Assistant Administrator for the Office of Water

**Office of Land and Emergency Management**
- Patrick Davis, Deputy Assistant Administrator for OLEM
- Veronica Darwin, Senior Advisor for Land and Emergency Management

**Office of Chemical Safety and Pollution Prevention**
- Dr. Nancy Beck, Deputy Assistant Administrator for OCSPP

**Office of Research and Development**
- Dr. Richard Yamada, Deputy Assistant Administrator for ORD