ANDREA ISSOD (CA Bar No. 230920)
ELENA SAXONHOUSE (CA Bar No. 235139)
MARTA DARBY (CA Bar No. 310690)
Sierra Club Environmental Law Program
2101 Webster St., Ste. 1300
Oakland, CA 94612
andrea.issod@sierraclub.org
elena.saxonhouse@sierraclub.org
marta.darby@sierraclub.org
(415) 977-5544

Attorneys for Plaintiff Sierra Club

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SIERRA CLUB, | CASE NO. 3:18-cv-3472-EDL |
| Plaintiff, | **NOTICE AND MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | Date:    December 18, 2018<br>Time:    9:00 a.m.<br>Place:    San Francisco Courthouse<br>          Courtroom E, 15th Floor<br>Before:  Hon. Elizabeth D. Laporte |
| Defendant. | Magistrate Judge |

i
NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

# TABLE OF CONTENTS

NOTICE AND MOTION FOR PARTIAL SUMMARY JUDGMENT ....................................................1

STATEMENT OF ISSUES ..........................................................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................2

I.      INTRODUCTION ........................................................................................................2

II.     STATEMENT OF FACTS ..........................................................................................4

        A.      Sierra Club's Four FOIA Requests from July 2017 and May 2018 ..................4

        B.      EPA's Failure to Respond to Sierra Club's Requests. ........................................5

        C.      Sierra Club's Efforts to Narrow the Scope of the Request and Identify High
                Priority Records. ..................................................................................................6

        D.      Sierra Club's Need for Timely Production of the Requested Documents ..........8

III.    ARGUMENT ..............................................................................................................12

        A.      Because the Undisputed Facts Establish That EPA Has Violated FOIA's
                Statutory Deadlines, Sierra Club Is Entitled to Judgment as a Matter of Law. ...12

        B.      Given the Long Delay and Pressing Public Need for the Information, the
                Court Should Order EPA to Comply with Sierra Club's Proposed Production
                Schedule. ..............................................................................................................14

                1.      Sierra Club's requested production schedule is designed to inform
                        important policy and personnel issues before it is too late. .....................14

                2.      EPA can reasonably be expected to review one tier per month given
                        the nature of the documents and past precedent. .....................................17

                        a.      The documents are likely to be short and largely unredacted,
                                and EPA has processed similar documents at a faster pace than
                                requested here. .............................................................................17

                        b.      EPA's extra layer of political review of FOIA responses slows
                                processing and is unnecessary. ...................................................19

                        c.      EPA's work on Sierra Club's requests will advance its
                                responses to many other FOIA requests. ...................................20

                        d.      EPA has already delayed for many months. .............................21

IV.     CONCLUSION..........................................................................................................22

1

**TABLE OF AUTHORITIES**

2

**CASES**

3   *Allen v. FBI*, 716 F. Supp. 667 (D.D.C. 1988)..........................................................18

4   *Bibles v. Or. Nat'l Desert Ass'n*, 519 U.S. 355 (1997) ..............................................2

5   *Citizens for Responsibility & Ethics in Washington ("CREW") v. Fed.*
     *Election Comm'n*, 711 F.3d 180 (D.C. Cir. 2013) .......................................... 13, 14

6

7   *Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) ......................................................12

    *Elec. Frontier Found. v. Office of the Dir. of Nat. Intelligence*, No. C 07-
8    5278 SI, 2007 WL 4208311 (N.D. Cal. Nov. 27, 2007).......................................15

9   *EPA v. Mink*, 410 U.S. 73 (1973) .............................................................................21

10  *Gerstein v. CIA*, No. C-06-4643 MMC, 2006 WL 3462659  (N.D. Cal.
     Nov. 29, 2006) ....................................................................................................15
11
    *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770 (D.C.
12   Cir. 2018)............................................................................................ 12, 15, 21

13  *Meeker v. Belridge Water Storage Dist.*, No. 1:05-CV-00603 OWW SMS,
     2005 WL 6246803 (E.D. Cal. May 3, 2005) .......................................................5
14
    *Meeropol v. Meese*, 790 F.2d 942 (D.C. Cir. 1986) ..................................................18
15
    *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214
16   (1978) .................................................................................................................12

17  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) .....................................15

18  *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C.
     Cir. 1976) ...........................................................................................................18
19
    *Payne Enters. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) ......................... 14, 15
20
    *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974) ........................14
21
    *S. Envtl. Law Ctr. v. EPA*, No. 3:17-CV-00061 (W.D. Va. Feb. 2, 2018)................18
22
    *Shapiro v. CIA*, 170 F. Supp. 3d 147(D.D.C. 2016) ................................................13
23
    *Sierra Club v. EPA*, No. 1:17-cv-01906-CKK (D.D.C. filed Sept. 18,
24   2017) ..................................................................................................................18

25  *Sierra Club v. U.S. Dep't of Interior*, 18-cv-00797-JSC (N.D. Cal. June
     29, 2018) ............................................................................................................17
26
    *Tereshchuk v. Bureau of Prisons*, 67 F.Supp.3d 441(D.D.C. 2014)........................13
27
    *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487 (1994) ...................2
28

iii

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749 (1989) .................................................................................. 12

*U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989) ............... 12

*United States v. Martinez*, 771 F.3d 672 (9th Cir. 2014) ................... 17

*Waterkeeper Alliance v. EPA*, No. 17-CV-07400 (S.D.N.Y) ........... 18, 20

*Yeager v. DEA*, 678 F.2d 315 (D.C. Cir.1982) ................................. 13

## STATUTES

5 U.S.C § 3346(a) ........................................................................... 8

5 U.S.C § 3346(b) ........................................................................... 8

5 U.S.C. § 552 ............................................................................. 1, 2

5 U.S.C. § 552(a)(3) ...................................................................... 12

5 U.S.C. § 552(a)(3)(A) ........................................................... 13, 21

5 U.S.C. § 552(a)(4)(B) ................................................................. 14

5 U.S.C. § 552(a)(6)(A) ........................................................... 12, 13

5 U.S.C. § 552(a)(6)(B) ................................................................. 12

5 U.S.C. § 552(a)(6)(C)(i) ............................................................. 13

5 U.S.C. § 552(b)(5) ...................................................................... 17

5 U.S.C. § 552(f)(1) ...................................................................... 12

5 U.S.C. § 552(f)(2) ...................................................................... 13

5 U.S.C. § 706(2) .......................................................................... 15

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(a) ..................................................................... 12

Fed. R. Evid. 201 ............................................................................ 5

Fed. R. Evid. 902(2)(A) ................................................................... 5

## FEDERAL REGISTER NOTICES

82 Fed. Reg. 4,594  (Jan. 13, 2017) ............................................. 10

83 Fed. Reg. 24,850 (May 30, 2018) ............................................ 10

**NOTICE AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 18, 2018, at 9:00 a.m., in Courtroom E of this Court, located at 450 Golden Gate Avenue, 15th Floor, San Francisco, California, before Honorable Elizabeth D. Laporte, Plaintiff Sierra Club will move the Court pursuant to Federal Rule of Civil Procedure 56 for partial summary judgment in favor of Plaintiff and against Defendant U.S. Environmental Protection Agency ("Defendant", or "EPA").

