1    ALEX G. TSE (CABN 152348)
     United States Attorney
2    SARA WINSLOW (DCBN 457643)
     Chief, Civil Division
3    ADRIENNE ZACK (CABN 291629)
     Assistant United States Attorney
4
         450 Golden Gate Avenue, Box 36055
5        San Francisco, California 94102-3495
         Telephone: (415) 436-7031
6        Fax: (415) 436-6748
         adrienne.zack@usdoj.gov
7
     Attorneys for Defendant
8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12

13   SIERRA CLUB,                    )   CASE NO. 3:18-cv-3472-EDL
                                     )
14        Plaintiff,                 )   **DEFENDANT'S RESPONSE TO PLAINTIFF'S**
                                     )   **MOTION FOR PARTIAL SUMMARY**
15        v.                         )   **JUDGMENT**
                                     )
16   UNITED STATES ENVIRONMENTAL     )   Date:    December 20, 2018
                                     )   Time:    9:30 a.m.
17   PROTECTION AGENCY,              )   Place:   San Francisco Courthouse
                                     )            Courtroom E, 15th Floor
18        Defendant.                 )   Before: Hon. Elizabeth D. Laporte
     _____ )

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONENTS

I.     Introduction ........................................................................................................... 1

II.    Statement of the Issues ......................................................................................... 2

III.   The Freedom of Information Act ........................................................................... 2

IV.    Factual History ...................................................................................................... 3

       A.     Sierra Club's Four FOIA Requests to EPA. ............................................... 3

              1.     July 17, 2017 Request ....................................................................... 3

              2.     July 19, 2017 Request ....................................................................... 4

              3.     July 21, 2017 Request ....................................................................... 4

              4.     May 10, 2018 Request ....................................................................... 5

              5.     EPA's Response ................................................................................. 5

       B.     Procedural History. .................................................................................... 6

       C.     The Recent Surge in FOIA Requests to EPA and Impact to OEX Resources. ................... 7

V.     Legal Standards ..................................................................................................... 8

VI.    Argument ............................................................................................................... 9

       A.     A Motion Partial Summary Judgement Is Not Appropriate Here. ................... 9

       B.     The Production Schedule Set Forth by EPA is Appropriate. ........................... 10

       C.     If the Court Considers the Motion As One for Summary Judgement, the Court
              Should Deny the Motion. ........................................................................... 14

VII.   Conclusion ........................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allen v. FBI,*
716 F. Supp. 667 (D.D.C. 1988) .................................................................................. 12

*Am. Fed'n of Gov't Employees, Local 2782 v. U.S. Dep't of Commerce,*
907 F.2d 203 (D.C. Cir. 1990) .............................................................................. 2, 14

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .................................................................................................. 9

*Appleton v. F.D.A.,*
310 F. Supp. 2d 194 (D.D.C. 2004) ..................................................................... 10, 11

*Baldrige v. Shapiro,*
455 U.S. 345 (1982) ............................................................................................. 3, 13

*Bartko v. U.S. Dep't of Justice,*
167 F. Supp. 3d 55 (D.D.C. 2016) ............................................................................. 9

*Energy Future Coal. v. Office of Mgmt. & Budget,*
200 F. Supp. 3d 154 (D.D.C. 2016) ...................................................................9, 10, 13

*Freedom Watch v. Bureau of Land Mgmt.,*
325 F. Supp. 3d 139 (D.D.C. 2018) ......................................................................... 13

*Goland v. CIA,*
607 F.2d 339 (D.C. Cir. 1978) .................................................................................. 2

*L. R. B. v. Sears, Roebuck & Co.,*
421 U.S. 132 (1975) ............................................................................................. 2, 13

*Larson v. U.S. Dep't of State,*
565 F.3d 857 (D.C. Cir. 2009) .................................................................................. 9

*Lawyers' Comm. for Civil Rights of San Francisco Bay Area v. U.S. Dep't of the Treasury,*
534 F. Supp. 2d 1126 (N.D. Cal. 2008) ..................................................................... 8

*Lewis v. U.S. Dep't of Justice,*
733 F. Supp. 2d 97 (D.D.C. 2010) ........................................................................... 15

*Marks v. U.S. Dep't of Justice,*
578 F.2d 261 (9th Cir. 1978) ............................................................................... 2, 14

*Meeropol v. Meese,*
790 F.2d 942 (D.C. Cir. 1986) ................................................................................ 12

*Middle E. Forum v. U.S. Dep't of Homeland Sec.,*
297 F. Supp. 3d 183 (D.D.C. 2018) ...............................................................8, 9, 10, 13

*Olagues v. Russoniello,*
770 F.2d 791 (9th Cir. 1985) ................................................................................... 16

*Open Am. v. Watergate Special Prosecution Force*,
  547 F.2d 605 (D.C. Cir. 1976) .................................................................................. 11, 12

*Petroleum Info. Corp. v. U.S. Dep't of Interior*,
  976 F.2d 1429 (D.C. Cir. 1992) .................................................................................. 3, 13

*SafeCard Servs., Inc. v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991) ...................................................................................... 9

*Thomas v. F.C.C.*,
  534 F. Supp. 2d 144 (D.D.C. 2008) .............................................................................. 15

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*,
  489 U.S. 749 (1989) ......................................................................................................... 2

