United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA CLUB, | Case No. 18-cv-03472-EDL |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT & ADDRESSING THE PRODUCTION SCHEDULE** |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | |
| Defendant. | |

Plaintiff Sierra Club moves for partial summary judgment that Defendant United States

Environmental Protection Agency ("EPA") violated the Freedom of Information Act ("FOIA")

and for the Court to set a production schedule requiring Defendant to produce Plaintiff's top

priority documents within the next ten months.  Because Plaintiff's FOIA requests were proper

and Defendant did not respond by the statutory deadline, the Court **GRANTS** Plaintiff's motion

for partial summary judgment.  The Court **ORDERS** the parties to meet and confer promptly as to

the most efficient way for Defendant to produce the documents in Plaintiff's first two tiers by the

end of February 2019 or as otherwise agreed to by the parties and to meet and confer on the

remaining tiers and update the Court as soon as practicable.

I.      FACTUAL BACKGROUND

Plaintiff has submitted four FOIA requests to Defendant that are the subject of this

litigation.  Saxonhouse Decl. ¶ 3.  On July 17, 2017, Plaintiff submitted its first request.

Saxonhouse Decl. Exhibit 1.  It sought records of external communications between seven EPA

personnel and any person outside of the EPA.  Id. at 1-2.  Plaintiff defined "person outside of

EPA" as someone who was not an employee of the EPA and excluded "persons employed

elsewhere in the Executive Branch of the United States; persons employed by the executive branch

United States District Court
Northern District of California

1    of any state; or communications with persons who have executed a legal contract to provide

2    consulting or other services to EPA if the communications post-date that contract." Id. at 2.

3    Plaintiff also sought each employee's phone logs, calendars, and sign-in sheets. Id. On July 19,

4    2017, Plaintiff submitted its second request. Saxonhouse Decl. Exhibit 3. Plaintiff sought records

5    for the EPA Administrator Scott Pruitt's executive assistant. Id. Plaintiff sought records of her

6    communications with persons outside of the EPA related to scheduling meetings or phone calls

7    with Pruitt. Id. Plaintiff also sought Pruitt's calendar and sign-in sheets. Id. On July 21, 2017,

8    Plaintiff submitted its third request. Saxonhouse Decl. Exhibit 2. Plaintiff sought similar records

9    for another seven EPA personnel, but this time Plaintiff also requested the employees'

10   communications with state agencies and state officials. Id. at 2.

11          FOIAonline generated an automated confirmation message for each of these requests on

12   the day Plaintiff submitted them. Hope Decl. ¶¶ 5, 7, 9. Defendant assigned the first and second

13   requests to the Office of the Administrator – Executive Secretariat ("OEX"). Hope Decl. ¶¶ 5, 7.

14   Defendant assigned the third request to the Office of Congressional Intergovernmental Relations

15   ("OCIR") in the EPA Office of the Administrator. Hope Decl. ¶ 9. On August 22, 2017,

16   Defendant provided Plaintiff with contact information for the EPA staff assigned to the second

17   request and provided information about the unprecedented number of FOIA requests facing the

18   Office of the Administrator. Hope ¶ 7.

19          On May 10, 2018, Plaintiff submitted a fourth request. Saxonhouse Decl. Exhibit 4.

20   Plaintiff sought records for another ten EPA personnel, including Andrew Wheeler, who is now

21   the EPA's acting administrator. Id. at 1-2. Plaintiff again sought records of communications these

22   EPA employees had had with persons outside the EPA, as well as their calendars and sign-in

23   sheets. Id. at 2. For this request, Plaintiff defined "persons outside of EPA" as any person who

24   was not an employee within the EPA, without the exclusions Plaintiff included in its earlier

25   requests. Id. at 2. FOIAonline generated an automated confirmation of receipt of the request that

26   same day. Hope Decl. ¶ 11. On May 15, 2018, Defendant assigned the fourth request to OEX.

27   Id.

28          On May 31, 2018, Defendant notified Plaintiff via email that an interim release had been

2

made in its third request.  Id. at ¶12.  The release consisted of documents pertaining to email correspondence for one of the employees Plaintiff had identified in that request.  Id.

