1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2  SARA WINSLOW (DCBN 457643)
   Chief, Civil Division
3  ADRIENNE ZACK (CABN 291629)
   Assistant United States Attorney
4
        450 Golden Gate Avenue, Box 36055
5       San Francisco, California 94102-3495
        Telephone: (415) 436-7031
6       Fax: (415) 436-6748
        adrienne.zack@usdoj.gov
7
   Attorneys for Defendant
8

9               UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12
   SIERRA CLUB,                    )  CASE NO. 3:18-cv-3472-JCS
13                                 )
          Plaintiff,               )  **DEFENDANT'S MOTION FOR CLAWBACK**
14                                 )  **AND SUMMARY JUDGMENT**
       v.                          )
15                                 )  Date:   N/A
   UNITED STATES ENVIRONMENTAL     )  Time:   N/A
16 PROTECTION AGENCY,              )  Place:  N/A
                                   )  Before: Hon. Joseph C. Spero
17        Defendant.               )
                                   )
18 _____ )

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONENTS

NOTICE OF MOTION ........................................................................................................................1

STATEMENT OF RELIEF REQUESTED .........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................................1

I.      Introduction ............................................................................................................................1

II.     Statement of the Issues ..........................................................................................................2

III.    Background .............................................................................................................................2

        A.      Sierra Club's Four FOIA Requests to EPA ...............................................................2

        B.      EPA's Response .........................................................................................................3

        C.      Procedural History .....................................................................................................3

        D.      The Happy Hour Emails ............................................................................................4

IV.     Legal Standards ......................................................................................................................5

        A.      Clawback of Inadvertently Produced FOIA Documents ...........................................5

        B.      FOIA and Summary Judgment ..................................................................................5

V.      Argument ................................................................................................................................6

        A.      The withholding under Exemption 6 is proper. .........................................................7

        B.      The Court has the authority to order Sierra Club to destroy the inadvertently
                produced version of the happy hour emails. ............................................................11

VI.     Conclusion ...........................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................... 6

*Bartko v. U.S. Dep't of Justice*,
   167 F. Supp. 3d 55 (D.D.C. 2016) ............................................................................. 6

*Cameranesi v. Dep't of Def.*,
   856 F.3d 626 (9th Cir. 2017) ............................................................................. passim

*Civil Beat Law Ctr. for the Pub. Interest, Inc. v. Centers for Disease Control & Prevention*,
   929 F.3d 1079 (9th Cir. 2019) ................................................................................... 9

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989) .................................................................................................. 8

*Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*,
   No. 15-CV-04068-DMR, 2017 WL 24859 (N.D. Cal. Jan. 3, 2017) ................... 5, 12

*F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*,
   244 F.3d 1128 (9th Cir. 2001) ................................................................................... 5

*Forest Serv. Empls. for Envtl. Ethics v. U.S. Forest Serv.*,
   524 F.3d 1021 (9th Cir. 2008) ............................................................................ 7, 8, 9

*Frontier Found. v. Office of the Dir. of Nat. Intelligence*,
   639 F.3d 876 (9th Cir. 2010) ................................................................................... 10

*Hamdan v. U.S. Dep't of Justice*,
   797 F.3d 759 (9th Cir. 2015) ..................................................................................... 6

*Hersh & Hersh v. U.S.*,
   *DHHS*, 2008 WL 901539 (N.D. Cal. Mar. 31, 2008) ......................................... 5, 12

*Hunt v. C.I.A.*,
   981 F.2d 1116 (9th Cir. 1992) ................................................................................... 6

*James Madison Project v. Dep't of Justice*,
   2018 WL 1472492 (D.D.C. Mar. 26, 2018)............................................................. 6

*Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice*,
   102 F. Supp. 2d 6 (D.D.C. 2000) ........................................................................... 10

*Lahr v. NTSB*,
   569 F.3d 964 (9th Cir. 2009) ..................................................................................... 6

*Lane v. Dep't of the Interior*,
   523 F.3d 1128 (9th Cir. 2008) ................................................................................... 6

*Long v. IRS*,
   693 F.2d 907 (9th Cir. 1982) ............................................................................... 5, 11