Sierra Club seeks an order requiring EPA to promptly release records responsive to its four information requests submitted in July 2017 and May 2018 under the Freedom of Information Act ("FOIA," or "Act"), 5 U.S.C. § 552, *et seq.*, as amended, that are not exempt from disclosure. Sierra Club's proposed scheduling order would ensure that EPA begin producing documents no later than January 2019 and that all of the highest priority documents already identified by Sierra Club are delivered by October 2019, with monthly rolling productions in the meantime. Sierra Club also seeks an order declaring that EPA violated FOIA by failing to issue a timely final determination on each of Sierra Club's four FOIA requests and by failing to make the requested records "promptly available."

The Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities below, the declarations and exhibits filed herewith, all pleadings and papers on file in this action, any matters of which the Court may or must take judicial notice, such additional evidence or argument as may be presented at or prior to the time of the hearing, and the Proposed Order.

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

**STATEMENT OF ISSUES**

**1.** Whether EPA has violated FOIA by withholding records and by failing to comply with the procedures required by FOIA.

**2.** Given the already lengthy delay and urgent public interest in documents related to the Trump Administration's deregulatory agenda, to potential ethical violations of current and former EPA staff, and to the pending selection of a new EPA Administrator, whether the Court should order EPA to produce to Sierra Club the documents that Sierra Club has designated as highest priority on a rolling basis beginning on or before January 21, 2019, and ending on or before October 21, 2019.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

The Freedom of Information Act ("FOIA") requests at issue in this case were motivated by the Trump administration's sweeping efforts to reshape the EPA, and to diminish or eliminate many of the environmental protection and public health programs EPA oversees. *See* 5 U.S.C. § 552, *et seq.*, as amended; Saxonhouse Decl. ¶¶ 5-14. The Administration's rapid actions to roll back one life-saving protection after another strike at the core of Sierra Club's mission as the nation's largest grassroots environmental organization and threaten to undermine decades of advocacy for clean air, clean water, and strong public health safeguards. In these extreme times, Sierra Club has undertaken a program to help provide oversight of EPA political staff that appear poised to work against, instead of toward, the agency's mission of protecting the environment and public health.  The FOIA, which aims to allow citizens to find out "what their government is up to" serves as an essential tool in this project. *Bibles v. Or. Nat'l Desert Ass'n*, 519 U.S. 355, 356 (1997) (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)). While responses to similar Sierra Club FOIA requests have been successful in identifying and rooting out conflicts of interests and corruption, EPA has delayed for many

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

1    months in responding to the requests at issue in this case, frustrating Sierra Club's ability to increase

2    transparency and accountability among the political staff at EPA.

3         The four requests to which Sierra Club seeks a response were submitted in July 2017 and May

4    2018 and seek the external communications and meeting schedules, among other records, of twenty-five

5    employees at EPA either appointed by the current President or hired under former Administrator Scott

6    Pruitt. Sierra Club identified this team of political staff for FOIA requests because they have a history of

7    close ties with industries regulated by EPA, industry advocacy groups, or anti-environmental politicians

8    or political groups: relationships that raise grave concerns about conflicts of interests and the ability of

9    polluting industries to disproportionately influence EPA policy. *See* Saxonhouse Decl. ¶¶ 11-16. The

10   requests also seek to uncover misuse of staff time and other abuses of office like those already revealed

11   by the responses to parallel FOIA requests regarding former Administrator  Pruitt. *Id.* ¶¶ 18-19 & n.27,

12   Ex. 9.

13        While Sierra Club has also submitted FOIA requests to specifically investigate EPA's rollbacks

14   of public health safeguards, responses to those topical requests do not always provide the full picture of

15   the agency's information gathering process, how outside parties are influencing the agency, or the role

16   of EPA political staff. *Id.* ¶ 27. Accordingly, in the instant records requests, Sierra Club has focused

17   narrowly on political staff with concerning backgrounds but broadly on all external communications and

18   meetings of those staff members. *Id.* ¶¶ 14-16 & Exs. 1-4. In this Motion, Sierra Club seeks an initial

19   production schedule only for a subset of the responsive documents—those that seem particularly likely

20   to reveal information with the highest value to the public and with immediate utility for Sierra Club

21   advocacy. Darby Decl. ¶¶ 4-15; Chamberlain Decl. ¶ 5-11. The requested documents total

22   approximately 18,700 e-mail chains, in addition to the calendars of twelve employees, some of which

23   EPA has already produced in response to a FOIA request submitted by another party. Darby Decl. ¶¶ 14,

24   16-17. As discussed in detail below, Sierra Club's proposed schedule is reasonable and even quite slow

25   compared with the urgency of Sierra Club's and the public's interest in the documents, and the statutory

26   timeframe for FOIA responses set forth by Congress.

27

28

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

## II.        STATEMENT OF FACTS

### A.        Sierra Club's Four FOIA Requests from July 2017 and May 2018

Plaintiff Sierra Club is a nonprofit, membership organization with more than 775,000 members nationwide dedicated to exploring, enjoying, and protecting the planet. Darby Decl. ¶ 4. Sierra Club seeks to inform and educate the public as to the activities of the EPA, and other federal agencies entrusted with the administration of public-health and environmental laws, with the aim of improving public understanding of, and support for, public-health and environmental protection. Saxonhouse Decl. ¶ 5. For years, Sierra Club has educated the public about the dangers of climate change-causing and other pollution, and has advocated for the rigorous federal enforcement of the Clean Air Act, Clean Water Act, and other bedrock environmental statutes. *Id.*  As part of this advocacy, Sierra Club routinely requests records from federal agencies under the FOIA in order to educate and inform its members and the public, as to the activities of those agencies, and political appointees to those agencies. *Id.*

On July 17, 19, and 21, 2017 and May 10, 2018, Sierra Club filed four FOIA requests seeking records of the external communications of twenty-five EPA staff.[1] Answer ¶¶ 31, 33, 35, 37, ECF No. 14. Specifically, Sierra Club requested communications between the identified employees "and parties outside EPA; the employees' calendars; sign-in sheets or other records memorializing attendance at any meetings attended by the EPA employees and anyone from outside EPA." Saxonhouse Decl. ¶ 3, Exs. 1-4; *see also* Answer ¶¶ 33, 35, 37, ECF No. 14. Each of the identified employees began working at the agency after President Trump took office on January 20, 2017, and each has close ties to entities that have long pursued anti-environmental and anti-public health agendas, or is serving an administrative assistant to a person with such ties. Saxonhouse Decl. ¶¶ 11-16 & Ex. 9, Exs. 13-14 (recusal statements). For example,

- Acting EPA Administrator **Andrew Wheeler** is a former coal industry lobbyist and recently was

[1] The custodians identified in the four FOIA requests include: Brittany Bolen, Byron Brown, Holly Greaves, Albert Kelly, Richard Yamada, Nancy Beck, Dennis Lee Forsgren, Michelle Hale (Pruitt's executive assistant), Troy Lyons, Elizabeth Bennett, Christian Palich, Layne Bangerter, Aaron Ringel, Kaitlyn Shimmin, Kenneth Wagner, Andrew Wheeler, Madeline Morris, Charles Munoz, Sarah Greenwalt, William Lovell, Justin Schwab, Patrick Davis, Michael Abboud, David Ross, and Bill Wehrum. Saxonhouse Decl. ¶ 3, Exs. 1-4, ¶¶ 15-16.

a top lobbyist for Murray Energy, which sent the President a "wishlist" of sixteen environmental rollbacks on March 1, 2017. *Id.* ¶¶ 21, 23 & Ex. 13 (recusal statement).