*United States v. U.S. Dist. Court, Cent. Dist. of Cal., Los Angeles, Cal.*,
  717 F.2d 478 (9th Cir. 1983) ........................................................................................... 3

*Weirich v. Bd. of Governors of the Fed. Reserve Sys.*,
  No. CV-10-5031-EFS, 2010 WL 4717211 (E.D. Wash. Nov. 15, 2010) ........................ 14

*Yonemoto v. Dep't of Veterans Affairs*,
  686 F.3d 681 (9th Cir. 2012) ....................................................................................... 3, 8

Statutes

5 U.S.C. § 522(a)(3)(A) .................................................................................................. 14

5 U.S.C. § 552 ............................................................................................................... 1, 2

5 U.S.C. § 552(a)(3)(A) .................................................................................................. 15

5 U.S.C. § 552(a)(6)(A)(i) .............................................................................................. 15

Rules

Fed. R. Civ. P. 56(a) ........................................................................................................ 9

Fed. R. Civ. P. 56(c)(1) .................................................................................................... 9

Regulations

40 C.F.R. § 2.104(e) ....................................................................................................... 13

**I.    Introduction**

This action involves four sweeping requests submitted by Plaintiff Sierra Club to Defendant the U. S. Environmental Protection Agency ("EPA") for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking external communications to or from 25 EPA officials as well as calendars and meeting attendance records.  As initially submitted, portions of these requests did not constitute proper requests for records because searching for every communication sent to or received from an external party for each of the 25 custodians at issue requires an unduly burdensome search. Nevertheless, since this action was filed, EPA has worked with Sierra Club to narrow and clarify the scope of the very broad requests, and the parties have agreed to begin processing and to produce releasable portions of a group of email records and calendars as prioritized by Sierra Club.  The only question before the Court at this juncture is the pace at which EPA should be reviewing and producing the prioritized records.

In its partial motion for summary judgment, Plaintiff seeks a declaration that EPA has violated FOIA and an order requiring EPA to produce the prioritized records a rate of 1050 to 2743 records per month (an estimated 3150 to 8229 pages) and two calendars per month.  ECF No. 32 at 14.  However, summary judgement is not yet appropriate in this case, and the Court should construe the motion as a simple motion requesting the Court to set a production schedule.  In response to that motion, the Court should order EPA to process the documents at a rate that is reasonable based on the resources available to EPA and in light of the volume of other FOIA requests pending before the EPA—a rate of 400 documents per month.  EPA further proposes that the calendars for Andrew Wheeler and Bill Wehrum be produced by January 15, 2019, with the remaining 10 calendars identified by Sierra Club produced at a rate of two calendars every six weeks.  This reasonable schedule accounts for the resources currently available to EPA to process Sierra Club's requests and seeks to balance that reality with Sierra Club's desire to obtain the records in a timely fashion.

If the Court does reach Plaintiff's request for partial summary judgment, it should deny the motion because Sierra Club's requests as submitted were not proper requests and EPA did not violate the FOIA by not responding to the requests within 20 days.

## II.   Statement of the Issues

1.   Whether summary judgment is appropriate at this point of the case where the parties only dispute is the pace of the processing of records.

2.   Given the limited and overburdened resources of the agency, at what rate EPA should be required to produce records in response to Sierra Club's prioritized requests.

3.   Whether EPA violated FOIA when it did not respond to Sierra Club's improper requests within 20 days.

## III.   The Freedom of Information Act

The FOIA provides a means for the public to access federal government records, subject to certain exemptions.  5 U.S.C. § 552.  An agency generally must determine within twenty days after receipt of a properly submitted FOIA request, or thirty days in "unusual circumstances," "whether to comply with such request."  *Id.* § 552(a)(6)(A)(i), (B)(i).  The FOIA directs that, if an agency fails to make such a determination within twenty days, a requestor "shall be deemed to have exhausted his administrative remedies with respect to such request."  *Id.* § 552(a)(6)(C)(i).  "If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records" with respect to that request.  *Id.*  The FOIA confers district courts with subject-matter jurisdiction to enjoin a federal agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.  *Id.* § 552(a)(4)(B).

The FOIA requires that a request must reasonably describe the records sought.  *Id.* § 552(a)(3)(A).  The request must allow an agency employee to locate the record and the employee must also be able to do so "with a reasonable amount of effort."  *Marks v. U.S. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978) (quoting H. Rep. No. 93-876 93rd Cong., 2d Sess. 6 (1974)).  Thus, "[a]n agency need not honor a request that requires 'an unreasonably burdensome search.'"  *Am. Fed'n of Gov't Employees, Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) ("*AFGE*") (quoting *Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1978)).

A particular requester's "rights under the Act are neither increased nor decreased by reason of the fact that it claims an interest in the [requested records] greater than that shared by the average

member of the public." *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 144 (1975); *see also U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 771 (1989). Thus, "[a] requestor's purpose for requesting the documents or his intended use of the information sought does not matter under the FOIA." *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 691 (9th Cir. 2012), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016); *see also Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1437 (D.C. Cir. 1992).

Additionally, while the information obtained through a FOIA request may helpful in a lawsuit, "[t]he primary purpose of the FOIA was not to benefit private litigants or to serve as a substitute for civil discovery." *Baldrige v. Shapiro*, 455 U.S. 345, 360 (1982); *see also United States v. U.S. Dist. Court, Cent. Dist. of Cal., Los Angeles, Cal.*, 717 F.2d 478, 481 (9th Cir. 1983) (recognizing that "the FOIA did not replace the traditional rules of discovery").