On June 1, 2018, Defendant emailed Plaintiff about the status of Plaintiff's first three requests.  Hope Decl. ¶ 13.  Defendant states that it informed Plaintiff where its requests were in Defendant's queue.  Id.  The first request was number 503, the second was number 521, and the third was number 526.  Id.  Defendant also invited Plaintiff to narrow its requests so that they could be processed more quickly.  Id.  Plaintiff did not respond.  Id.

On August 1, 2018, Plaintiff emailed Defendant a definition of "external communications" for email records, explaining that Defendant could locate them by searching the "To," "From," "cc," and "bcc" fields in each custodians' Outlook accounts for any emails containing email addresses with generic domain names that suggested they were from an external person, including ".com, ".net," .org," ".edu," ".int," ".info," and ".biz."  Hope Decl. ¶ 16.  Plaintiff also provided Defendant with a list of 57 domain names from various state agencies for which to search.  Id.  On August 15, 2018, Defendant began searching its email records for those domain names.  Id. at ¶ 18.  Defendant completed its search on September 4, 2018 and informed Plaintiff on September 10, 2018 that it had located approximately 271,439 potentially responsive records.  Hope Decl. ¶ 19.  On September 11 and 12, 2018, Defendant provided Plaintiff with two indices of domain names (e.g., @sierraclub.org) and the number of documents it had located connected to that domain name across all 25 custodians.  Hope Decl. ¶ 20.

On September 28, 2018, Plaintiff emailed Defendant a prioritized list of domain names, split into 10 tiers and 12 custodians' calendars.  Hope Decl. ¶ 21.  Plaintiff proposed that Defendant review the emails in one tier each month.  Hope Decl. ¶ 23.  The parties met and conferred for the next few weeks over how to organize the 10 tiers, reaching a final version of the tiers on October 18, 2018.  Hope Decl. ¶ 25.  On October 22, 2018, Defendant proposed to split its review of the first tier into six productions, beginning December 21, 2018 and ending May 15, 2019.  Hope Decl. ¶ 28.

## II.    PROCEDURAL HISTORY

On June 11, 2018, Plaintiff filed a complaint against Defendant for breach of FOIA, based

on its failure to respond to Plaintiff's requests within FOIA's 20-day statutory deadline.  Compl. ¶¶ 1-5.  On July 23, 2018, Plaintiff filed an amended complaint, which Defendant answered on August 17, 2018.

On October 2, 2018, the Court held a case management conference during which the parties informed the Court about Plaintiff's attempts to narrow its requests and identify priorities and Defendant's plan to propose a production schedule for those requests.  At that time, the parties stated that they were attempting in good faith to resolve Plaintiff's claims informally.  Plaintiff informed the Court that it anticipated moving for a production schedule if the parties were not able to agree on a schedule.  The Court set a further case management conference for October 23, 2018.  At the October 23, 2018 hearing, Plaintiff notified the Court that the parties were still unable to agree on a schedule.  On November 9, 2018, Plaintiff filed this motion for partial summary judgment and to set a production schedule.  On December 11, 2018, Defendant filed a supplemental declaration revising the number of documents in each of Plaintiff's ten tiers.  See Dkt. 37, Supplemental Declaration of Brian Hope.

### III.    MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for partial summary judgment that Defendant violated FOIA by not making a determination as to whether to comply with Plaintiff's four FOIA requests within 20 business days of receipt.  Plaintiff argues that the Court should rule on its motion for partial summary judgment because a "failure to make a timely determination as to whether [requested] documents should be disclosed" is a violation of FOIA.  Gilmore v. U.S. Dep't of Energy, 33 F. Supp. 2d 1184, 1188 (N.D. Cal. 1998) (holding that the Dep't. of Energy's ("DOE") delay was an improper withholding under FOIA, even though the DOE later correctly determined that the documents were not subject to disclosure); see also Oregon Nat. Desert Ass'n v. Gutierrez, 409 F. Supp. 2d 1237, 1248 (D. Or. 2006) (citing Gilmore and holding that "an untimely response is a violation of FOIA, regardless of the final outcome of the request).