*Rojas v. Fed. Aviation Admin.*,
   941 F.3d 392 (9th Cir. 2019) ................................................................................ 9

*Wild Rockies v. Dep't of Interior*,
   53 F. Supp. 2d 32 (D.D.C. 1999) ......................................................................... 10

*Yonemoto v. Dep't of Veterans Affairs*,
   686 F.3d 681 (9th Cir. 2012) ................................................................................ 6

<u>Statutes</u>

5 U.S.C. § 552 .......................................................................................................... 2

5 U.S.C. § 552(a)(4)(B) ........................................................................................... 6

5 U.S.C. § 552(b) ..................................................................................................... 10

5 U.S.C. § 552(b)(6) ............................................................................................... 1, 7

<u>Rules</u>

Federal Rule of Civil Procedure 7(b) ...................................................................... 1

Federal Rule of Civil Procedure 56 ......................................................................... 1

Federal Rule of Civil Procedure 56(a) .................................................................... 7

Federal Rule of Civil Procedure 56(c)(1) ............................................................... 7

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that Defendant, the U.S. Environmental Protection Agency ("Defendant" or "EPA"), by and though its attorneys, hereby moves, pursuant to Federal Rule of Civil Procedure 7(b), for an order requiring Plaintiff, Sierra Club, to destroy inadvertently produced documents containing incorrect redactions and, pursuant to Federal Rule of Civil Procedure 56, for an order granting summary judgment in its favor in this action.  These motions are made on the grounds that EPA has satisfied all of its obligations with respect to Plaintiff's FOIA requests and that the information at issue was properly withheld pursuant to 5 U.S.C. § 552(b)(6).  Defendant's motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying declaration of Elizabeth White and exhibits thereto, the Court's files and records in this matter and other matters of which the Court takes judicial notice, and any oral argument that may be presented to the Court.  This motion will be heard on a date to be set if necessary, in Courtroom F, located on the 15th Floor of the United States Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Joseph C. Spero.

**STATEMENT OF RELIEF REQUESTED**

1.  EPA requests that the Court order Sierra Club to destroy inadvertently produced documents which contain exempt information and instead utilize the corrected versions provided to them.

2.  EPA further requests that the Court grant summary judgment in favor of EPA as EPA's withholding falls squarely within FOIA Exemption 6.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      Introduction**

This action involves requests submitted by Sierra Club to EPA for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking, inter alia, external communications to or from 25 EPA officials.  After extensive negotiations over the scope of Plaintiff's request and litigation over the pace of production, EPA produced over 50,000 pages from December 2018 to April 2020.  After additional negotiations concerning withholdings asserted by EPA, the parties' only remaining dispute[1]

---

[1] Pursuant to the parties' stipulation, Plaintiff are not challenging the sufficiency of EPA's search.  *See* ECF No. 74 at 2.  Plaintiff is also only challenging one type of redactions on a limited set of emails.

concerns withholding under Exemption 6 of the names of private individuals on a string of emails planning a personal, after working hours, happy hour gathering, despite EPA providing the names of these individuals' employers and a summary of the roles these individuals held within their respective organizations.  Because disclosure of their names would constitute a clearly unwarranted invasion of personal privacy and does not add significantly to the already available information regarding the agency's performance of its duties, Exemption 6 permits EPA to withhold their names.  The Court should therefore order Sierra Club to destroy the inadvertently produced versions of these emails and require them to utilize the correctly redacted versions provided on August 28, 2020.  EPA also respectfully asks the Court grant summary judgment in favor of Defendant.

## II.    Statement of the Issues

1.    Whether the names of private individuals on a string of emails planning a personal, after working hours, happy hour gathering, are properly withheld under FOIA Exemption 6, where EPA disclosed the individuals' employers and provided a summary of the roles these individuals held within their respective organizations.

2.    Whether Sierra Club must destroy the inadvertently produced versions of these emails and substitute the corrected versions provided on August 28, 2020.