- Assistant Administrator **William Wehrum** heads the Office of Air and Radiation and formerly was an attorney representing clients that have aggressively pursued anti-environmental and anti-public health agendas, including American Petroleum Institute, ExxonMobil Corporation, and Duke Energy Corporation.[2]

- Deputy Assistant Administrator **Nancy Beck** co-leads the Office of Chemical Safety and Pollution Prevention, the EPA office charged with protecting people from exposure to pesticides and other toxic chemicals. Previously, Dr. Beck was an executive at American Chemistry Council, the chemical industry's primary trade association.[3]

*See also* Saxonhouse Decl. ¶¶ 15-16 (providing full list of targeted personnel and their prior employment). Sierra Club's requests seek to shed light on EPA's information gathering process, how outside parties are influencing the agency, and the role of the agency's political staff. *Id.* ¶¶ 5-14, 23-27. In compelling a response, Sierra Club seeks to inform the public debate surrounding EPA's deregulatory agenda, to uncover conflicts of interest in agency decision-making, and to reveal misuse of staff time for political purposes, and other abuses of office. *Id.* ¶¶ 29-35.

### B. EPA's Failure to Respond to Sierra Club's Requests.

Despite periodic inquiries and EPA's acknowledgement that it received the four requests on the days they were submitted, EPA did not provide any substantive response whatsoever to Sierra Club until

---

[2] Saxonhouse Decl. ¶ 23, Ex. 14, EPA Memorandum from Assistant Administrator William L. Wehrum to Acting Administrator Andrew R. Wheeler, Recusal Statement (Sept. 17, 2018). Because this memorandum is a public record signed by an EPA official and is kept pursuant to EPA's duties under Executive Order 13,770, the Court may take judicial notice of it. *See* Fed. R. Evid. 201, 902(2)(A); *Meeker v. Belridge Water Storage Dist.*, No. 1:05-CV-00603 OWW SMS, 2005 WL 6246803, at *7 (E.D. Cal. May 3, 2005) (court may take judicial notice of irrigation district board meeting minutes because documents were public records kept pursuant to agency's duties).

[3] Saxonhouse Decl. ¶ 15, Ex. 17, EPA Memorandum from Deputy Assistant Administrator Nancy B. Beck to Acting Assistant Administrator Wendy Cleland-Hamnett, Recusal Statement (June 9, 2017) (explaining that because Dr. Beck is in an "Administratively Determined position" that she is not subject to Executive Order 13,770 and is "therefore not required to sign the Trump ethics pledge"). As above, the Court may take judicial notice of this memorandum. *See supra* note 2.

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

many months later, after the commencement of this litigation. Answer ¶¶ 1, 31-38, 42, ECF No. 14 (admitting that EPA has not yet completed "final determination[s]"); Updated Case Mgmt. Statement 2:14-15, ECF No. 26 (acknowledging that EPA "ha[d] not yet provided any date by which, nor any estimate of when it will begin producing documents to Sierra Club"); Saxonhouse Decl. ¶¶ 29-35. The only documents provided to Sierra Club to date have been those that EPA reviewed in the course of processing different FOIA requests submitted by other entities and have included only a small portion of responsive documents, namely scattered external e-mails from one employee and calendars for four employees from a limited time period. *See* Saxonhouse Decl. ¶ 33; Darby Decl. ¶ 16.

Absent these limited productions, however, Sierra Club had not received any of the requested records at the time of filing. *See* Saxonhouse Decl. ¶¶ 29-35.

## C. Sierra Club's Efforts to Narrow the Scope of the Request and Identify High Priority Records.

Three months after the filing of this lawsuit, EPA reviewed its files to determine the approximate number of records responsive to Sierra Club's four requests and asked Sierra Club to narrow the scope of its requests. Joint Initial Case Mgmt. Statement 2:23-28, ECF No. 23. In the course of the parties' discussions about scope, EPA e-mailed Sierra Club a list of external parties' e-mail domain names (*i.e.*, the portion following the "@" symbol in an e-mail address) that appeared in the e-mails responsive to Sierra Club's four requests. Darby Decl. ¶ 10. Next to each listed domain name, EPA provided the number of associated records. *Id.*

Since receiving that list, Sierra Club has worked diligently to narrow the scope of its requests, reviewing the list to identify priority domain names and domain names that can be eliminated. Chamberlain Decl. ¶¶ 2-4; Darby Decl. ¶¶ 11-12. Already, Sierra Club has eliminated about 131,621 records, about 48 percent of the total EPA estimated. Darby Decl. ¶¶ 10, 12. Sierra Club is continuing to review the list, which includes thousands of domain names, many of which are unfamiliar to Sierra Club. Chamberlain Decl. ¶¶ 4-5; Darby Decl. ¶ 10.

Sierra Club also is identifying records it believes to be of the greatest public import, the highest priority of which it has segregated into ten sequential tiers. Chamberlain Decl. ¶¶ 7-11; Darby Decl. ¶¶ 11-15. These tiers are carefully structured to capture e-mails between the identified EPA political

6

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

staff and parties that Sierra Club is aware are currently pursuing, or have previously pursued,

deregulatory agendas at the expense of public health and the environment. *See* Chamberlain Decl. ¶¶ 9-

10 (describing the types of entities within each tier); *see also* Saxonhouse Decl. ¶¶ 25-27. Many of the

correspondents can be identified by their domain names as representing polluting industries actively

benefiting from EPA's policy changes. For example, the e-mail chains include at least

- 9,500 associated with **agricultural and chemical industry** domains including various state

  farm bureaus, Monsanto, and CropLife America (a national trade association representing

  pesticide manufacturers and other agricultural chemicals);

- 3,050 associated with **oil and gas industry** domains, including American Petroleum

  Institute, BP, and Koch Industries;

- 2,900 associated with entities that **generate electricity from fossil fuels** including Edison

  Electric Institute (an association that represents investor-owned utilities), Duke Energy (one

  of the largest electric utilities in the nation), and Arch Coal (a leading coal mining company);

- 1,150 associated with **transportation industry domains**, including Alliance of Automobile

  Manufacturers (the leading advocacy group for the auto industry), Toyota, and Ford;

- 13,760 associated with domains of **industry consulting firm and law firms** that, based on

  information or belief, advocate for clients in the fossil fuel, chemical, and manufacturing

  industries including Hunton &Williams LLP (Mr. Wehrum's former law firm) and Faegre

  Baker Daniels (Mr. Wheeler's former consulting firm); and

- 2,000 associated with **conservative think tank** and **political advocacy organization**

  domains such as Heritage Foundation, Competitive Enterprise Institute, and CATO Institute.