## IV.     Factual History

### A.     Sierra Club's Four FOIA Requests to EPA.

#### 1.     July 17, 2017 Request

On July 17, 2017, Sierra Club submitted a FOIA request to EPA seeking the records of the external communications of seven EPA employees from January 20, 2017 through the date of the request. ECF No. 13 at Ex. A. The request sought all external communications between any of the following personnel and any person outside of EPA: Brittany Bolen, Byron Brown, Holly Greaves, Albert Kelly, Richard Yamada, Nancy Beck, and Dennis Lee Forsgren. *Id.* The request additionally sought these employees' calendars; sign in sheets or other records memorializing these employees' attendance at any meetings with persons outside EPA; and phone logs or other indices which memorialize communications with persons outside EPA. *Id.* This request specifically excluded all communications to or from persons employed elsewhere within the Executive Branch of the United States; persons employed by the executive branch of any state; or persons who have executed a legal contract to provide consulting or other services to EPA is the communications post-date that contract. *Id.* This request was assigned tracking number EPA-HQ-2017-009482 and assigned to the Office of the Administrator. Declaration of Brian Hope ("Hope Decl.") ¶ 5.

### 2.     July 19, 2017 Request

Two days later, on July 19, 2017, Sierra Club submitted the second FOIA request at issue in this litigation seeking the records of Michele Hale, an executive assistant to former EPA Administrator Scott Pruitt.  ECF No. 13 at Ex. B.  The request sought communications between Ms. Hale and parties outside EPA related to phone calls, meetings, or appearances with Scott Pruitt; calendars; and sign-in sheets or other records memorializing attendance at any meetings attended by Scott Pruitt and anyone outside EPA from February 17, 2017 through the present.  *Id.*  This request was assigned tracking number EPA-HQ-2017-009615 and assigned to the Office of the Administrator.  Hope Decl. ¶ 7.  On August 22, 2017, EPA sent an email to the Sierra Club to provide contact information for the EPA staff assigned to the request and information about the unprecedented increase in the number of FOIA requests facing the Office of the Administrator.  *Id.*

### 3.     July 21, 2017 Request

Then, two days after the second request and four days after its first request, on July 21, 2017, Sierra Club submitted the third FOIA request at issue in this litigation seeking the records of the external communications of seven additional EPA employees from January 20, 2017 through the date of the request.  ECF. No. 13 at Ex. C.  The request sought all external communications between any of the following personnel and any person outside of EPA: Troy Lyons, Elizabeth Bennett, Christian Palich, Layne Bangerter, Aaron Ringel, Kaitlyn Shimmin, and Kenneth Wagner.  *Id.*  The request additionally sought these employees' calendars; sign in sheets or other records memorializing these employees' attendance at any meetings with persons outside EPA; and phone logs or other indices which memorialize communications with persons outside EPA.  *Id.*  This request specifically excluded all communications to or from persons employed elsewhere within the Executive Branch of the United States and persons who have executed a legal contract to provide consulting or other services to EPA is the communications post-date that contract.  Unlike the July 17, 2017 request above, this third request included communications between the EPA personnel identified in the request and state agencies.  This request was assigned tracking number EPA-HQ-2017-009684 and assigned to Office of Congressional and Intergovernmental Relations (OCIR) in the Office of the Administrator.  Hope Decl. ¶ 9.

### 4.    May 10, 2018 Request

On May 10, 2018, Sierra Club submitted the fourth FOIA request at issue in this litigation seeking the records of the external communications of ten additional EPA employees from January 20, 2017 through the date that EPA conducted its search.  ECF. No. 13 at Ex. D.  The request seeks all external communications between any of the following personnel and any person outside of EPA: Andrew Wheeler, Madeline Morris, Charles Munoz, Sarah Greenwalt, William Lovell, Justin Schwab, Patrick Davis, Michael Abboud, David Ross, and Bill Wehrum.  *Id.*  The request additionally seeks these employees' calendars; sign in sheets or other records memorializing these employees' attendance at any meetings with persons outside EPA; and phone logs or other indices which memorialize communications with persons outside EPA.  *Id.*  This request did not make any of the exclusions of "external" communications made for EPA personnel identified in the three earlier requests and therefore also seek all communications between these EPA personnel and other non-EPA government employees. This request was assigned tracking number EPA-HQ-2018-007559 and assigned to the Office of the Administrator.  Hope Decl. ¶ 11.

### 5.    EPA's Response

In total, Sierra Club's requests sought external communications (under various definitions of "external communications"), calendars, meeting attendance records, and phone logs for 25 EPA employees.  On June 1, 2018, EPA emailed Sierra Club with estimated completion dates for the first three requests.  Hope Decl. ¶ 13.  These estimated completion dates were estimates which accounted for the significant increase in FOIA requests filed with the Office of the Administrator.  *Id.*  Specifically, EPA advised Sierra Club that request EPA-HQ-2017-009482 (submitted July 17, 2017) was number 503 in the queue, request EPA-HQ-2017-009615 (submitted July 19, 2017) was number 521 in the queue, and EPA-HQ-2017-009684 (submitted July 21, 2017) was number 526 in the queue.  *Id.*  The email also invited Sierra Club to narrow its requests, so that they could be processed more quickly.  *Id.*  No response to this request was received from Sierra Club prior to the filing of the complaint in this matter. *Id.*

1   The Office of the Executive Secretariat ("OEX") is assigned and is responsible for processing the

2   four FOIA requests at issue in this case.  So far, EPA has made two interim releases of records

3   pertaining to Mr. Bangerter on May 31, 2018 and November 2, 2018.  *Id.* ¶¶ 12, 15.