Plaintiff argues further that ruling on this motion would "delineat[e] important rights and responsibilities," citing Our Children's Earth Found. v. Nat'l Marine Fisheries Serv., 85 F. Supp. 3d 1074, 1090 (N.D. Cal. 2015).  There, the court exercised its discretion to issue a declaratory

4

United States District Court
Northern District of California

judgment that the defendant had violated FOIA, holding that "both the statutory deadlines and their violation [we]re clear, and the repeated, routine violation of these deadlines by agencies has been a continual source of concern for Congress." Id.  The court determined that a declaratory judgment was proper because the agency had "repeatedly and substantially violated the time limits" and it was possible that "the violations [would] recur with respect to the same requesters." Id. at 1091.

FOIA provides that:

> (3) [E]ach agency, upon any request for records which (i) reasonably describes such records . . . shall make the records promptly available to any person.
> . . .
> (6) Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall--
> (i) determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of--
> (I) such determination and the reasons therefor;

5 U.S.C. §§ 552(a)(3)(A), (a)(6)(A)(i).  "A "determination" need not be the full production of documents, but at a minimum the agency must inform the requester what documents it will produce and the exceptions it will claim in withholding documents." Our Children's Earth Found., 85 F. Supp. 3d at 1089.

There are no disputes of material fact here.  Plaintiff submitted four FOIA requests to Defendant.  Defendant received them.  Defendant did not make a timely determination whether to comply.  Defendant did not make the records promptly available to Plaintiff.

However, Defendant argues that Plaintiff's original FOIA requests did not trigger the statutory deadline because they did not "reasonably describe" the records sought.  "It is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome and to enable the searching agency "to determine 'precisely what records [are] being requested.' " Am. Civil Liberties Union of N. California v. Dep't of Justice, No. 12-CV-04008-MEJ, 2014 WL 4954121, at *6 (N.D. Cal. Sept. 30, 2014) (quoting Assassination Archives and Research Ctr., Inc. v. C.I.A., 720 F. Supp. 217, 219 (D.C. Cir.1989) (internal quotation omitted)).  A description is "sufficient if it enable[s] a professional employee of

United States District Court
Northern District of California

the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." Marks v. U.S. (Dep't of Justice), 578 F.2d 261, 263 (9th Cir. 1978) (quoting H.Rep.No.93-876 93rd Cong., 2d Sess. 6 (1974), U.S.Code Cong. & Admin.News 1971, p. 6271). "Although courts have been wary to prohibit this requirement from becoming a loophole through which federal agencies can deny the public access to legitimate information, it has been held that broad, sweeping requests lacking specificity are not permissible." Id. "The 'FOIA's prodisclosure purpose,' . . . and legislative history reflect an intent to avoid creating loopholes for denial of access and reinforces the duty of federal agencies 'to construe a FOIA request liberally.'" Pub. Employees for Envtl. Responsibility v. U.S. Envtl. Prot. Agency, 314 F. Supp. 3d 68, 74 (D.D.C. 2018) (quoting Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004) and People for the Ethical Treatment of Animals v. Nat'l Insts. of Health, Dep't of Health & Human Servs., 745 F.3d 535, 540 (D.C. Cir. 2014)).

In Marks, the Ninth Circuit held that the Federal Bureau of Investigation ("FBI") would not have had to comply with a hypothetical request to conduct an all-encompassing search of every file throughout every field office of the FBI for all documents maintained under the requester's name. Id. In Yagman v. Pompeo, the court held that the plaintiff's request for all Central Intelligence Agency ("CIA") records identifying CIA personnel or affiliates who had engaged in torture was "a poorly framed request with limited specifics" to which the defendants "could not know what records would be responsive." 868 F.3d 1075, 1081 (9th Cir. 2017). The court contrasted the request with one for all CIA files that mentioned "Nelson Mandela," which a D.C. district court had found to be sufficiently descriptive. Id. (citing Shapiro v. Cent. Intelligence Agency, 170 F. Supp. 3d 147, 154 (D.D.C. 2016)). Notably, the court repeated its warning that the "reasonably described" requirement should not become a "loophole" for federal agencies. Id. at 1081.