## III.   Background

### A.    Sierra Club's Four FOIA Requests to EPA

On July 17, 19, and 21, 2017, and May 10, 2018, Sierra Club submitted FOIA requests to EPA seeking external communications from EPA employees.  ECF No. 13 at Exs. A, B, C, D.  A more detailed description of the requests and EPA's initial responses is found in EPA's opposition to Sierra Club's earlier motion for partial summary judgment.  ECF No. 34 at 3-5.  In total, Sierra Club sought, among other things, all external communications from January 20, 2017, to the date of the requests (or in the case of the May 2018 request, the date of the search) between any of the following personnel and any person outside of EPA: Brittany Bolen, Byron Brown, Holly Greaves, Albert Kelly, Richard

---

ECF No. 78 at 1.  Therefore, the only issues before the Court are whether the FOIA exemption asserted by EPA over these emails applies and whether Sierra Club should destroy inadvertently produced versions of these emails.

1   Yamada, Nancy Beck, Dennis Lee Forsgren, Troy Lyons, Elizabeth Bennett, Christian Palich, Layne

2   Bangerter, Aaron Ringel, Kaitlyn Shimmin, Kenneth Wagner, Andrew Wheeler, Madeline Morris,

3   Charles Munoz, Sarah Greenwalt, William Lovell, Justin Schwab, Patrick Davis, Michael Abboud,

4   David Ross, and Bill Wehrum. *Id.* For a subset of these personnel, Sierra Club excluded

5   communications to or from persons employed elsewhere within the Executive Branch or persons who

6   have executed a legal contract to provide consulting or other services to EPA if the communications

7   post-date that contract. *Id.* For another subset of personnel, Sierra Club also excluded communications

8   with persons employed by the executive branch of any state. *Id.* But for ten employees, Sierra Club did

9   not make any exclusions and therefore sought all communications between these EPA personnel and all

10  external individuals and entities. *Id.* Sierra Club also sought the records of Michele Hale, an executive

11  assistant to former EPA Administrator Scott Pruitt, related to phone calls, meetings, or appearances with

12  Scott Pruitt; calendars; and sign-in sheets or other records memorializing attendance at any meetings

13  attended by Scott Pruitt and anyone outside EPA from February 17, 2017 through the present. *Id.*

14          **B.      EPA's Response**

15          On June 1, 2018, EPA emailed Sierra Club with estimated completion dates for the first three

16  requests, accounting for the significant increase in FOIA requests filed with the Office of the

17  Administrator. See ECF No. 34 at 5. Specifically, EPA advised Sierra Club that request EPA-HQ-

18  2017-009482 (submitted July 17, 2017) was number 503 in the queue, request EPA-HQ-2017-009615

19  (submitted July 19, 2017) was number 521 in the queue, and EPA-HQ-2017-009684 (submitted July 21,

20  2017) was number 526 in the queue. *Id.* The email also invited Sierra Club to narrow its requests, so

21  that they could be processed more quickly. *Id.* EPA did not receive a response to this request from

22  Sierra Club prior to the filing of the complaint in this matter. *Id.*

23          **C.      Procedural History**

24          On June 11, 2018, Sierra Club filed the initial complaint in this case, ECF No. 1. On July 23,

25  2018, it filed the first amended complaint, adding the May 2018 FOIA request. ECF No. 13.

26          After Sierra Club filed its complaint, the parties engaged in significant negotiations to narrow the

27  scope of Sierra Club's expansive requests. *See* ECF Nos. 23, 26, 28, 34 at 6. On December 26, 2018,

28  the Court ordered EPA to produce the records at the rate specified by Plaintiffs. ECF No. 39 at 11-12.

The parties continued their negotiations over the remaining documents and ultimately reached agreement on the remaining documents for production and rate of production. *See* ECF Nos. 48, 49, 52, 54, 56, 58, 61, 71. EPA produced over 50,000 pages from December 2018 to April 2020, organized into 12 priority calendars and more than ten tiers of email records based on the priority to Sierra Club of the external domain name involved in the email. Because Sierra Club is not challenging EPA's search in this matter, EPA does not set out the full details of those negotiations here. See ECF No. 74 at 2.