Chamberlain Decl. ¶ 8.[4]

     Sierra Club also has targeted e-mails associated with former clients and employers of senior EPA

staff. About 2,870 records on the list of highest priority records, for example, are affiliated with Mr.

Wheeler's and Mr. Wehrum's former clients and employers. *Id.* ¶ 9. Because nearly all such parties have

---

[4] As described in more detail below, Sierra Club is actively litigating EPA policy changes related to each
of these industries. Darby Decl. ¶¶ 7-8; Saxonhouse Decl. ¶ 26.

7

strong ties to EPA-regulated industries, communications with them may reveal whether EPA-regulated entities are influencing EPA policy, in addition to other concerning conflicts of interest and potentially unethical behavior.

The requested records also likely will bear on the selection of a new EPA Administrator in early 2019. On July 5, 2018, President Trump appointed Mr. Wheeler to serve as the Acting Administrator of the EPA[5] after former Administrator Pruitt resigned from the agency amid ethical investigations and growing public concern. *See* Saxonhouse Decl. ¶ 20. Under the Federal Vacancies Act, a temporary administrator generally may only serve for 210 days. 5 U.S.C § 3346(a).  This period may only be extended in two circumstances: (1) while a President's nomination is pending before the Senate; or (2) if the Senate rejects a nominee, the period may be extended up to 210 days after the Senate's rejection. *Id.* §§ 3346(a), (b).  Mr. Wheeler's temporary 210-day appointment expires on January 31, 2019. Thus, in order for Mr. Wheeler to continue serving as Acting Administrator, President Trump must nominate either Mr. Wheeler or someone else for Administrator before January 31, 2019, at which point the Senate's consideration would commence.  As with Mr. Pruitt's early departure, e-mail correspondence revealing conflicts of interest and misuse of agency resources by senior EPA staff may play a significant role in determining who next leads the agency.

Sierra Club's carefully curated list of highest priority documents is designed to capture records that will immediately inform the evolving public debate surrounding EPA's deregulatory agenda, the ethical behavior of senior EPA staff, and the pending appointment of a new Administrator—issues on which Sierra Club is bringing litigation, submitting detailed technical and legal comments, and organizing its hundreds of thousands of members and the public.  Darby Decl. ¶¶ 7-8, 11; Saxonhouse Decl. ¶¶ 14, 25-27.

### D.   Sierra Club's Need for Timely Production of the Requested Documents

To date, EPA rollbacks have targeted dozens of regulations.[6]  These rollbacks span a broad

---

[5] *EPA's Acting Administrator Andrew Wheeler*, EPA, https://www.epa.gov/aboutepa/epas-acting-administrator (last visited Nov. 8, 2018).

[6] Saxonhouse Decl. ¶¶ 5-7, 13, 26 (citing Nadja Popovich et al., *76 Environmental Rules on the Way Out Under Trump,* N.Y. Times, originally published Oct. 5, 2017, and last updated July 6, 2018,

8

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

array of EPA-regulated industries, including oil and gas, electricity generation, mining, transportation, agriculture, chemicals, and hazardous waste disposal.[7] The rollbacks seek to undo the prior Administration's efforts to increase the fuel economy of cars and trucks, to limit climate-harming pollution from the electric sector, to reduce toxic mercury emissions from coal-fired power plants, to require industrial-scale animal feeding operations to report releases of dangerous levels of pollutants, and to require chemical facilities to better prepare for safety during disasters, such as hurricanes and flooding, among other reforms. Saxonhouse Decl. ¶ 26; Darby Decl. ¶¶ 7-8 .

In addition to seeking to undo these specific reforms, EPA's new leadership has sought to more generally downplay or sideline the science and scientists supporting public health regulations. For example, in October, Acting Administrator Wheeler reportedly replaced five members of EPA's seven-member Clean Air Scientific Advisory Committee with members who have strong ties to regulated industries. Saxonhouse Decl. ¶ 8. EPA data demonstrates that the agency's new leadership has also significantly ramped down its enforcement of health and environmental standards, with judicial enforcement penalties against regulated industries decreasing by about $4 billion between Fiscal Year 2016 and Fiscal Year 2017. *Id* ¶ 9.

Sierra Club has responded aggressively to EPA's agenda with both defensive advocacy aimed at safeguarding existing public health and environmental protections, and offensive measures aimed at increasing the transparency and accountability of EPA political staff.  The work capitalizes on Sierra Club's role as the nation's largest grassroots environmental group with more than sixty chapters in all fifty states and Puerto Rico, volunteer-led grassroots organizing groups, and several campaigns led by national Sierra Club staff, including the Beyond Coal Campaign, Dirty Fuels Campaign, and Our Wild America Campaign. Darby Decl. ¶¶ 4-6. Sierra Club seeks to inform and advance its advocacy with the benefit of the behind-the-scenes communications and other documents sought by this Motion.

---

https://www.nytimes.com/interactive/2017/10/05/climate/trump-environment-rules-reversed.html (noting 30 rollbacks currently "in progress"); *Regulatory Rollback Tracker*, Environmental Law at Harvard,  http://environment.law.harvard.edu/policy-initiative/regulatory-rollback-tracker (last visited Nov. 9, 2018).

[7] *Id.*

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

For example:

- On August 24, 2018, EPA proposed a rule to replace the 2012 Clean Car Rule, a rule that was designed to significantly increase the average fuel economy of passenger vehicles. Saxonhouse Decl. ¶ 26. Sierra Club and its partners submitted extensive technical and legal comments on EPA's proposal. *Id.* Sierra Club will remain actively engaged and would oppose a similar final rule, which could be finalized in 2019. *Id.*

- Sierra Club and its partners also have submitted detailed comments on and educated the public about EPA's proposal to replace the Clean Power Plan—one of EPA's highest priorities. Darby Decl. ¶ 8. Sierra Club is actively engaged in opposing this rule and will continue to challenge it in 2019 if it is finalized as proposed.  Saxonhouse Decl. ¶ 26.