4       **B.      Procedural History.**

5       On June 11, 2018, Sierra Club filed the initial complaint in this case, ECF No. 1.  On July 23,

6   2018, filed the first amended complaint, adding the May 2018 FOIA request.  ECF No. 13.

7       On August 1, 2018, after communications between counsel, Sierra Club provided EPA a letter

8   which defined "external communications" for email records to in part mean that EPA should search the

9   "To", "From", "cc" and "bcc" fields in each of the 25 custodians' Outlook accounts for any emails

10  containing email addresses ending in any of the generic domain names ".com", ".net", ".org", ".edu",

11  ".int", ".info", and ".biz."  Hope Decl. ¶ 16.  This definition did not account for external

12  communications between government employees.  *Id.* ¶ 26.  The letter also included an attachment

13  identifying 57 specific domain names to search for communications with state agencies (*e.g.*,

14  alaska.gov).  *Id.* ¶ 16.  Sierra Club's letter requested that EPA produce all responsive records for 12 of

15  the 25 custodians within an eight-month timeframe beginning on October 1, 2018 and ending on June 1,

16  2019.  *Id.*

17      Applying this search criteria, EPA located 271,439 potentially responsive records.  *Id.* ¶ 19.

18  Since that time, the parties have continued discussions in an attempt to narrow the scope of Sierra Club's

19  requests to a more manageable scope.  *Id.* ¶¶ 19-25.  EPA provided a list of all of the domain names

20  which occur in the search and the frequency of their appearance.  *Id.* ¶ 20.  With that information, Sierra

21  Club identified records to prioritize, providing EPA with a list of the highest priority domain names

22  broken out into ten tiers on September 28, 2018.  *Id.* ¶ 21.  The parties also agreed to exclude some

23  emails that have already been processed in other FOIA requests and to exclude the public facing account

24  of Mr. Wheeler since he became Acting Administrator.  *Id.* ¶ 25.  As of November 8, 2018, these tiers

25  are comprised of 18,706 records.  *Id.* ¶ 27.  Also on September 28, 2018, Sierra Club identified the

26  calendars of 12 individuals as priorities.  *Id.* ¶ 21.

27      In October 2018, after the scope of the tiers of documents were largely settled, EPA began

28  processing the records in the first tier identified by Sierra Club.  Hope Decl. ¶ 25.  EPA intends to make

DEF. RESP. TO PART. MOT. FOR SUMMARY JUDGMENT
3:18-CV-3472 EDL                                    6

1    its first production of records by December 21, 2018.  *Id.* ¶¶ 30, 62.  Additionally, EPA intends to

2    produce the calendars for Mr. Wheeler and Mr. Wehrum by January 15, 2019.  *Id.* ¶ 62.

3           **C.     The Recent Surge in FOIA Requests to EPA and Impact to OEX Resources.**

4           Since January 2017, EPA has faced an increase in FOIA requests, which has greatly impacted

5    the Office of the Administrator and its sub-office OEX.  As detailed in Mr. Hope's declaration, it is the

6    Office of the Administrator through OEX that is responsible for processing Sierra Club's requests in this

7    case.  Hope Decl. ¶¶ 5, 7, 9, 11.  The Office of the Administrator has been particularly affected by the

8    surge in FOIA requests, receiving 203 requests in fiscal year 2016, which increased to 1045 requests in

9    fiscal year 2017 and 952 requests in fiscal year 2018.  *Id.* ¶ 34.  This represents a 468 percent increase

10   between 2016 and 2018.  *Id.*  In conjunction with this surge, the amount of FOIA litigation has also

11   increased substantially.  *Id.* ¶ 35.

12          To tackle this significant increase in requests, the Office of the Administrator has established a

13   project called the AO4 project.  *Id.* ¶¶ 36.  This project combines the FOIA resources of the four sub-

14   offices receiving the majority of the Office of the Administrator FOIA requests, maximizing available

15   resources and gaining efficiencies.  *Id.* ¶¶ 36-37.  It focuses on FOIA requests that are not in litigation to

16   seek to comply with the timelines set out in the FOIA.  *Id.* ¶ 37.

17          Once a request assigned to the Office of the Administrator is in litigation—including those

18   assigned to one of the four AO4 offices—the review and processing of records is normally handled by

19   OEX.  *Id.* ¶ 38.  To address the increased number of requests in litigation, OEX has hired additional staff

20   to review records.  *Id.*  As a result, OEX currently has four full-time equivalent (FTE) staff members

21   that can spend up to half of their review time reviewing records for FOIA requests that are in litigation.

22   *Id.* ¶¶ 38-41.  The other half of their review time is spent on requests not in litigation.  *Id.* ¶ 39.  With

23   this current level of staffing, OEX has 256 FTE hours per month that it can devote to reviewing records

24   for all FOIA requests handled by OEX that are in litigation.  *Id.* ¶ 41.