In Am. Fed'n of Gov't Employees ("AMFG") Local 2782 v. U.S. Dep't of Commerce, 907 F.2d 203, 205, 209 (D.C. Cir. 1990), the court determined that the plaintiff's requests, though they identified the documents sought with sufficient precision, did not reasonably describe a class of documents because they would have required an unreasonably burdensome search:

A. Inspection of every chronological office file and correspondence file, internal and external, for every branch office, staff office, assistant division chief office, division chief office, assistant director's office, deputy director's office, and director's office;
B. Inspection of every division or staff administrative office file in the Bureau which records, catalogues, or stores SF-52s or stores promotion recommendation memos, or both.

See also Weirich v. Bd. of Governors of the Fed. Reserve Sys., No. CV-10-5031-EFS, 2010 WL 4717211, at *4 (E.D. Wash. Nov. 15, 2010) (holding that the defendant did not have to respond to a request that sought "any documents of meetings held by, or discussions between, any members of the Federal Reserve concerning why emergency funds were given to commercial banks which were nearly insolvent, instead of requesting the FDIC to intervene near the point of insolvency").

By contrast, in Muckrock, LLC v. Cent. Intelligence Agency, 300 F. Supp. 3d 108, 114 (D.D.C. 2018), the plaintiff requested records of emails sent to certain staff mailing lists by the director or deputy director of a CIA department during certain time periods. The CIA informed him that it would not process his request because he had not reasonably described the emails, instructing him to provide the specific "to" and "from" recipients, time frame, and subject. Id. The court held that denying the plaintiff's request on that basis violated FOIA as the CIA could "often determine what email records [were] being sought, and can conduct a search for those records, *without* having" the information it asked the plaintiff to provide. Id. at 136. Similarly, in Am. Civil Liberties Union of N. California, , the court ruled that the plaintiff's request for "[a]ll requests, subpoenas, and applications for court orders or warrants seeking location information since January 1, 2008" satisfied the "reasonable describe" requirement. 2014 WL 4954121, at *7

Plaintiff's requests here were reasonably described. Plaintiff identified specific EPA employees from whom it wanted communications, a general definition of the class of persons with whom the EPA employees had communicated, and a specific time frame. Plaintiff's requests are more narrowly tailored and significantly less burdensome than those found improper in Yagman or Marks. While Plaintiff's August 1, 2018 letter, which suggested domain extensions that would help Defendant search for communications with persons outside the EPA and domain names of 57 state agencies, clarified the search parameters for Defendant, Plaintiff's requests as initially phrased were sufficiently specific to require a response. Defendant's argument that it would have

7

to search every email, text message, fax, voicemail, etc. that every custodian had in order to determine if any of them involved any person outside the EPA is unpersuasive in light of current search technology available to and used by Defendant.

Moreover, in most of the cases where courts have upheld the agency's refusal to process a FOIA request, the defendant agency had informed the requester that it would not process the request before the requester filed suit.  See Yagman, 868 F.3d at 1078; Muckrock, 300 F. Supp.3d at 114; AMFG, 907 F.2d at 205.  Defendant did not do that here.  To the contrary, in August 2017 and June 2018, Defendant sent Plaintiff status updates about the requests.  Defendant did not give any indication at those times that it was declining to process the requests as improper.  Defendant also informed Plaintiff that it was making interim productions for one of the custodians at issue. Accordingly, the Court grants Plaintiff's motion for partial summary judgment.

## IV.    PRODUCTION SCHEDULE

FOIA requires agencies to make requested records "promptly available."  5 U.S.C. § 552(a)(3)(A).  Depending on the circumstances, "promptly available" typically means "within days or a few weeks of a "determination," not months or years."  Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n, 711 F.3d 180, 188 (D.C. Cir. 2013) (quoting 5 U.S.C. §§ 552(a)(3)(A), (a)(6)(A)(i)).  District courts have jurisdiction to enjoin an agency from withholding records and order the agency to produce records.  5 U.S.C. § 552(a)(4)(B).