EPA and Sierra Club also engaged in negotiations over a number of withholdings about which Sierra Club had questions or concerns. EPA either provided additional information, new versions containing less withheld material, or released documents previously withheld in full. *See* ECF No. 71. After these negotiations, only one set of documents remains in dispute between the parties.

### D.     The Happy Hour Emails

In early 2019, EPA withheld in full emails regarding the planning of a personal, after work, happy hour gathering, between an EPA employee, a White House employee, and mid-level management individuals in the government relations offices of three petroleum-related entities in full, hereinafter the "happy hour emails." ECF No. 78 at 2; *see also* Declaration of Elizabeth White ("White Decl.") ¶¶ 4-5. The parties subsequently conferred about the emails, and on August 14, 2020, EPA produced a redacted version of the emails. ECF No. 78 at 2. EPA later learned that, in this production, some exempt material that EPA intended to withhold was not actually redacted, specifically some redactions of the names of the individuals from the petroleum-related entities. EPA inadvertently disclosed the names. *Id.* On August 27, 2020, the parties met and conferred regarding their outstanding issues, including these emails, and counsel for Sierra Club noted that some names of the individuals from the petroleum-related entities had been disclosed and requested that EPA remove the redactions of names throughout the documents. *Id.* This was EPA's first awareness that the names of individuals from the petroleum-related entities had been disclosed. *Id.* On August 28, 2020, EPA notified Sierra Club that the names were inadvertently disclosed and provided corrected versions of the documents. *Id.* EPA acknowledged that Sierra Club was intending to dispute the redactions on these documents with the Court but requested that Plaintiff not further circulate the inadvertently produced versions containing exempt material. *Id.* Initially, Sierra Club could not commit that the inadvertently produced versions would not be shared

1  further, as they had already been transferred from counsel to internal stakeholders within Sierra Club,

2  but on September 4, 2020, Sierra Club agreed to not further share the inadvertently produced documents

3  until the dispute over them was resolved, in what they described as "a courtesy." *Id.*

4       On September 22, 2020, Sierra Club informed EPA that it did not intend to challenge any other

5  withholdings, that it continued to disagree with EPA's assertion of Exemption 6 over the names in the

6  happy hour emails, but that since Sierra Club already had the information and did not see any legal or

7  ethical barriers to releasing the information should it come up, it did not seem worthwhile to litigate the

8  issue. *Id.* Sierra Club notified the EPA that they could not commit to keeping the inadvertently

9  disclosed information confidential indefinitely if the parties would not be seeking a ruling on the issue.

10 *Id.* EPA then notified Plaintiff that it intended to raise the withholding to the Court and seek an order

11 for Sierra Club to destroy the inadvertently produced documents. *Id.* In response, Sierra Club has again

12 agreed to refrain from circulating the inadvertently produced versions pending a Court ruling. *Id.*

13 **IV.**    **Legal Standards**

14     **A.**    **Clawback of Inadvertently Produced FOIA Documents**

15      "All federal courts are vested with inherent powers enabling them to manage their cases and

16 courtrooms effectively and to ensure obedience to their orders." *F.J. Hanshaw Enters., Inc. v. Emerald*

17 *River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001). A court is not limited in exercising "its inherent

18 equitable powers where consistent with the FOIA." *Long v. IRS*, 693 F.2d 907, 909 (9th Cir. 1982).

19 "As the enforcement arm of the FOIA, the courts are charged with the responsibility of ensuring the

20 fullest responsible disclosure." *Id.* At least three courts have ordered a receiving party to destroy or

21 return copies of exempt information that were inadvertently produced under FOIA. *See Hersh & Hersh*

22 *v. U.S. DHHS*, 2008 WL 901539, at *9 (N.D. Cal. Mar. 31, 2008); *ACLU v. DOD*, No. 09 Civ. 8071

23 (BSJ)(FM), slip op. at 14 (S.D.N.Y. Mar. 20, 2012) (Doc. #106), *Kielty v. FEMA*, No. 14-3269

24 (PGS)(LHG), slip op. at 1-2 (D.N.J. Dec. 8, 2014) (Doc. #8). In *Ecological Rights Found. v. Fed.*