- In late September, Sierra Club and its allies filed a federal lawsuit challenging EPA guidance, updated in late April 2018, that exempted factory farms from requirements to inform state and local officials about releases of dangerous levels of pollutants. Darby Decl. ¶ 7. On October 30, 2018, EPA announced that it had developed a proposal to amend the regulations governing such reporting, and Sierra Club expects it will engage in the public comment period for this rulemaking. *Id.*

- EPA's fall 2018 regulatory plan identified replacing the 2017 Chemical Disaster Rule as a top agency priority for the coming year. *See* Darby Decl. ¶ 7. The rule, issued under the Obama Administration, protects workers, nearby residents, and first responders from explosions and fires at chemical plants.[8] Sierra Club and its allies have submitted detailed technical and legal comments on EPA's May 2018 proposal to revise the rule, Accidental Release Prevention Requirements: Risk Management Programs Under the Clean Air Act, 83 Fed. Reg. 24,850 (May 30, 2018), and expects to continue to remain engaged in 2019 *Id.*

- Sierra Club and others have challenged EPA's attempt to delay national standards for wastewater from coal-burning power plants established by the Obama Administration. Saxonhouse Decl.

---

[8] Accidental Release Prevention Requirements: Risk Management Programs Under the Clean Air Act, 82 Fed. Reg. 4,594, 4,597 (Jan. 13, 2017).

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

¶ 26. Oral argument is expected be in the first half of 2019. *Id.* Sierra Club anticipates that EPA likely will issue revised and weakened wastewater standards in March 2019, with a public comment period to follow. *Id.*

- Sierra Club and others have sued EPA over its decisions to designate certain areas of the country as being compliant with national air quality standards for ozone (smog), despite the prior administration's determination that the air pollution in those areas violated the national health-based standards and, therefore, triggered states' obligation to mitigate the air pollution problem. *Id.* Briefing is expected in early 2019. *Id.*

- In late October, Sierra Club and its partners brought a lawsuit challenging EPA's decision to weaken standards that govern how coal-burning power plants dispose of the ash left behind from burning coal, pollution that can pose a significant threat to water resources. *Id.* Briefing will begin sometime in 2019. EPA plans to revise other parts of the coal ash standards in a separate rulemaking, which likely will be finalized by the end of 2019. *Id.*

Even where not directly related to a legal engagement, it is important to Sierra Club's work to quickly identify where EPA political staff may be doling out or accepting favors from industry or political groups, or using staff time to engage in partisan activities or to advance personal interests. *Id.* ¶¶ 27-28. All these types of behavior were identified through responses to Sierra Club's prior FOIA requests, and their revelation helped lead to Mr. Pruitt's resignation in early July 2018. *Id.* Where this behavior is occurring, Sierra Club would urge that investigative authorities such as the EPA Inspector General or Congressional oversight committees quickly address the matter. *Id.* ¶ 27. The longer such behavior remains secret, the more damage it can cause to the integrity of the agency's work and, in many cases, the more taxpayer money is misused. *Id.* Documents such as those requested in Sierra Club's four FOIA requests are important for uncovering abuses of office, as they help reveal problems that otherwise might remain hidden. *Id.*

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

1

## III.   ARGUMENT

2

### A.   Because the Undisputed Facts Establish That EPA Has Violated FOIA's Statutory Deadlines, Sierra Club Is Entitled to Judgment as a Matter of Law.

3

4    Congress enacted FOIA "to open agency action to the light of public scrutiny." *U.S. Dep't of*

5   *Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 774 (1989) (quoting *Dep't of Air Force*

6   *v. Rose*, 425 U.S. 352, 372 (1976)). The Act helps "ensure an informed citizenry, vital to the functioning

7   of a democratic society, needed to check against corruption and to hold the governors accountable to the

8   governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

9   Agencies thus must "adhere to 'a general philosophy of full agency disclosure.' " *U.S. Dep't of Justice*

10  *v. Tax Analysts*, 492 U.S. 136, 142 (1989) (quoting *Dep't of Air Force*, 425 U.S. at 360). Non-exempt

11  records must be made "promptly available." 5 U.S.C. § 552(a)(3).

12    To give import to the "promptly available" standard, Congress enacted a rigorous timeline for

13  agency responses to FOIA requests and provided requesters with avenues to seek administrative and

14  judicial relief when an agency denied a request or violated the Act's provisions. *Judicial Watch, Inc. v.*

15  *U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 774 (D.C. Cir. 2018). First, within twenty working days of

16  receiving a request an agency must determine "whether to comply" and "immediately notify the person

17  making such request" of "such determination" as well as the person's attendant rights. 5 U.S.C.

18  § 552(a)(6)(A). Only under "unusual circumstances" may an agency delay a final "determination", and

19  any such delay generally may not exceed ten working days. 5 U.S.C. § 552(a)(6)(B). Second, after

20  making a final "determination" an agency must make the requested non-exempt records "promptly

21  available", irrespective of the agency's workload. "Congress contemplated that agencies would improve

22  their records management systems" to comply with the Act's "promptly available" requirement. *Judicial*

23  *Watch, Inc.*, 895 F.3d at 781.

24    When deciding a motion for summary judgment, this Court must "grant summary judgment if

25  the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

26  judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, there is no genuine dispute as to any material

27  fact.  EPA is a federal agency subject to FOIA, Answer ¶ 14, ECF No. 14; 5 U.S.C. § 552(f)(1), and

28

12

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

Sierra Club's four FOIA requests for records of external communications, schedules, meetings, and phone calls of EPA staff properly sought "records" within the Act's broad definition of the term. *See* 5 U.S.C. § 552(f)(2) (defining "record" to include "any information . . . maintained by an agency in any format"). Sierra Club's requests also "reasonably describe[d]" the records at issue by specifically identifying the types of records sought, the custodians of the records, and the requested time periods. 5 U.S.C. § 552(a)(3)(A); *see also, e.g.*, *Shapiro v. CIA*, 170 F. Supp. 3d 147, 154 (D.D.C. 2016) (records were reasonably described when requester sought all records that mentioned or referenced a specified person because "there can be no dispute about which items are being requested"); Saxonhouse Decl. ¶ 3, Exs. 1-4 (the FOIA Requests); *Tereshchuk v. Bureau of Prisons*, 67 F.Supp.3d 441, 454 (D.D.C. 2014) (quoting *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir.1982)) ("The linchpin inquiry" on this score is "whether 'the agency is able to determine precisely what records are being requested.'").

EPA admits that it received three of the four records requests nearly 1.5 years ago, and that it received the fourth request nearly six months ago. *See* Answer ¶¶ 31-36, ECF No. 14.  EPA was required to make final determinations on these four FOIA requests by August 14, 2017, August 16, 2017, August 18, 2017, and June 8, 2018, respectively—twenty working days after receiving the requests. 5 U.S.C. § 552(a)(6)(A); Am. Compl. ¶ 39, ECF No. 13; *see* Answer ¶¶ 31-36, ECF No. 14 (admitting dates of receipt). But EPA did not do so. EPA admits that it has not made a "determination" as to whether to comply with the four FOIA requests, Answer ¶ 1, ECF No. 14, and it acknowledges that it has not yet released responsive documents, absent limited "interim release[s]" related to one employee, Layne Bangerter, and calendars from selected time periods for four others, Nancy Beck, Brittany Bolen, Justin Schwab, and Byron Brown. *See* Answer ¶ 42, ECF No. 14; Updated Case Mgmt. Statement 2:14-15, ECF No. 26; Darby Decl. ¶¶ 16-17; Saxonhouse Decl. ¶¶ 32-35.