25          With these 256 FTE hours, EPA estimates that OEX can review approximately 1843 documents

26   per month for all requests handled by OEX that are currently in litigation.  *Id.* ¶ 56.  This estimate is

27   based on: (1) an average document review rate calculated from other similar review projects

28   (approximately 43 pages per hour); (2) the fact that documents undergo two rounds of review; and (3) an

DEF. RESP. TO PART. MOT. FOR SUMMARY JUDGMENT
3:18-CV-3472 EDL                                    7

1   average number of pages per document calculated from similar types of productions (3 pages per

2   document). *Id.* ¶¶ 51-56.

3       Documents go through two rounds of review before production, which are the same whether a

4   request is the subject of litigation or not. *Id.* ¶ 42.  In the first round, the records are reviewed for

5   responsiveness, for potential duplication, for exemptions (with redactions if appropriate), and to flag any

6   records which may need to be reviewed by other parts of EPA or other agencies. *Id.* ¶¶ 43-45.  The

7   second round of review resolves the flags that required additional review from other entities and is a

8   quality and consistency review. *Id.* ¶¶ 46-47.  For requests in litigation, agency counsel also generally

9   conducts a legal review. *Id.* ¶ 49.  Finally, some records may go through an awareness notification

10  process prior to their production, which allows senior agency officials to be cognizant of FOIA releases

11  in order to better respond to inquiries regarding the releases. *Id.* ¶ 50.

12      Until recently, OEX did not utilize the metrics described above when agreeing to production

13  schedules for FOIA requests in litigation. *Id.* ¶ 57.  This resulted in significant overextension of OEX's

14  resources. *Id.* ¶ 58.  For example, in November 2018, EPA committed OEX to processing 4350

15  documents that month for requests in litigation. *Id.*  This exceeded OEX's estimated capacity by more

16  than 2000 documents. *Id.*  To meet obligations such as those in November 2018, OEX calls on agency

17  counsel and EPA staff from other offices to assist with document review. *Id.* ¶ 59.  In some cases, FOIA

18  requests not in litigation suffer because resources are pulled away to assist with requests in litigation.

19  *Id.*  Such overextension of OEX's FOIA processing resources negatively impacts the agency as a whole.

20  *Id.*

21  **V.   Legal Standards**

22      While FOIA cases are typically decided on motions for summary judgment, *Yonemoto*, 686 F.3d

23  at 688, such motions are typically filed after an agency has withheld documents in response to a FOIA

24  request or once production in response to the FOIA request is complete. *See, e.g.*, *Lawyers' Comm. for*

25  *Civil Rights of San Francisco Bay Area v. U.S. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1129 (N.D.

26  Cal. 2008) (considering motions for summary judgement after the agency responded to plaintiff's FOIA

27  requests).  When the parties are merely in disagreement about the rate of production, a motion for a

28  scheduling order is appropriate. *See, e.g.*, *Middle E. Forum v. U.S. Dep't of Homeland Sec.*, 297 F.

Supp. 3d 183, 187 (D.D.C. 2018) (setting a production schedule for the agreed upon documents after written submissions); *Energy Future Coal. v. Office of Mgmt. & Budget*, 200 F. Supp. 3d 154, 156 (D.D.C. 2016).

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it is capable of affecting the substantive outcome of the litigation." *Bartko v. U.S. Dep't of Justice*, 167 F. Supp. 3d 55, 61 (D.D.C. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. In responding to the motion, the non-movant attempting to show that a fact is genuinely disputed must "cit[e] to particular parts of materials in the record," or show that the materials cited by the movant do not establish the absence of a genuine dispute. *See* Fed. R. Civ. P. 56(c)(1).

A court may award summary judgment in a FOIA action solely on the basis of information provided by the agency through declarations when they are "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Bartko*, 167 F. Supp. 3d at 62 (quoting *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). This is because "[s]uch affidavits or declarations 'are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" *Id.* (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

## VI.   Argument

### A.   A Motion Partial Summary Judgement Is Not Appropriate Here.

EPA does not contest that it has reached an impasse with Sierra Club regarding the rate at which EPA will review and produce records in response to Sierra Club's FOIA requests. But the procedural path to the Court's assistance should be through a motion for a scheduling order, not a motion for summary judgment. Other courts in similar circumstances have considered and decided motions for a scheduling order—examining each party's proposed production schedules and entering an order setting a rate of production. For example, in *Middle East Forum v. Department of Homeland Security*, the parties were not able to agree on a production timeline for the documents responsive to the plaintiff's

1   FOIA requests.  297 F. Supp. 3d at 184.  After the parties negotiated a narrowed universe of the

2   documents, they submitted their production proposals to the court.  *Id.* at 184-85.  The court considered

3   the submissions and set a production schedule.  *Id.* at 187; *see also Energy Future Coal.*, 200 F. Supp.

4   3d at 156; *Appleton v. F.D.A.*, 310 F. Supp. 2d 194, 198 (D.D.C. 2004) (ordering the parties to submit a

5   motion for production schedule).

6       The same situation presents itself here.  Sierra Club has agreed to clarify and narrow the scope of

7   its requests in certain ways.  The parties have agreed that EPA will prioritize review of particular emails

8   as organized by Sierra Club and a subset of the calendars requested.  EPA has already begun processing

9   those records and intends to make its first production of documents by December 21, 2018.  Hope Decl.