Plaintiff proposes that Defendant review one of its ten priority tiers and produce two employees' calendars each month.  Based on the numbers initially provided by Defendant, there were a total of 18,706 documents in the ten tiers.  Supp. Hope Decl. ¶ 8.  However, after this motion was fully briefed, Defendant submitted an updated declaration in which it counted the attachments to each email as separate documents and eliminated duplicative emails.  Id.  As a result, the total number of documents increased to 20,951, or an average of 2,095 documents per tier.  Id.  The updated number of documents in the first tier is 2,614, which reflects a 499-document increase.  By contrast, the updated number of documents in the second tier is 2,459, reflecting a 284-document decrease.  Id.  The number of documents in the other eight tiers increased by varying amounts.  Id.  However, at the hearing, Defendant acknowledged that this

United States District Court
Northern District of California

1    increase in overstates the size of review, because it has not yet completed the standard technique

2    of "threading" emails to reduce duplicate content in email chains, which reduces the time and

3    complexity of reviewing emails.

4         Defendant contends that Plaintiff's proposed schedule is unreasonable given Defendant's

5    resources and obligations regarding other FOIA requests.  Defendant proposes that it review only

6    400 documents a month, with the first production occurring on December 21, 2018, and produce

7    two calendars every six weeks, with the first two calendars produced on January 15, 2019.  Hope

8    Decl. ¶¶ 62-63.

9         If the Court were to adopt Plaintiff's plan, Defendant would process all of Plaintiff's

10   prioritized requests within the next ten months.  If the Court were to adopt Defendant's plan, it

11   would take over four years to complete the review, based on Defendant's updated numbers, a very

12   far cry from making them "promptly available" as required by FOIA.

13        As the Ninth Circuit observed, the "value of information is partly a function of time."

14   Fiduccia v. U.S. Dep't of Justice, 185 F.3d 1035, 1041 (9th Cir. 1999).  Time may be an even

15   more important factor where there is an urgent need for the requested information, such as when

16   documents have "a particular value that will be lost if not disseminated quickly.  Ordinarily this

17   means a breaking news story of general public interest." Am. Civil Liberties Union of N.

18   California v. U.S. Dep't of Def., No. C 06-01698 WHA, 2006 WL 1469418, at *5 (N.D. Cal. May

19   25, 2006) (citing Dep't. of Defense regulations for expedited FOIA requests which are similar to

20   the EPA's regulations, compare 40 C.F.R. § 1.2014(e)(1) with 32 C.F.R. § 286.8(e)(1)).

21        Plaintiff did not seek expedited processing of its FOIA requests when it submitted them.

22   However, as Plaintiff points out, it did not recognize the need for expedited processing nearly

23   eighteen months ago when it filed its first three requests or seven months ago when it filed its

24   fourth request.  Moreover, courts have considered the urgency of a requester's need when setting a

25   production schedule even when the requester did not seek expedited processing.  See, e.g.,

26   Clemente v. Fed. Bureau of Investigation, 71 F. Supp. 3d 262, 265 (D.D.C. 2014).

27        Plaintiff provides persuasive reasons for the urgency of its requests.  First, President

28   Trump has indicated that he will nominate Andrew Wheeler, who is now the EPA's acting

United States District Court
Northern District of California

9

1    administrator, to be the Administrator of the EPA; Plaintiff has requested information about

2    Wheeler that may be relevant to the confirmation process.  Second, Plaintiff seeks this information

3    in order to respond to Defendant's rollbacks of dozens of the prior administration's regulations.

4    Plaintiff argues that the requested information may help expose conflicts of interest within the

5    EPA based on the custodians' strong ties to regulated industries and increase transparency and

6    accountability of the EPA staff.  Plaintiff notes that some of the revelations that prompted the

7    Administrator to resign in July 2018 came to light through the EPA's response to Plaintiff's earlier

8    FOIA requests.

9         Defendant's primary argument in favor its very slow production schedule is that it does not

10   have the resources to process requests at the rate that Plaintiff proposes.  Defendant explains that

11   that there has been an increase in the number of FOIA requests filed over the last few years.