25 *Emergency Mgmt. Agency*, No. 15-CV-04068-DMR, 2017 WL 24859, at *2 (N.D. Cal. Jan. 3, 2017),

26 Judge Ryu also recognized that such authority exists, although it was not exercised in that case.

27     **B.**    **FOIA and Summary Judgment**

28      A court reviews an agency's response to a FOIA request de novo, 5 U.S.C. § 552(a)(4)(B), and

1   FOIA cases are typically decided on motions for summary judgment. *Yonemoto v. Dep't of Veterans*

2   *Affairs*, 686 F.3d 681, 688 (9th Cir. 2012). Summary judgment is warranted "if the movant shows that

3   there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

4   law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it is capable of affecting the substantive outcome of

5   the litigation." *Bartko v. U.S. Dep't of Justice*, 167 F. Supp. 3d 55, 61 (D.D.C. 2016) (citing *Anderson v.*

6   *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A dispute is genuine only if there is a sufficient

7   evidentiary basis on which a reasonable fact finder could find for the nonmoving party. *Liberty Lobby*,

8   477 U.S. at 248. In responding to the motion, the non-movant attempting to show that a fact is

9   genuinely disputed must "cit[e] to particular parts of materials in the record," or show that the materials

10  cited by the movant do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

11      Summary judgment is appropriate in FOIA cases if the agency can prove "that it has fully

12  discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn

13  from them are construed in the light most favorable to the FOIA requester." *James Madison Project v.*

14  *Dep't of Justice*, 2018 WL 1472492, at *2 (D.D.C. Mar. 26, 2018) (internal quotation marks and citation

15  omitted). When an agency invokes an exemption in order to withhold requested records, it "bears the

16  burden of demonstrating that the exemption properly applies to the documents." *Lahr v. NTSB*, 569

17  F.3d 964, 973 (9th Cir. 2009). The agency meets this burden when it submits declarations that contain

18  reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption.

19  *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008). Declarations submitted by an

20  agency to demonstrate the adequacy of its FOIA response are entitled to a presumption of good faith.

21  *See, e.g.*, *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015). Where declarations give

22  reasonably detailed justifications for withholding and appear to be in good faith, "the inquiry ends and

23  the nondisclosure is upheld." *Id.* at 773 (citing *Hunt v. C.I.A.*, 981 F.2d 1116 (9th Cir. 1992)).

24  **V.    Argument**

25      EPA requests that the Court order Sierra Club to destroy the version of the happy hour emails

26  inadvertently produced on August 14, 2020, and order Sierra Club to instead utilize the correctly

27  redacted version produced on August 28, 2020. Courts that have addressed similar requests have found

28  that in order to resolve this type of dispute, the Court should evaluate whether EPA's assertion of

Exemption 6 is proper.  Here, EPA has properly withheld the names of the private individuals on a string of emails planning a personal, after working hours, happy hour gathering, where EPA has otherwise disclosed the names of the individuals' employers and provided a summary of the roles these individuals held within their respective organizations.  The disclosure of the names would constitute a clearly unwarranted invasion of personal privacy and does not add any information of significance to the already available information regarding the agency's performance of its duties.  They are therefore properly withheld under Exemption 6.

A.   **The withholding under Exemption 6 is proper.**

Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The phrase "similar files" "has a broad, rather than a narrow meaning."  *Forest Serv. Empls. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1024 (9th Cir. 2008) (internal quotation marks and citation omitted).  To determine whether disclosure of the information "would constitute a clearly unwarranted invasion of personal privacy[,]" courts "balance the public interest in disclosure against the interest Congress intended the [e]xemption to protect."  *Cameranesi v. Dep't of Def.*, 856 F.3d 626, 637 (9th Cir. 2017) (quotation omitted).  The Ninth Circuit has established "a two-step test for balancing individual privacy rights against the public's right of access."  *Id.*

First, disclosure must implicate a personal privacy interest that is "nontrivial" or more than "de minimis."  *Id.*  "[A] disclosure implicates personal privacy if it affects . . . the individual's control of information concerning his or her person . . . ."  *Id.* at 638 (quotation omitted).  "Disclosures that would subject individuals to possible embarrassment, harassment, or the risk of mistreatment constitute nontrivial intrusions into privacy under Exemption 6."  *Id.*  To carry its burden at this first step, an agency need only show that the requested disclosure has "the potential" to result in such harassment.  *Id.*  "[T]he invasion of a personal privacy interest may be 'clearly unwarranted' even when the invasion of privacy is far from a certainty."  *Id.* at 639 (quotation omitted).