Based on these undisputed facts, Sierra Club is entitled to judgment as a matter of law and a remedy that ensures EPA makes the responsive documents "promptly available." "Promptly available" typically means that an agency must release responsive documents "within days or a few weeks" of making a final "determination." *Citizens for Responsibility & Ethics in Washington ("CREW") v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) (quoting 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i)).

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

1    The Act "does not allow agencies to keep FOIA requests bottled up for months or years on end while

2    avoiding any judicial oversight." *CREW*, 711 F.3d at 190. EPA, however, has unlawfully withheld

3    production for nearly 1.5 years in the case of the first three requests, and for six months in the case of

4    the fourth. *See* Updated Case Mgmt. Statement 2:14-15, ECF No. 26.

5        Because EPA has failed within the statutory deadline to make any final determinations or to

6    make the requested records "promptly available", the agency has violated FOIA with respect to each of

7    Sierra Club's four FOIA requests. Plaintiff therefore is entitled to judgment as a matter of law that EPA

8    has violated FOIA by withholding records and by failing to comply with the procedures required by

9    FOIA.

10       **B.    Given the Long Delay and Pressing Public Need for the Information, the Court**
              **Should Order EPA to Comply with Sierra Club's Proposed Production Schedule.**
11

12       Under FOIA, a court "has jurisdiction to enjoin the agency from withholding agency records and

13   to order the production of any agency records improperly withheld from the complainant." 5 U.S.C.

14   § 552(a)(4)(B). "The FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Payne*

15   *Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (citing *Renegotiation Bd. v. Bannercraft*

16   *Clothing Co.*, 415 U.S. 1, 19–20 (1974)); *see also Renegotiation Bd.*, 415 U.S. at 20 ("[T]here is little to

17   suggest, despite the Act's primary purpose, that Congress sought to limit the inherent powers of an

18   equity court."). Here, given the long delay and the pressing public need for the requested records, the

19   Court should order EPA to release one tier of Sierra Club's highest priority email records per month and

20   two calendars per month, on a monthly rolling basis, with the Tier One records and calendars of Mr.

21   Wheeler and Mr. Wehrum due on or before January 21, 2019, and the nine remaining tiers and calendars

22   produced in sequential order thereafter. The ten sequential tiers of records are attached as Exhibit A to

23   the Proposed Order. *See also* Darby Decl. ¶ 15 & Ex. 5.

24       **1.    Sierra Club's requested production schedule is designed to inform important**
              **policy and personnel issues before it is too late.**
25

26       "[O]ngoing public and congressional debates about issues of vital national importance 'cannot be

27   restarted or wound back.' " *Elec. Frontier Found. v. Office of the Dir. of Nat. Intelligence*, No. C 07-

28

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

5278 SI, 2007 WL 4208311, at *7 (N.D. Cal. Nov. 27, 2007) (quoting *Gerstein v. CIA*, No. C-06-4643 MMC, 2006 WL 3462659 at *4 (N.D. Cal. Nov. 29, 2006)).  " 'The basic purpose of FOIA is to ensure an informed citizenry . . . needed to check against corruption and to hold the governor accountable to the governed." *Judicial Watch, Inc.*, 895 F.3d at 780 (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)) (alteration omitted). If EPA is given years, rather than months, to complete production, the information in the documents will come too late to inform both public debate and litigation over EPA's policy changes, ethical investigations of current or former staff, or the choice of new EPA leadership. "[S]tale information is of little value." *Payne Enters.*, 837 F.2d at 494.

As discussed above, the EPA has under current leadership aggressively pursued a far-reaching deregulatory agenda—rolling back, delaying, or otherwise nullifying safeguards carefully designed to protect public health and the environment, declining to enforce bedrock environmental laws, and replacing academic scientists in key posts with industry advocates. *See supra* Section II.D; Saxonhouse Decl. ¶¶ 5-14, 26. The pace of EPA's rollbacks, its failure to enforce critical safeguards, and its plain disregard for science confirm Sierra Club's concern at the outset of the new Administration that EPA's policymaking would lack a sound basis in fact and law and, instead, would be driven by the very industries that EPA regulates. *See* Saxonhouse Decl. ¶¶ 5-14. Sierra Club's tiered list of highest priority records, including e-mail communications and calendars, is designed to uncover such "arbitrary and capricious" decision-making and to expose other misbehavior by EPA's senior staff. *See supra* Section II.C, D; Darby Decl. ¶¶ 4-11; *see also* 5 U.S.C. § 706(2) (court shall hold unlawful and set aside "arbitrary" or "capricious" agency decisions).

For example, based on the numbers EPA provided in September 2018,[9] approximately 3,050 records on Sierra Club's list of highest priority records are affiliated with e-mail addresses associated with the oil and gas industry and approximately 410 records are affiliated with the transportation industry—the two primary beneficiaries of rolling back the 2012 Clean Car Rule, which Sierra Club is

---

[9] Since EPA provided the estimated number of records associated with each domain name in September, Sierra Club has narrowed the scope of its requests by, for example, eliminating e-mails associated with Mr. Wheeler's public-facing account after he began serving as Acting Administrator. *See* Darby Decl. ¶ 13.

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

challenging in court. *See* Chamberlain ¶ 11; Darby Decl. ¶ 5. Approximately 2,730 e-mail chains are associated with the domain names of entities in the coal and electric generation industries, Chamberlain Decl. ¶ 11, *i.e.*, the entities most likely to benefit from rolling back the 2015 Clean Power Plan, the 2012 Mercury and Air Toxics Standards, and standards for handling coal ash waste and coal-contaminated wastewater, rules that Sierra Club is presently working to defend. *See* Saxonhouse Decl. ¶ 26. Many of these same entities also are among the main beneficiaries of the decrease in EPA's enforcement of health and environmental standards. Once Sierra Club's litigation concludes and the comment periods close, any information contained in these records about the interactions between these entities and political staff at EPA will lose much of its value. As discussed above, the development of the records for these rulemakings, and judicial review, will play out over the next ten or eleven months or so, or far sooner in some cases. *See supra*, Section II.D.

Sierra Club's list of highest priority records also includes Mr. Wheeler's and Mr. Wehrum's calendars, as well as about 2,780 records of e-mail communications associated with Mr. Wheeler's and Mr. Wehrum's former clients and employers. Chamberlain Decl. ¶ 9. These records may inform the selection of a new EPA Administrator in early 2019, as senior EPA staff are among the prime candidates for the position. Such communications, for example, may reveal whether Mr. Wheeler and Mr. Wehrum are abiding by their pledges to not "participate in any particular matter involving specific parties that is directly and substantially related to [their] former employer or former clients, including regulations and contracts." Exec. Order No. 13,770, 3 C.F.R. 301 (Jan. 28, 2017); *see also* Saxonhouse Decl. ¶¶ 22-24, Exs. 13-14 (recusal statements).