10   ¶ 62.  The only dispute ripe for the Court's intervention at this point is the rate of production.  Therefore,

11   EPA requests the Court construe Sierra Club's motion as one seeking a scheduling order, rather than a

12   motion for summary judgment.

13   **B.**    **The Production Schedule Set Forth by EPA is Appropriate.**

14       EPA proposes to review the 18,706 records identified as priority records by Sierra Club at an

15   average rate of 400 records every month (totaling an estimated 1200 pages), making rolling productions

16   every month.  Hope Decl. ¶ 62.  Review would progress according to the tiers proposed by Sierra Club

17   on September 28, 2018, as modified by the parties' agreements to exclude certain emails that were

18   previously reviewed in the scope of other FOIA requests and exclude emails from Mr. Wheeler's public

19   facing Outlook account after he became Acting Director.  *Id.*  EPA also proposes to produce calendars

20   for the 12 individuals identified by Sierra Club as a priority at a rate of two every six weeks beginning

21   on January 15, 2018, beginning with the calendars for Mr. Wheeler and Mr. Wehrum.  *Id.*

22       EPA's proposal takes into consideration the immense increase in FOIA requests received by the

23   Office of the Administrator since January 2017 and represents a reasonable rate at which to process

24   Sierra Club's requests.  As described above, OEX, the office responsible for processing Sierra Club's

25   requests in this litigation, has a total of 256 FTE hours per month to devote to *all* FOIA requests in

26   litigation.  *Id.* ¶ 41.  Utilizing metrics obtained in similar document reviews, EPA estimates that the total

27   review capability for requests in litigation is approximately 1843 documents per month.  *Id.* ¶ 56.  This

28   litigation is only one of nine cases assigned to OEX in which review is ongoing.  *Id.* ¶ 65.  Dividing this

1    capacity evenly among the active cases would actually result in an a processing rate that is about half of

2    what EPA proposes here.  *Id.*  However, in an attempt to propose a schedule that acknowledges both

3    Sierra Club's desire to receive the documents as quickly as possible and the resources constraints of the

4    EPA, EPA proposes a production schedule of 400 documents reviewed per month.  *Id.*  This schedule

5    will require EPA to continue to call on resources from staff outside of OEX, but will help OEX begin to

6    bring its production commitments into line with the actual resources available.  *Id.*

7            Sierra Club's proposal of one tier every month would result in a review rate of 1050 to 2743

8    documents per month.  *Id.* ¶ 60.  Such a rate is not reasonable given the OEX's capacity and obligations

9    in other cases.  During the month in which the biggest tier is processed, it would consume at least 147

10   percent of OEX's capacity to review litigation documents on the processing of email records alone.

11   Averaging Sierra Club's proposed rate of production across all of the tiers amounts to a rate of

12   approximately 1870 documents per month.  *Id.* ¶ 67.  Such a rate would consume 100 percent of OEX's

13   litigation processing capacity for the entirety of the review period—almost an entire year.  *Id.*  However,

14   OEX currently has eight other cases in litigation which also require the processing and production of

15   documents, and other cases that are currently awaiting production schedules.  *Id.* ¶¶ 60, 65.  Even

16   examining Sierra Club's request through the lens of OEX's November 2018 commitment to review 4350

17   records for cases in litigation, a rate of production of 1870 documents on average is almost 43 percent of

18   that total commitment.  *Id.* ¶ 58.  It is not equitable to other FOIA requesters to permit Sierra Club to

19   monopolize OEX's resources.  *Cf. Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605,

20   615 (D.C. Cir. 1976) ("We do not think that Congress intended, by . . . according a right to bring suit . .

21   ., to grant an automatic preference by the mere action of filing a case in United States district court.").

22           Sierra Club seeks to justify its rate of production by asserting that review can proceed more

23   quickly in this case because it seeks communications with those outside of the government.  ECF No. 32

24   at 17.  While that may be true for the Department of the Interior, *see id.* (citing a case management

25   statement submitted in a case involving the Department of the Interior), EPA asserts that such external

26   communications still require significant review for privacy concerns under Exemption 6.  Hope Decl.

27   ¶ 55.  Just because emails are with a party outside of EPA does not mean that they are subject to a

28   different review process.

1    Sierra Club also asserts that a "political review" slows EPA's ability to review documents. ECF

2  No. 32 at 19-20. EPA's FOIA Procedures, issued in 2014, require every FOIA response to be approved

3  by the Office's Division Director or equivalent. Hope Decl. ¶ 47; *see also* 40 C.F.R. §2.104(h). In cases

4  where the request is assigned to an office in the Office of the Administrator, those responses are

5  therefore reviewed by the OEX Division Director before release to the requester. EPA does conduct an

6  awareness notification process for some requests, a process which EPA recently clarified. *See* Hope

7  Decl. at Ex. A. During that process, more fully described in the memorandum, senior level officials are

8  provided three days in which to become familiar with a FOIA release before it is sent out. *Id.* This

9  process is not an approval process, but rather it allows officials to be prepared to respond to inquiries

10  related to a FOIA request. *Id.* The memorandum also makes clear that this process does not affect

11  statutory or litigation deadlines. *Id.* Additionally, the memorandum states that an awareness

12  notification process has been utilized over many years. *Id.* Sierra Club has not pointed to any particular

13  instance in which the review process has actually been delayed by this process. *See generally* ECF No.

14  32-6 at 233-47.