12   Specifically, Defendant notes that the EPA's Office of Administrator received 203 requests in

13   fiscal year 2016, which increased to 1045 requests in fiscal year 2017 and fell back to 952 requests

14   in fiscal year 2018.  Hope Decl. ¶ 34.   In December 2017, Defendant began an initiative to

15   centralize the FOIA process for four of the twelve staff offices within the Office of the

16   Administrator that receive the majority of FOIA requests, which includes OEX and OCIR.  Hope

17   Decl. ¶ 36.  OEX has six full-time equivalent staff partially dedicated to working on FOIA

18   requests.  Hope Decl. ¶ 38.  Four of those staff may spend up to 50% of the time they spend

19   working on FOIA requests on requests that are in litigation.  Hope Decl. ¶¶ 38-39.   These staff

20   also have non-FOIA related duties that take up 20% of their time.  Hope Decl. ¶ 41.  Accordingly,

21   Defendant devotes 256 hours per month to processing records for FOIA requests that are in

22   litigation within OEX.  Hope Decl. ¶ 41.

23        Defendant's limited resources do not relieve it of its statutory obligation to promptly

24   provide requested documents.  In Fiduccia, the Ninth Circuit recognized that FOIA might force

25   agency heads to "divert staff from programs they think more valuable to Freedom of Information

26   Act compliance" and raise other political and practical concerns, but stated that federal agencies

27   should address those concerns to Congress, rather than the courts.  185 F.3d at 1041.  It held that a

28   years' long stay in processing requests was not justified where the agency could not prove that

United States District Court
Northern District of California

10

1    there were exceptional circumstances, even when the agency was acting with due diligence by

2    requesting additional funds to deal with FOIA request, redistributing personnel, and attempting to

3    deal with a backlog of FOIA requests in the most efficient manner possible.  Id. at 1041-42.  See

4    also Our Children's Earth Found, 85 F. Supp. 3d at 1090 (holding that the fact "that agencies'

5    resources are heavily taxed by the quantity and depth of FOIA requests . . . does not grant the

6    agency carte blanche to repeatedly violate congressionally mandated deadlines").

7         Because Plaintiff has already experienced a significant delay in receiving records and the

8    information Plaintiff is requesting may be stale or useless if not provided soon, the Court finds that

9    Plaintiff's proposed schedule is more appropriate than Defendant's.   Defendant must devote

10   sufficient resources to FOIA to meet the increasing demand, rather than delaying completion of its

11   responses to proper requests for over four years, as proposed here.

12        Plaintiff's proposal that Defendant produce calendars for two EPA personnel every month

13   is reasonable.  Defendant is ordered to do so.  As discussed at the hearing on December 20, 2018,

14   the parties should meet and confer about the most efficient way for Defendant to review the

15   documents in Plaintiff's first two tiers, in light of the results of Defendant's "threading" the email

16   chains, with the objective of completing production for those tiers by the end of February 2019.

17   Defendant should promptly determine how many documents are contained in each tier not

18   including attachments to emails and counting each email thread only once, and provide that

19   information to Plaintiff.

20        The parties are directed to file a joint status report on January 9, 2019, which sets out an

21   agreed, if possible, schedule of production for the first two tiers by the end of February 2019 or a

22   similar agreed date.  The parties may address the production schedule for the other eight tiers in

23   that report or, if they prefer, may address the other tiers in a separate status report, filed later.  If

24   they elect to file a second separate status report, their January 9, 2019 status report should inform

25   the Court when it can expect that report.

26   **V.    CONCLUSION**

27        The Court **GRANTS** Plaintiff's motion for partial summary judgment.  The Court

28   **ORDERS** Defendant to produce documents to Plaintiff at approximately Plaintiff's proposed

United States District Court
Northern District of California

11

schedule as adjusted by agreement in light of the revised number of documents in each tier after threading, as outlined in this order and discussed at the hearing.   The parties must file a status report by January 9, 2019.

**IT IS SO ORDERED.**

Dated: December 26, 2018

ELIZABETH D. LAPORTE
United States Magistrate Judge

United States District Court
Northern District of California

12