If the agency shows a nontrivial privacy interest, the court must "balance the individual's right of privacy against the public interest in disclosure."  *Id.*  This balancing involves the consideration of two factors: (1) "whether the public interest sought to be advanced is a significant one—one more specific

than having the information for its own sake"; and (2) "whether the requested information is likely to advance that interest." *Id.* (quotations omitted).  For the public interest to be significant, "the only relevant interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* at 639-40 (quotation omitted).  The requested information must also "contribute significantly to public understanding of the operations or activities of the government." *Id.* at 640.  If it does not "add significantly to the already available information," the public interest is given less weight.  *Id.*

As a threshold matter, the happy hour emails are "similar files" under the broad definition of the term because they relate to a particular person or persons: the government employees and the private individuals in the emails.  *See Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 765 (1989) ("[D]isclosure of records regarding private citizens, identifiable by name, is not what the framers of FOIA had in mind."); *Forest Serv. Empls. for Envtl. Ethics*, 524 F.3d at 1024 (finding names and identifying information in a report to be a "similar file").

Turning to the first step of the analysis, the privacy interests of the private parties that participated in the happy hour email thread are nontrivial and more than de minimis.  The privacy interest of such information in this context, where the emails are coordinating a non-government, after work, social gathering among friends, is even higher than in the ordinary course of work-related emails. Additionally, these individuals were mid-level management employees at the petroleum-related entities speaking with mid-level government employees[2] (a Special Assistant to the President for Legislative Affairs and Deputy Associate Administrator for the Office of Congressional and Intergovernmental Relations), rather than high-level executives or officials.  *See Forest Serv. Employees for Envtl. Ethics*, 524 F.3d at 1025–26 ("[L]ower level officials . . . generally have a stronger interest in personal privacy than do senior officials." (quotation omitted)).  Disclosure of these individuals' identities and, by the nature of the documents, email addresses would expose them to "unnecessary embarrassment from

---

[2] Government employees also have privacy interests recognized by the courts.  *See Forest Serv. Employees for Envtl. Ethics*, 524 F.3d at 1025 ("[I]individuals do not waive all privacy interests . . . simply by taking an oath of public office." (quotation omitted)).  However, in the public interest, EPA has decided to set aside those privacy interests for the government employees on the happy hour emails.

having their private social plans and personal messages made public" and would expose them "to potential harassment from the media or potential harassment from individual actors."  White Decl. ¶ 5. Sierra Club has previously provided documents produced in response to the FOIA requests at issue in this case to the press, and it is likely, based on Sierra Club's continued pursuit of the names of these individuals, that they will do the same here.  *Id.*  Additionally, placing any personal information in the public sphere presents opportunities for online harassment such as "doxxing."  *Id.*  These potential harms are well recognized by the courts.  *See Cameranesi*, 856 F.3d at 639 (collecting cases and noting that unwanted contact by third parties is potential harassment); *Forest Serv. Employees for Envtl. Ethics*, 524 F.3d at 1026 (finding unwanted contact by the media to constitute potential harassment); *Rojas v. Fed. Aviation Admin.*, 941 F.3d 392, 405 (9th Cir. 2019) ("[A] cognizable privacy interest [is one that] affects . . . the individual's control of information concerning his or her person." (quotation omitted)). The potential for an invasion of privacy is cognizable even when "far from a certainty."  *Cameranesi*, 856 F.3d at 639.  Additionally, the Ninth Circuit has recognized that this threshold to show that disclosure implicates a personal privacy interest "is low."  *Civil Beat Law Ctr. for the Pub. Interest, Inc. v. Centers for Disease Control & Prevention*, 929 F.3d 1079, 1092 (9th Cir. 2019) (rejecting an assertion that the privacy interest asserted was impermissibly speculative).  Therefore, as the EPA has set forth in Ms. White's declaration, the private individuals have a cognizable, non-trivial personal privacy interest in the non-disclosure of their names and email addresses because "disclosure would result in a potential for harassment" and exposure to unnecessary embarrassment.  *Cameranesi*, 856 F.3d at 642 (quotation omitted).