Because Sierra Club's highest priority records bear directly on Sierra Club's active litigation, regulatory advocacy, and the early 2019 selection of a new EPA Administrator, the public's prompt access to the information is essential. The Court, therefore, should order EPA to expeditiously release the identified records.

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

1

2

    **2.    EPA can reasonably be expected to review one tier per month given the nature of the documents and past precedent.**

3

4        The requested production schedule seeks that, each month, EPA review for production an average of approximately 1,870 e-mail strings, along with two employees' calendars. Darby Decl. ¶ 14.

5    This is realistic and even conservative. Across the entire 10-month production schedule, Sierra Club

6    requests only that EPA release approximately 18,700 records and twelve calendars, some of which also

7    are responsive to FOIA requests submitted by other parties. *Id.* ¶¶ 13, 16-18.

8

9

    **a.    The documents are likely to be short and largely unredacted, and EPA has processed similar documents at a faster pace than requested here.**

10        First, the identified e-mail records include only communications with parties outside EPA and

11    the rest of the federal government, Am. Compl. ¶¶ 31, 33, 35, 37, ECF No. 13; *see* Answer ¶¶ 31, 33,

12    35, 37, ECF No. 14, and as such typically have no portions that are exempt from disclosure under FOIA.

13    *See, e.g.*, 5 U.S.C. § 552(b)(5) (exempting certain *inter-agency* and *intra-agency* memorandums).

14    Documents such as these, which do not require redaction, can be processed "relatively quickly."[10]

15        Moreover, each individual record likely will be fairly short.  The vast majority of documents

16    containing external e-mail communications that EPA provided in response to nearly identical requests

17    from Sierra Club, though concerning different personnel, were less than five pages. Abell Decl. ¶¶ 5-9

18    (describing documents produced in response to Sierra Club requests for the e-mail communications and

19    other records of Mr. Pruitt, his administrative and scheduling staff, and his top policy aides). There is no

20    reason to expect the e-mails produced in response to the requests at issue here would be longer.

21

22

23

---

24

25

26

27

28

[10] *See* Joint Case Mgmt. Conference Statement at 13, *Sierra Club v. U.S. Dep't of Interior*, 18-cv-00797-JSC (N.D. Cal. June 29, 2018) (attached as Exhibit E) (Statement by reviewing agency Department of Interior that "[r]ecords that are not subject to withholding and require no redaction can be processed relatively quickly while records that are subject to withholding and require redaction take much longer to process."). **Sierra Club requests that the Court take judicial notice of this district court record and the other district court records and transcripts cited herein and attached as exhibits.** *See, e.g.*, *United States v. Martinez*, 771 F.3d 672, 674 n. 1 (9th Cir. 2014) ("We grant Martinez's requests for judicial notice of our own records and district court records in other cases.").

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

Moreover, EPA processed those documents more rapidly than Sierra Club is requesting here. After Sierra Club brought litigation to compel production,[11] EPA produced to Sierra Club over 65,000 pages of e-mails and calendar documents in productions occurring between March 3, 2018 and August 13, 2018—an average of approximately 13,000 pages per month, and over 16,000 per month between April 2 and July 30. *See* Abell Decl. ¶¶ 4-8.  In another case, EPA agreed in early 2018 to review 1,000 documents per month for production.[12] There, unlike here, many of the documents were internal requiring a closer and more time-consuming review for applicable privileges.[13]

Likewise, courts have ordered a similar or more aggressive pace of production over EPA's and other agencies' objections. In *Waterkeeper Alliance v. EPA*, No. 17-CV-07400 (S.D.N.Y), Sierra Club and other citizen groups sued EPA for failure to respond to a request regarding EPA's rollback of standards to clean up wastewater from coal-burning power plants. In early November 2017, EPA told the court that it needed at least four months to review more than 8,000 responsive documents, 4,400 of which had gone through a "first-line" review. The court instead ordered that EPA complete its review of those documents in less than two months, noting that 8,000 documents is "not that many."[14] *See also Allen v. FBI*, 716 F. Supp. 667, 669 (D.D.C. 1988) (FBI processed 5,000 pages of responsive records per month); *Meeropol v. Meese*, 790 F.2d 942, 947 (D.C. Cir. 1986) (district court order FBI to "search, process [sic] documents at the rate of 40,000 pages per month . . ."); *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 613 n.15 (D.C. Cir. 1976) (district court ordered FBI to review a minimum of 4,000 pages per month until plaintiff's request was processed).

---

[11] *See Sierra Club v. EPA*, No. 1:17-cv-01906-CKK (D.D.C. filed Sept. 18, 2017).

[12] *See* Agreed Briefing Order, *S. Envtl. Law Ctr. v. EPA*, No. 3:17-CV-00061 (W.D. Va. Feb. 2, 2018) (attached as Exhibit F); *see also id.* Order on Briefing Schedule (Jan. 31, 2018) (finding that EPA's claims of being understaffed did not show good cause for modifying the briefing schedule) (attached as Exhibit G).

[13] The underlying request requested sought "any and all" records regarding Executive Order 13777, "Enforcing the Regulatory Reform Agenda" (issued Mar. 1, 2017). *See* Compl. at ¶ 23 and Ex. 3, *S. Envtl. Law Ctr. v. EPA*, No. 3:17-CV-00061 (W.D. Va. Feb. 2, 2018) (underlying request attached as Exhibit H).

[14] *See* Tr. of Nov. 3, 2017 Status Conference at 5:24, *Waterkeeper Alliance v. EPA,* 17-CV-07400 (S.D.N.Y filed Nov. 14, 2017) (attached as Exhibit I).

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

1

2

                    **b.**      **EPA's extra layer of political review of FOIA responses slows processing and is unnecessary.**

3

       While EPA has suggested it is too overwhelmed with FOIA requests to process Sierra Club's

4

requests in a timely way, the agency's delay in completing its responses stems in part from extra layers

5

of review by political staff, which exceeds what is needed to determine the applicability of FOIA

6

exemptions. Specifically, EPA under the Trump administration has instituted extensive "awareness

7

reviews" and "senior management reviews" in which documents are sent to a large number of political

8

and other senior staff for review, in addition to the typical FOIA processing by career FOIA officers.

9

*See* Saxonhouse Decl. ¶¶ 36-37, Exs. 7, 24-26. As described in the documents setting forth this new

10

"FOIA Centralization Project," "[p]rior to release of any documents to the public, the FOIA Expert

11

Assistance Team ("FEAT") will ensure that senior Agency leadership are given the opportunity for an

12

awareness review of the documents to be released.  Following senior leadership awareness review,

13

documents will be released to the requester and posted to FOIAonline." *See Id.* ¶ 37, Ex.7.  The "senior

14

leadership" who must be included in these "awareness reviews" includes a significant number of

15

political staff from various sub-offices within the Administrator's Office. *Id.*, Ex. 25 (e-mail describing

16

"full list-serve" for awareness reviews)[15]; *see also* Ex.8 (noting that under new program "[career staff]

17

will forward the proposed release *for the political team's* awareness review."); Ex. 26 at 4 (career

18

manager of FOIA expert assistance team noting that she had "instructed [her] staff that no

19

A[dministrator's] O[ffice] requests are to be issued without the opportunity for an awareness review by

20

[the Administrator's Chief of Staff, Ryan Jackson], [the] O[ffice of] P[ublic] A[ffairs] and the senior

21

leadership of any other affected offices.").