15    EPA acknowledges that the rate of production proposed here is less than what EPA has agreed to

16  in some cases with Sierra Club and others. Hope Decl. ¶¶ 60-61. But as explained in Mr. Hope's

17  declaration, agreeing to such production schedules in other cases has vastly over extended OEX's

18  review capability. *Id.* ¶ 59. While these commitments were and are able to be met by drawing on

19  resources beyond OEX's own review capacity, such overextension is not sustainable in the long term.

20  *Id.* Agency attorneys are needed to provide legal advice, and other staff are needed to respond to FOIA

21  requests from their own offices, in addition to their Agency mission work. *Id.* OEX cannot continue to

22  operate in this overextended state in which it has been operating and continue to service other FOIA

23  requests that are not in litigation at an acceptable rate. *Id.*

24    In support of its request, Sierra Club points to cases that required agencies to produce large

25  numbers of documents per month. ECF No. 32 at 18 (citing *Allen v. FBI*, 716 F. Supp. 667, 669 (D.D.C.

26  1988); *Meeropol v. Meese*, 790 F.2d 942, 947 (D.C. Cir. 1986); and *Open Am. v. Watergate Special*

27  *Prosecution Force*, 547 F.2d 605, 613 n.15 (D.C. Cir. 1976)). These cases are inapposite in that they

28  involve other agencies and do not take into account the particular context of this case, the resources

available to OEX, and the volume of FOIA requests that OEX is currently processing.  Moreover, there are other cases in which courts have ordered lower rates of production, similar to that proposed by EPA here.  *See Middle East Forum*, 297 F. Supp. 3d at 187 (ordering DHS to process 500 documents per month); *Energy Future Coal.*, 200 F. Supp. 3d at 163 (ordering review of 500 documents per month); *Freedom Watch v. Bureau of Land Mgmt.*, 325 F. Supp. 3d 139 (D.D.C. 2018) (approving a review rate of 500 documents per month); Minute Entry & Order Following Case Management Conference, *Sierra Club v. U.S. Dep't of Interior*, 18-cv-797-JSC (N.D. Cal. Aug. 8 & Sept. 28, 2018), ECF Nos. 24 & 30 (ordering a review rate of 750 and subsequently 850 documents per month).  This ability to find cases which support both positions demonstrates that the determination of the proper rate of review requires consideration of the individual facts that are presented in each case, including the size of the agency and the available resources of that agency.

Additionally, in its motion, Sierra Club devotes considerable time to explaining why it has requested the records that it has and why Sierra Club wants that information within a particular time period.  ECF No. 32 at 4-5, 6-11.  "The FOIA, however, is largely indifferent to the intensity of a particular requester's need."  *Petroleum Info. Corp.*, 976 F.2d at 1437.  Additionally, Sierra Club did not seek expedited processing of any of its requests, which would take into account "an urgency to inform the public" about government activity.  *See generally* ECF No. 13 at Exs. A-D; 40 C.F.R. § 2.104(e).  Sierra Club also appears to seek the requested records in part in order to aid in litigation, ECF No. 32 at 10-11, but FOIA is not intended to "benefit private litigants or to serve as a substitute for civil discovery."  *Baldrige*, 455 U.S. at 360.  While EPA is cognizant of the purpose of the FOIA to provide information regarding the operation of the government to the public, the FOIA is also clear that the identity of the requestor and why it is requesting information neither increases or decreases the rights of a requestor under FOIA.  *N. L. R. B.*, 421 U.S. at 144.  Therefore, the Court should not give weight to Sierra Club's stated reasons for requesting this information when determining a production schedule in this matter.

EPA's proposed plan to process 400 documents per month, with monthly productions beginning December 21, 2018, and productions of the requested calendars two at a time ever six weeks beginning

1    January 15, 2018, is a reasonable proposal in light of the current realities.  The Court should adopt

2    EPA's proposal.

3            **C.**     **If the Court Considers the Motion As One for Summary Judgment, the Court Should Deny the Motion.**

4

5           If the Court considers Sierra Club's motion as one for summary judgment, it should be denied

6    because the EPA did not violate the FOIA with regard to Sierra Club's requests.  The requests, as

7    initially submitted, required an unreasonably burdensome search, and therefore were not proper FOIA

8    requests.  A FOIA request must not only describe the records sought, 5 U.S.C. § 522(a)(3)(A), but must

9    also permit an agency employee to locate those records "with a reasonable amount of effort," *Marks*,

10   578 F.2d at 263.  In *Marks*, the court found that a request which required "an all-encompassing search of

11   the records of every field office of the FBI" to be improper because it required an unreasonable search.

12   578 F.2d at 263.  In *AFGE*, the court found that a request seeking every file which contained a particular

13   type of document would require an unreasonably burdensome search and therefore was an improper

14   request, even though the request allowed the documents requested to be identified.  907 F.3d at 208-09.

15          The requests at issue here are similar.  The portions of all four FOIA requests at issue in this

16   limited motion sought "all emails, text messages, faxes, voice mails, and other forms of communications

17   [from or to the identified custodians with] any person outside of EPA."  ECF No. 13 at Exs. A-D.  While

18   such requests describe the records sought, in order to locate those records as described in the requests

19   received by the Agency, EPA would have had to collect and review each and every electronic or hard

20   copy record sent or received by each of the 25 requested custodians to determine if they involved a

21   person outside of EPA.  Hope Decl. ¶ 17.  In the digital age, one can imagine the number of emails alone

22   that would have to be reviewed.  Indeed, even after Sierra Club further clarified its requests and EPA

23   collected that data, over 270,000 emails were responsive to the more limited parameters.  *Id.* ¶ 19.  A

24   review of the scope that would have been required by Sierra Club's initial requests would have posed an

25   extreme resource burden on EPA.  *Id.* ¶ 17.  Therefore, Sierra Club's requests were not proper FOIA

26   requests.