On balance, the privacy interests of the private individuals on the happy hour emails overcome any public interest because the specific identities of the individuals in this context do not "contribute significantly to the public understanding of the operations or activities of the government."  *Cameranesi*, 856 F.3d at 640.  EPA has already disclosed the names of the government employees involved, the entities for which the private individuals worked, and a summary of the roles held by the private individuals at their organizations.  Release of the individuals' names does not "shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to."  *Id.* at 639-40 (quotation omitted) (noting that this is the "only relevant interest in the FOIA balancing

analysis"). The released versions of these emails show that there was a non-work-related, happy hour gathering to watch hockey planned between two government employees and employees of three petroleum-related entities who were mid-level managers in the organizations' government relations offices. Whatever public interest there is in knowing about personal relationships between individuals at these entities and government employees is satisfied by release of the happy hour planning emails in their current redacted form.[3] The specific identities of the private individuals does not illuminate how EPA performed its statutory duties or made policy decisions regarding any issues before the agency, nor would they "contribute significantly to public understanding of the operations or activities of the government." *Id*. at 640.

While "[t]here is a clear public interest in public knowledge of the methods through which well-connected corporate lobbyists wield their influence," the circumstances of these emails are distinguishable from cases finding that the identities of lobbyists or other individuals that petition the government should be disclosed. *Elec. Frontier Found. v. Office of the Dir. of Nat. Intelligence*, 639 F.3d 876, 887 (9th Cir. 2010). In *Electronic Frontier Foundation* and the cases cited therein, the records at issue were instances of direct lobbying efforts and communications seeking to influence government decisions. *See id.* (describing the emails at issue as "communication[s] with the ODNI and DOJ in connection with the FISA amendments."); *see also, e.g.*, *All. for Wild Rockies v. Dep't of Interior*, 53 F. Supp. 2d 32, 36 (D.D.C. 1999) (identities of individuals who summited comments to a rulemaking); *Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice*, 102 F. Supp. 2d 6, 17 (D.D.C. 2000) (identities of individuals who wrote letters to the Attorney General regarding "Independent Counsel Act matters."). There, the court specifically noted that Exemption 6 does not give protection to "people seeking to influence the agencies'" policy pursuits. *Elec. Frontier Found.,* 639 F.3d at 889.

The emails here, consisting only of a group of friends planning an after work social gathering, are clearly distinguishable from emails created as a result of direct lobbying efforts. In fact, the emails reveal that the parties explicitly disclaimed the desire to talk about government business related issues.

---

[3] The limited withholdings also demonstrate that EPA properly executed its responsibility to reasonably segregate exempt portions of the documents from non-exempt portions. *See* 5 U.S.C. § 552(b).

1    *See* White Decl. at Ex. 1 at 2 (the individual from Marathon Petroleum writes, "I'm still in! Just as long

2    as we don't talk about the RFS."  Mr. Ringle replies, "100% fine by me!"  The individual from Valero

3    further responds, "I'm 100% on board no RFS discussion . . . .").  This stands in stark contrast to

4    *Electronic Frontier Foundation*, where the documents at issue concerned actual lobbying efforts.

5    Exemption 6 is not invoked here to protect the identities of those seeking to influence government

6    policies but rather to protect those making personal, social plans.  Indeed, where communications from

7    these and other petroleum-related organizations involve substantive government business, the identities

8    of the participants have been disclosed.  *See* Declaration of Adrienne Zack at Exs. A, B, C.