22

       Such multi-layer reviews appear to be one reason for EPA's repeated failure to timely respond to

23

FOIA requests. In explaining a long delay in producing documents in response to another request for

24

documents from EPA Headquarters, counsel for EPA stated that "the new administration put in a

25

procedure for this case—not all cases but this particular case—where it involves the [O]ffice of the

26

---

[15] As of August 2017, the list included: Ryan Jackson, Liz Bowman, Amy Graham, Troy Lyons,

27

Samantha Dravis, Kevin Minoli, Elise Packard, Erik Baptiste, Justin Schwab, David Fotouhi, Nancy

28

Grantham, Michelle Pirzadeh and Sarah Greenwalt. More than half of these are political employees.

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

[E]xecutive [S]ecretariat, that it goes for a final sign-off on release of documents from that office before the documents can be released."[16] This practice and the particular delay in responding to requests made to the Administrator's Office (the locus of most political staff)[17] has garnered concern from the House Oversight Committee's Ranking Member, who wrote to EPA in June seeking more information on this topic, and noting that the practice of "requiring senior political appointees to review FOIA responses before they are released" is one "our Committee has condemned on a bipartisan basis in the past." *Id.*, Ex. 26 (Letter from E. Cummings to E. Scott Pruitt, June 11, 2018).

### c. EPA's work on Sierra Club's requests will advance its responses to many other FOIA requests.

By responding to Sierra Club's FOIA requests, EPA also will be responding to overlapping FOIA requests currently in EPA's online cue. For example,

- On July 11, 2017, Center for American Progress submitted two FOIA requests: (1) a request for certain correspondence and schedules of numerous EPA staff, including Mr. Brown, Mr. Bangerter, and Dr. Beck with certain entities affiliated with Robert Murray and Murray Energy Corporation; and (2) a request for schedules of Mr. Brown and Mr. Bangerter, from February 15, 2017 to the present. Darby Decl. ¶ 18. Sierra Club's four FOIA requests, including the records identified in its highest priority tiers, also seek this same information. *See* Chamberlain Decl. ¶¶ 8-9, 11 (coal and utility industry domain names); Darby Decl. ¶ 11 (prioritization process); Saxonhouse Decl. ¶21 (affiliation of Robert Murray and Murray Energy Corporation with coal industry).

- On June 30, 2017, Center for Biological Diversity submitted a request for Dr. Beck's schedule and correspondence since she began working at EPA. Darby Decl. ¶ 18. Dr. Beck, who has close ties to the chemical industry, also is a custodian identified in Sierra Club's requests, and its list of

---

[16] *See* Tr. of Nov. 3, 2017 Status Conference at 3:4-9, *Waterkeeper Alliance v. EPA,* 17-CV-07400 (S.D.N.Y filed Nov. 14, 2017) (attached as Exhibit I).

[17] Per EPA's website, the Administrator's Office includes the Office of Congressional and Intergovernmental Relations, the Office of Public Affairs, and the Office of Policy. *See* EPA, *Organization Chart for the Office of the Administrator*, https://www.epa.gov/aboutepa/organization-chart-office-administrator (last visited Nov. 9, 2018).

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

highest priority documents at issue here specifically targets the agricultural and chemical
industries. *See* Chamberlain Decl. ¶¶ 8, 11 (domain names affiliated with agricultural and
chemical industries).

- On July 11, 2018, Center for Biological Diversity submitted a FOIA request seeking Mr.
  Wheeler's communications since April 1, 2018. Darby Decl. ¶ 18. Sierra Club's FOIA request
  similarly seeks such communications since January 20, 2017.

Because of such significant overlap, including with Sierra Club's highest priority records, a court order
directing EPA to promptly produce the identified records would advance EPA's responses to these and
likely many other overlapping FOIA requests.

#### d.      EPA has already delayed for many months.

Finally, EPA collected the responsive documents more than two months ago on September 4,
2018 and received Sierra Club's highest priority tiers on September 28. Joint Initial Case Mgmt.
Statement 2:23-25, ECF No. 23; Updated Joint Case Mgmt. Statement 2:15-17, ECF No. 28. EPA, thus,
has had 1.5 months to begin processing and releasing records since learning of the domain names of
particular interest to Sierra Club. This 1.5-month period is in addition to the 1.5 years EPA has already
had to process Sierra Club's first three records requests, and the nearly six additional months EPA has
had to process the fourth.

EPA may not continue to shield the requested records based on claims that the agency lacks
resources to comply with Sierra Club's reasonable requests. FOIA "seeks to permit access to official
information long shielded unnecessarily from public view and attempts to create a judicially enforceable
public right to secure such information from possibly unwilling official hands." *Judicial Watch, Inc.*,
895 F.3d at 775 (quoting *EPA v. Mink*, 410 U.S. 73, 80 (1973)). "Congress contemplated that agencies
would improve their records management systems" to ensure that records were made "promptly
available." *Id.* at 781 (citing 5 U.S.C. § 552(a)(3)(A)). Here, EPA has already had months to process
records that will be subject to, at most, only minimal redaction and that will inform the ongoing public
debate surrounding EPA's deregulatory agenda and the selection of a new Administrator in early 2019.

NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL

1    The Court accordingly should order EPA begin producing Sierra Club's highest priority records

2    on or before January 21, 2019, according to Exhibit A to the Proposed Order.  On average, the requested

3    production schedule would require EPA to produce only about 1,870 e-mail strings and the calendars of

4    two custodians each month—a total of about 18,700 records and twelve calendars across the entire 10-

5    month period. *See* Darby Decl. ¶ 14.

6

7    **IV.    CONCLUSION**

8    For the foregoing reasons, Sierra Club respectfully requests that this Court grant this motion for

9    partial summary judgment, declare that EPA has violated FOIA with respect to all four FOIA requests,

10   and order EPA to release Sierra Club's highest priority records according to the schedule set forth in

11   Exhibit A to the Proposed Order.

12

13   DATED: November 9, 2018                    Respectfully submitted,

14

15

16                                                   */s/ Marta Darby*
                                              SIERRA CLUB ENVIRONMENTAL LAW PROGRAM
17                                            Elena Saxonhouse (CA Bar No. 235139)
                                              Marta Darby (CA Bar No. 310690)
18                                            2101 Webster St., Ste. 1300
                                              Oakland, CA 94612
19

20                                            *Attorneys for Sierra Club*

21

22

23

24

25

26

27

28
                                        22
NOTICE AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-3472-EDL