27          These improper requests did not trigger the statutory response timeframe, and EPA thus did not

28   violate the FOIA by not making a determination on Sierra Club's requests within 20 days of receipt.

1   The timeline required by the FOIA is only set into motion upon receipt of a proper FOIA request.

2   *Weirich v. Bd. of Governors of the Fed. Reserve Sys.*, No. CV-10-5031-EFS, 2010 WL 4717211, at *4

3   (E.D. Wash. Nov. 15, 2010) (citing *Lewis v. U.S. Dep't of Justice*, 733 F. Supp. 2d 97, 107 (D.D.C.

4   2010)).  The text of the FOIA leads to this conclusion.  FOIA provides "[e]ach agency, upon any request

5   for records made under paragraph (1), (2), or (3) of this subsection, shall -- (i) determine within 20 days

6   . . . after the receipt of any *such request* whether to comply with such request and shall immediately

7   notify the person making such request of such determination . . . ."  5 U.S.C. § 552(a)(6)(A)(i)

8   (emphasis added).  Where, as here, the request is made under paragraph (3), the statute's reference to

9   "such request" is a direct reference to the two-part requirement for a proper FOIA request specified in

10  paragraph (3) of subsection (a), 5 U.S.C. § 552(a)(3)(A).  When a request does not meet the standard of

11  a proper request, it is not a "request for records made under paragraph . . . (3)," and does not trigger the

12  20 day timeline.  Sierra Club's requests fail the first part of proper request test, as explained above.

13  Thus, because the requests were not proper, EPA was under no obligation to respond.  *Thomas v.*

14  *F.C.C.*, 534 F. Supp. 2d 144, 145 (D.D.C. 2008) ("An agency's obligation under the FOIA does not

15  arise, however, until a proper request is received.").

16          Despite the fact that Sierra Club's initial requests were improper, EPA is not seeking to dismiss

17  this action for failure to exhaust administrative remedies.  Since the filing of this litigation, EPA has

18  been working with Sierra Club to narrow and focus its requests so that they are proper under the FOIA,

19  with the goal of locating those records that Sierra Club is most interested in receiving.  Such dialog is

20  within the spirit of the FOIA.

21          In the six months since the operative complaint was filed on July 23, 2018, Sierra Club has

22  limited the scope of part of the email records sought by requesting records sent to or received from email

23  addresses that end in ".com", ".net", ".org", ".edu", ".int", ".info", and ".biz" and various state-related

24  domains.[1]  Hope Decl. ¶ 16.  Once this limitation was provided, EPA was able to collect the data

25  responsive to Sierra Club's narrowed request.  *Id.* ¶ 18.  This collection revealed that over 270,000

26  records were potentially responsive to even this more targeted request.  *Id.* ¶ 19.  Since this time, the

27

28  [1] Sierra Club has not yet provided any further clarification regarding the portion of the requests that requests communications between ten of the custodians and other non-EPA government officials.

1  parties have been working toward further narrowing and targeting and have largely reached agreement

2  on the scope of production regarding an initial batch of documents.  The only dispute is with regard to

3  how quickly EPA is required to process these documents, as discussed above.

4       Because EPA was not obligated to process Sierra Club's FOIA requests within 20 days of receipt

5  and because EPA has continuously and productively worked with Sierra Club regarding the requests at

6  issue since this litigation began, the Court should decline to issue a declaratory judgment that EPA has

7  violated FOIA.  *See Olagues v. Russoniello*, 770 F.2d 791, 803 (9th Cir. 1985) ("The decision whether

8  to grant declaratory relief is within the sound discretion of the district court.").

9  **VII.    Conclusion**

10       At this point in this case, the Court should construe Sierra Club's motion as one requesting a

11  scheduling order setting out a production timetable with regards to the 18, 706 records and 12 calendars

12  that the parties have agreed EPA will begin to produce, rather than as a motion for partial summary

13  judgment.  In this scheduling order, the Court should order EPA to review 400 documents per month,

14  progressing through the tiers of prioritized domain names as agreed upon by the parties and making

15  rolling productions every month beginning on December 21, 2018.  Additionally, the Court should order

16  EPA to produce the 12 calendars prioritized by Sierra Club at a rate of two calendars every six weeks,

17  beginning with the calendars of Mr. Wheeler and Mr. Wehrum by January 15, 2019.

18       If the Court does construe Sierra Club's motion as one for partial summary judgment, it should

19  deny Sierra Club's motion and decline to issue a declaratory judgment because EPA did not violate the

20  FOIA by not responding to Sierra Club's improper FOIA requests within 20 days.

21

22  DATED: November 28, 2018             Respectfully submitted,

23                                           ALEX G. TSE

24                                           United States Attorney

25                                           */s/ Adrienne Zack*

26                                           ADRIENNE ZACK

27                                           Assistant United States Attorney

28                                           Attorneys for Defendant

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28