9        Moreover, the identities of the private individuals in this context are not likely to advance the

10   public interest and do not "add significantly to the already available information."  *Cameranesi*, 856

11   F.3d at 639.  As explained above, EPA has already released considerable relevant information

12   concerning the happy hour emails.  EPA has also released other documents in their FOIA disclosures

13   relating to these organizations.  *See, e.g.*, Zack Decl. at Exs. A-C.  This information, together with other

14   publicly available information, provides Sierra Club and the public significant information to understand

15   what the "government is up to" in this instance, and the individual identities would, at best, provide

16   information that is only marginally useful.  Such marginal usefulness cannot outweigh the privacy

17   interests of the individuals planning a social gathering that is not related to government business.

18       The disclosure of the names of the private individuals on the happy hour emails would constitute

19   a clearly unwarranted invasion of their personal privacy because their privacy interests are nontrivial and

20   disclosure of their identities would not contribute significantly to the public understanding of

21   government operations or add significantly to already available information.  The assertion of

22   Exemption 6 over the names of the private participants in the happy hour emails is therefore proper.

23   **B.    The Court has the authority to order Sierra Club to destroy the inadvertently
           produced version of the happy hour emails.**

24

25       This Court has inherent authority to order Sierra Club to destroy the version of the happy hour

26   emails inadvertently produced on August 14, 2020, and it should require Sierra Club to do so.  "As the

27   enforcement arm of the FOIA, the courts are charged with the responsibility of ensuring the fullest

28   responsible disclosure."  *Long*, 693 F.2d at 909.  Permitting the disclosure of the names of the private

1    individuals on the happy hour emails would not be a responsible disclosure because those individuals

2    have non-trivial privacy interests in such a disclosure, as further discussed above.  Moreover, EPA took

3    quick action upon discovering the inadvertent disclosure.  EPA first learned of the error 13 days after the

4    production and produced replacement versions of the documents one day after learning of the error.

5           Other courts have ordered FOIA requestors to destroy or return inadvertently produced

6    documents.  In *Hersh & Hersh v. U.S. DHHS*, 2008 WL 901539, at *9, Judge Hamilton ordered the

7    plaintiffs to return exempt documents that had been inadvertently produced, noting the agency's

8    "consistent efforts at securing return of the documents."  In *ACLU v. DOD*, No. 09 Civ. 8071

9    (BSJ)(FM), slip op. at 14 (S.D.N.Y. Mar. 20, 2012) (Doc. #106), the court ordered the plaintiffs to

10   return all copies of a classified document that had been inadvertently produced, noting that when a party

11   initiates a FOIA action specifically so the "Court would compel the Government to respond to their

12   FOIA requests," that party "[can]not [later] claim that the Court lacks the authority to supervise the very

13   process that they themselves set in motion."  In *Kielty v. FEMA*, No. 14-3269 (PGS)(LHG), slip op. at 1-

14   2 (D.N.J. Dec. 8, 2014) (Doc. #8), the court ordered the plaintiff to destroy or return all copies of

15   information FEMA had inadvertently produced and enjoined the plaintiff from using the information for

16   any purpose unless it was disclosed under FOIA or by court order.  And in *Ecological Rights Found. v.*

17   *FEMA*, 2017 WL 24859, at *2, Judge Ryu recognized that the court had the authority to order the

18   destruction of inadvertently produced documents, although the court did not so order in that case

19   because the it found the exemption was not properly asserted.

20          Here, EPA has properly withheld the names of the private individuals involved in the happy hour

21   emails.  As in *Hersh*, *ACLU*, and *Kielty*, the Court should order Sierra Club to destroy the inadvertently

22   produced versions.

23   **VI.    Conclusion**

24          For the foregoing reasons, the Court should grant EPA's motion for an order directing Sierra

25   Club to destroy the version of the happy hour emails inadvertently produced on August 14, 2020.

26   Further, because the corrected versions produced on August 28, 2020, are a proper assertion of

27   Exemption 6, EPA has fulfilled its obligations under FOIA, and the Court should grant summary

28   judgment in EPA's favor.

1    DATED: October 9, 2020                          Respectfully submitted,

2                                                    DAVID L. ANDERSON
                                                     United States Attorney
3

4                                                    /s/ Adrienne Zack
                                                     ADRIENNE ZACK
5                                                    Assistant United States Attorney

6                                                    Attorneys for Defendant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28